# EXHIBIT A

RECEIVED AS STATUTORY REGISTERED AGENT
on 02 July, 2019 and served on defendant or named party on 03 July, 2019
by the Florida Department of Financial Services

## IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY, STATE OF FLORIDA
## CIVIL DIVISION

GINA SIGNOR, individually and on behalf
of all those similarly situated,

Plaintiff,                                    **CLASS REPRESENTATION**

v.                                            Case No.:

**SAFECO INSURANCE COMPANY
OF ILLINOIS,**

Defendant.

_____/

## SUMMONS
## PERSONAL SERVICE ON A ENITITY

**THE STATE OF FLORIDA:**

**TO ALL AND SINGULAR THE SHERIFFS OF SAID STATE:**

**GREETINGS:**

**YOU ARE HEREBY COMMANDED** to serve this Summons and a copy of the
Complaint or Petition in the above styled cause upon the Defendant:

SAFECO INSURANCE COMPANY OF ILLINOIS, c/o Chief Financial Officer
200 East Gaines Street
Tallahassee, FL 32399

Each Defendant is hereby required to serve written defenses to said Complaint or Petition
on Plaintiff's attorney, whose name and address is:

SCOTT R. JEEVES, ESQUIRE
FL BAR NO.: 905630
JEEVES LAW GROUP, P.A.
954 1st Avenue North
St. Petersburg, Florida 33705
O:      (727) 894-2929
F:      (727) 822-1499
Primary:    sjeeves@jeeveslawgroup.com
Secondary: khill@jeeveslawgroup.com

within twenty (20) days after service of this Summons upon that Defendant, exclusive of the day or service, and to file the original of said written defenses with the Clerk of Said Court either before service on Plaintiff's attorney or immediately thereafter.

If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

**WITNESS** my hand and the seal of the Court on _____ JUL 02 2019 _____.

Clerk of Circuit and County Courts

(Court Seal)
By:_____
DEPUTY CLERK

**BRENDA D. FORMAN**

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, STATE OF FLORIDA
CIVIL DIVISION

**GINA SIGNOR**, individually and on behalf
of all those similarly situated,

      Plaintiff,

v.

**SAFECO INSURANCE COMPANY
OF ILLINOIS**,

      Defendant.

_____/

**CLASS REPRESENTATION**

Case No.:

**CLASS ACTION COMPLAINT AND
DEMAND FOR JURY TRIAL**

      Plaintiff, **GINA SIGNOR** ("Signor"), individually, and on behalf of all those similarly situated, brings this action against Defendant, **SAFECO INSURANCE COMPANY OF ILLINOIS** ("Safeco"), and alleges as follows:

**Introduction**

1.    Safeco insures Signor and all its Florida policyholders using a policy of insurance described as SA-2890/FLEP R1 3/15 or another policy form with identical language in all relevant provisions (the "Policy"). The Collision and Comprehensive coverages of the Policy, on their face and as amended to conform with Fla. Stat. § 626.9743(5), allow Safeco to adjust and settle a first-party motor vehicle total loss via a cash settlement based upon the actual cost to purchase a comparable motor vehicle.  Such "actual cost" may be derived from the retail cost as determined from a generally recognized used motor vehicle industry source, including an electronic database. Fla. Stat. § 626.9743(5)(a)(2).

1

2.      Safeco purported to adjust and settle Signor's total loss in this manner, but it does not do so in reality. Specifically, Safeco used the CCC ONE Market Value system (the "CCC system"), a proprietary electronic database product licensed from CCC Information Services Inc. ("CCC"), to adjust and settle Safeco's total loss claims in Florida.

3.      This violates Florida law and breaches the Collision and Comprehensive coverages of the Policy in three respects. First, the CCC system is not based upon the "actual cost to purchase a comparable motor vehicle" or "retail cost" because it uses advertised prices and not sales data. Second, the CCC system is not a "generally recognized used vehicle industry source" as required by the Policy and Florida law. Third, it is specifically designed to underestimate the retail cost of comparable motor vehicles, including by using "condition adjustments" to create reduced vehicle values that are not indicative of the actual cost to purchase a comparable motor vehicle.

4.      To make matters worse, Safeco additionally breaches the Collision and Comprehensive coverages of the Policy and violates Florida law by failing to pay  dealer fees for the costs and profit to the dealer for items such as inspecting, cleaning and adjusting vehicles and preparing documents related to the sale, which fees are required to be disclosed by Fla. Stat. §§ 501.976(11) and 520.02(2) and Fla. Admin. Code § 69V-50.001 and are charged by every used car dealer in Florida (the "dealer fees"). Those dealer fees constitute part of the "actual cost to purchase a comparable motor vehicle" under § 626.9743(5)(a), just like sales tax and title/license fees, and fall within the Policy's definition of "actual cash value," so they must be paid pursuant to the Policy and § 626.9743(5). Safeco refuses to pay dealer fees pursuant to the Policy.

5.      Safeco also breaches the Policy by (a) either requiring its total loss policyholders to permanently transfer ownership to it of their total loss vehicles without compensating them for the salvage values of those vehicles or (b) deducting the salvage values of the total loss vehicles from their claim payments

6.      Signor and the Class are therefore in doubt to their rights under the Policy with Safeco and seek a declaratory judgment that the Policy does not allow Safeco to adjust and settle total loss claims using the CCC system and that Safeco must pay dealer fees under the Policy. Signor and the Class additionally petition the Court for supplemental relief in connection with any declaratory judgements rendered by the Court. Signor and the Class also brings causes of action for breach of contract to recover the damages they suffered as a result of Safeco's (a) use of the CCC system, (b) refusal to pay dealer fee, and (c) taking of the salvage values of their total loss vehicles.

7.      In conjunction with both their declaratory judgment and breach of contract causes of action, Signor and the Class seek to recover the reasonable attorneys' fees and costs required to prosecute them.

## Jurisdiction, Parties, Venue

1.      This is an action asserting class claims for declaratory relief and damages pursuant to Florida Rule of Civil Procedure 1.220(b)(1)(A), (2) and/or (3).

2.      This Court has jurisdiction because Signor seeks declaratory relief and because the amount in controversy exceeds $15,000, exclusive of interest, costs, and attorneys' fees.

3.      Currently, Signor does not have evidence to support that the amount in controversy exceeds $5,000,000.

4.      Plaintiff Gina Signor is, and at all material times has been, a resident of Florida and insured by Safeco.

5.      At all times material hereto, Safeco was in the business of selling automobile insurance and adjusting and settling automobile insurance claims, including the sale of Collision and Comprehensive coverages and adjustment and settlement of first-party total loss claims under those coverages. Safeco may be served with process through its registered agent for the service

of process in Florida, Jimmy Patronis, the Chief Financial Officer of the Florida Department of Financial Services at 200 E Gaines St, Tallahassee, FL 32399.

6.      Venue is proper in Broward County, Florida, because Safeco is a Foreign Profit Corporation, and it has offices for the transaction of, and agents transacting, its customary business in Broward County.

7.      All conditions precedent to the maintenance of this action have occurred, have been performed, have been waived, or Safeco is estopped from asserting them, including, but not limited to, Part E-Duties After an Accident or Loss and Part F-General Provisions, Legal Action Against Us, of the Policy, to the extent they constitute conditions precedent to maintaining this action.

### Factual Allegations Common to Signor and the Class

8.      The Policy provides, in pertinent part, as follows:

### PART D – COVERAGE FOR DAMAGE TO YOUR AUTO

**INSURING AGREEMENT**

A.   We will pay for direct and accidental loss to **your covered auto** or any **non-owned auto**, including its equipment, any child safety seat in use in **your covered auto** or **non-owned auto**, minus any applicable deductible shown in the Declarations. We will pay for loss to **your covered auto** caused by:

1.   Other than **collision** only if the Declarations indicate that Comprehensive Coverage is provided for that auto.

2.   **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.
 **….**

B.   **"Collision"** means the upset of **your covered auto** or a **non-owned auto** or its impact with another vehicle or object.

**"Comprehensive"** means loss, other than collision, to your covered auto or a non-owned auto. Losses caused by the following are not collision losses but are comprehensive losses:
…

**LIMIT OF LIABILITY**

   A.  At our option, our limit of liability for loss will be the lowest of;

   1.  The actual cash value of the stolen or damaged property;

     …

   B.  An adjustment for depreciation and physical condition may be made based upon the physical condition and wear and tear of the property or damaged part of the property at the time of loss. This adjustment for physical condition includes but is not limited to, broken, cracked or missing parts, rust, dents, scrapes, gouges and paint condition.

**PAYMENT OF LOSS**

We may pay for loss in money or repair or replace the damaged or stolen property.  We may, at our expense, return any stolen property to:

   1.  You; or

   2.  The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft.  We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax from the damaged or stolen property.

8.       Pursuant to the Limits of Liability for the Collison and Comprehensive coverages of the Policy and Fla. Stat. § 319.30, Safeco has the right when presented with a claim for damages to a vehicle where the cost to repair would be greater than its actual cash value minus its salvage value to declare the vehicle a total loss and pay the lesser actual cash value.  Of course, when a vehicle is stolen, it is a total loss under the Comprehensive coverage, and Safeco must pay the actual cash value.

9.       When Safeco declares a vehicle a total loss, it must pay its insureds the vehicle's actual cash value as defined in and pursuant to Fla. Stat. § 626.9743, because to the extent that the Policy on its face is in any way inconsistent with that statute, Florida law compels that it be

amended to conform to the statute. Thus, if Safeco elects to pay a cash settlement, as it did in Signor's claim, it must pay "the actual cost to purchase a comparable motor vehicle, including sales tax," which "cost may be derived from: … [t]he retail cost as determined from a generally recognized used motor vehicle industry source such as: … [a]n electronic database…" Fla. Sta. § 626.9743(5)(a)(2)(a). This cash settlement is independent of what the policyholder ends up spending, if anything.  In fact, the policyholder may simply keep the cash settlement and never replace the total loss vehicle. The Policy is not inconsistent with the statute as to what Safeco must pay, because it provides that Safeco will pay the "actual cash value" of the total loss vehicle, which Florida common law defines as the replacement cost of the auto less depreciation.

10.     Safeco used the CCC system to determine the actual cash values of Signor's vehicle as it does with all its Florida automobile insurance policyholders who suffer total losses. The CCC system has the capability to provide a variety of methods for calculating total loss vehicle values which can be chosen by its licensees, here Safeco. Accordingly, in this Complaint, "CCC system" refers to the version of this service used by Safeco.

11.     The CCC system provides total loss valuations automatically based on supposedly comparable vehicle data contained in its computer system and data on the insured's total loss vehicle entered into it by Safeco's adjusters through a computer interface. Among that data entered into the CCC system by the adjusters are the total loss vehicle's Vehicle Identification Number ("VIN"), which provides the vehicle make, model, configuration (e.g., number of doors, engine size, equipment and options), the mileage and the license plate number.

12.     The CCC system starts by automatically calculating a "Base Vehicle Value" for the total loss vehicle, as described below, which it adjusts based on the condition of the total loss vehicle. Specifically, Safeco adjusters rate the condition of twelve components (four interior, four exterior, two mechanical and front and rear tires) of the total loss vehicle as "Below Normal,"

"Normal Wear," or "Dealer Ready" with the goal of adjusting the value of the total loss vehicle to the value of the same vehicle in "Normal Wear" condition. If a component is rated "Below Normal," it results in a downward adjustment to the total loss vehicle's "Base Vehicle Value." If a component is rated "Normal Wear," no adjustment is made. And, if a component is rated "Dealer Ready," it results in an upward adjustment to the total loss vehicle's "Base Vehicle Value." Effectively, then, the baseline condition used for total loss vehicles is "Normal Wear" condition. The CCC system calls the result of taking the "Base Vehicle Value" and making these "total loss vehicle component condition adjustments" the "Adjusted Vehicle Value." To the "Adjusted Vehicle Value" sales tax (calculated as a percentage of the "Adjusted Vehicle Value") is added, resulting in the "Value Before Deductible." Safeco pays the "Value Before Deductible" less the deductible, which it terms the "Vehicle owner payment."

13.     The "Base Vehicle Value" is derived by searching the prices advertised by dealers on websites like Autotrader.com, Truecar and dealer websites for anywhere from three to twelve "comparable vehicles" located as close as possible to the insured's residence, adjusting the advertised prices up or down based on mileage, optional equipment and a "Uniform Condition Adjustment" (see below) and then calculating a weighted average of the adjusted prices. According to CCC, the weighting is based on four factors (i) "source of the data (such as inspected versus advertised), (ii) similarity (such as equipment, mileage, and year), (iii) proximity to the loss vehicle's primary garage location, and (iv) recency of information." Upon information and belief, the CCC system omits some of the highest priced comparable vehicles in the area to decrease the "Base Vehicle Value."

14.     The supposed purpose of applying the "Uniform Condition Adjustment" to all of the comparable vehicles is to adjust the comparable vehicles to the "Normal Wear" condition which is used as the baseline condition for the total loss vehicle. To do this, the CCC system assumes

all the "comparable vehicles" being offered for sale via a retail advertisement have an overall condition of "Dealer Ready," and it makes a uniform downward price adjustment to all of them to supposedly find their values if they were only in "Normal Wear" condition like the total loss vehicle after adjustments. This assumption that all of the "comparable vehicles" are in "Dealer Ready" condition is unwarranted, because CCC personnel, on average, inspect zero to four of the "comparable vehicles" used in a valuation, so they have no actual knowledge of the conditions of the great majority of the "comparable vehicles."

15.     This systematic downward adjustment, which Signor terms the "Uniform Condition Adjustment," results in a flat and uniform value decrease for each of the "comparable vehicles," thereby lowering the average adjusted prices for the "comparable vehicles," and thereby lowering the total loss vehicle's "Base Vehicle Value."   The CCC system's application of downward adjustments of the exact same dollar amounts to "comparable vehicles" with advertised prices that differ by thousands of dollars could not possibly serve its stated purpose, because vehicles with such different advertised prices could not conceivably all be adjusted to "Normal Wear" condition from supposedly "Dealer Ready" condition by the exact same dollar amount reduction.

16.     Accordingly, Safeco's use of "Uniform Condition Adjustments" to supposedly reduce "comparable vehicles" from an assumed "Dealer Ready" condition to a "Normal Wear" condition when creating the "Base Vehicle Value" is not calculated to and does not result in the actual cost to purchase a comparable motor vehicle. To the contrary, it is designed to result in values less than the actual cost to purchase a comparable motor vehicle. Further, if CCC's assumption that **all** or even the majority of dealer cars have a condition of "Dealer Ready" is correct, then such vehicles realistically constitute the comparable motor vehicles available to purchase by an insured at retail, and their "retail cost" should not be adjusted downward to the

"Normal Wear" condition under the terms of Fla. Stat. § 626.9743(5)(a)(2) and the conformed Policy. Simply put, the use of "Uniform Condition Adjustments" by Safeco is illegitimate, in breach of the Policy and in violation of Florida law.

17.     The CCC system's methodology is different from that of the two most well-known sources of used car values that are generally recognized in the used motor vehicle industry, NADA and KBB.   The NADA and KBB databases use actual sales data, not "adjusted" advertised prices, from a multi-state region.   They each provide a "retail clean" or "dealer" value, which would be the appropriate value to use given that Fla. Stat. § 626.9743(5)(a)(2) requires actual cash value to be based on the retail cost. Regardless of the reasons, in the vast majority of cases, the CCC methodology results in "Adjusted Vehicle Values" that are lower than the NADA and KBB retail clean or dealer values.   Indeed, upon information and belief, CCC presents marketing materials, workshops, and training to prospective, and current, insurance company clients stating that the average market value as determined by the CCC system will result in lower total loss valuations and indemnity savings. Safeco claims adjusters could in every case, including Signor's case here, obtain the NADA retail clean value contemporaneous to the date of loss through NADA's free online database, but Safeco chooses not to do so based upon the uniform, pre-determined company policy to exclusively use the CCC system. Significantly, NADA offers subscribers to its electronic database the ability to obtain retail clean values at any specific dates in the past ten (10) years.

18.     The CCC system generates a CCC ONE Market Valuation Report ("CCC Report") setting forth the CCC system valuation which Safeco provides to it total loss policyholders.   This report is retained in Safeco's electronic claims records.   Despite having the ability to value total loss claims using the NADA electronic database, Safeco uniformly refuses to do so.   In fact, upon information and belief, Safeco refused to negotiate the "Base Vehicle Value" calculated by

the CCC system.

19.     The CCC system does not comply with Fla. Stat. § 626.9743(5)(a)(2)(a) and, thus, breaches the Collision and Comprehensive coverages of the Policy for three major reasons. First, the CCC system is not based upon the "actual cost to purchase a comparable motor vehicle" or "retail cost" because it uses adjusted advertised prices and not actual sales data.  The plain meaning of the word "cost" requires use of sales data. Second, it is not "a generally recognized used motor vehicle industry source" for the "retail cost" of used motor vehicles. Indeed, the CCC system is not available to Signor as a consumer, and it is not marketed to the used motor vehicle industry—car dealers and brokers.  Rather, CCC focuses on selling the CCC system as a subscription service to insurance companies, which are not part of the used motor vehicle industry. And, indeed, insurance companies are virtually the only entities which use the CCC system. Third, the CCC system's selective exclusion of the "comparable vehicles" with the highest advertised prices and its use of systematic downward "Uniform Condition Adjustments" does not result in retail costs.

20.     While Safeco may try to argue otherwise, the CCC system is also not designed to and does not comply with Fla. Stat. § 626.9743(5)(a)(1). When that provision states that "the actual cost to purchase a comparable motor vehicle… may be derived from:…the **cost** of two or more such comparable vehicles available within the preceding 90 days" (if "comparable motor vehicles are available in the local market area"), it means the **actual cos**t of buying the vehicles, which could only be determined by the actual sales prices of such vehicles.  This provision does not provide for use of an electronic database or system at all, much less one that does not use sales prices but rather mere advertised prices subject to automated deductions calculated to decrease the value of vehicles below actual cost.

21.     Further, despite any Safeco claim to the contrary, the CCC system is not designed to and does not comply with Fla. Stat. § 626.9743(5)(a)(3).  It does not obtain "quotes" from dealers—the actual prices for which they commit to sell the cars.  Rather, it takes advertised prices and makes illegitimate "Uniform Condition Adjustments" to those advertised prices, as requested by Safeco.

22.     Additionally, the CCC system does not comply with Fla. Stat. § 626.9743(5)(c) for two reasons. First, it clearly is attempting to fall under § 626.9743(5)(a)(2)(a), and a failed attempt to do that cannot satisfy § 626.9743(5)(c) as a "basis that varies from the methods described in paragraph (a) or paragraph (b)."  Second, that section requires that "the determination of value must be supported by documentation, and any deductions from value must be itemized and specified in appropriate dollar amounts."  Safeco does not itemize what comprises the Uniform Condition Adjustment and specify a dollar amount for each part, and it has no documentation to support that the mileage deductions to the comparable vehicles and the illegitimate "Uniform Condition Adjustments" to all comparable vehicles (both "deductions from value") are "in appropriate dollar amounts." Those deductions are calculated automatically by the CCC system based on data in the CCC system and proprietary CCC algorithms, and Safeco has no documentation in its possession to show their calculation or appropriateness.

23.     Fla. Stat. § 626.9743(6) provides as follows:

> (6) When the amount offered in settlement reflects a reduction by the insurer because of betterment or depreciation, information pertaining to the reduction shall be maintained with the insurer's claim file. Deductions shall be itemized and specific as to dollar amount and shall accurately reflect the value assigned to the betterment or depreciation. The basis for any deduction shall be explained to the claimant in writing, if requested, and a copy of the explanation shall be maintained with the insurer's claim file.

24.     Because the Uniform Condition Adjustments purportedly reflect the difference in value between the "Dealer Ready" comparable vehicles and the "Normal Wear" conditions of the total

loss vehicles  and they reduce the values of the comparable vehicles averaged together to calculate the "Base Vehicle Value," they constitute a "reduction by the insurer because of … depreciation" to the total loss vehicles, given the Policy's explanation of "an adjustment for depreciation." Thus, § 626.9743(6) requires Safeco to maintain in each insured's claim file information showing the basis for and calculation of the Uniform Condition Adjustments in accurate amounts. Safeco does not do so, as those deductions are calculated automatically by the CCC system based on data in the CCC system and proprietary CCC algorithms. Safeco may not make the deductions absent maintaining the necessary information in its claim files, so its making the deductions breaches the Policy.

25.     Finally, Signor did not agree on another method with Safeco to value her vehicle. Thus, the CCC system is not designed to, and did not, comply with § 626.9743(5)(d).

26.     In Florida, the "actual cost to purchase a comparable vehicle" and its "retail cost" (as required by the statute) and the "actual cash value" of the total loss vehicle (as required by the Policy) necessarily include numerous fees, including title/license fees and sales tax, because the State of Florida requires a dealer to collect those amounts in connection with the sale and registration of a used motor vehicle. The "actual cost to purchase a comparable vehicle" also includes dealer fees, because no used car dealer in the State of Florida will sell a vehicle without charging them. While Safeco pays sales tax and title/license fees, it does not pay dealer fees.

27.     Moreover, even though a vehicle has been declared a total loss, it still has some monetary (salvage) value, which value is not tied to the loss or actual cash value under the Policy. During the total loss settlement process, purportedly relying on Policy terms and its contractual relationship with its insureds, Safeco required its insureds, including Signor and Class members, to transfer ownership and possession of their totaled vehicles to it before it would make payment on their total loss claims. It did so without providing them any form of monetary consideration

for the salvage values of their vehicles. Alternatively, if Class members retained their salvage vehicles and either sold the vehicles themselves or continued to use them (if still drivable), Safeco deducted the salvage values from the total loss payments made to those Class members. Either way, Safeco took the salvage values of the total loss vehicles.

28.     Safeco takes the total loss vehicles' salvage values even though no provision in the Policy (a) requires insureds to permanently transfer titles of their total loss vehicles to Safeco in order to receive payment for their total loss vehicles; or (b) provides for a deduction of salvage value from actual cash value payments of total loss claims. In the absence of such provisions, Safeco's taking of Signor's and the Class' salvage values constitutes a breach of the Policy.

**Factual Allegations as to Safeco's Treatment of Signor**

29.     On or about January 11, 2019, Signor's vehicle ("Covered Vehicle"), a 2014 Lexus IS 250, was involved in a motor vehicle accident which rendered the vehicle a total loss. At that time, Signor was a contracting party and named insured under the Policy issued by Safeco, which was in full force and effect.

30.     On or about January 16, 2019, Signor made a total loss claim with Safeco for payment on her Covered Vehicle. On or about January 16, 2019, Safeco affirmed Collision coverage for the Covered Vehicle as a total loss.

31.     On January 17, 2019, under a cover letter of that date, Safeco sent Signor a CCC Report claiming an "Adjusted Vehicle Value" of the Covered Vehicle of $17,966.00. This value represented a "Base Vehicle Value" of $17,377.00, plus a combined "component condition adjustment" of +$589 for the condition of the Covered Vehicle.  The CCC system calculated the "Base Vehicle Value" of $17,377.00 by averaging the adjusted prices of twelve "comparable vehicles."  The advertised prices of the "comparable vehicles" ranged from a low of $15,939 to a high of $19,937. Despite this huge variance in advertised price, the CCC system applied a

13

"Uniform Condition Adjustment" of -$1,064.00 to all twelve "comparable vehicles" used to calculate the "Base Value." The cover letter did not offer to pay dealer fees despite the CCC Report stating that "[t]he total [value it calculated for the Insured Vehicle] may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account." A redacted copy of the January 17, 2019 cover letter and enclosed CCC Report is attached as **Exhibit A**.

32.     Signor informed Safeco by a letter from her attorney dated February 12, 2019, that Safeco's adjustment of her total loss claim violated Florida law and breached the Policy in several ways. First, Signor advised Safeco that its use of the CCC system did not satisfy the requirements of Fla. Stat. § 626.9743(5)(a)(2) and the Policy because the CCC system is not a "generally recognized used motor vehicle source," and she requested it recalculate the value of her vehicle using such a sources and pay her any differences between such value and the value calculated by the CCC system, plus any additional sales tax resulting from the increased value. Signor's redacted coverage demand letter to Safeco dated February 12, 2019, is attached as **Exhibit B**.

33.     In her coverage demand letter, Signor additionally requested the Safeco reimburse her for the amount of the average or typical dealer fees it could reasonably anticipate she would have to pay if she purchased a replacement vehicle, and she suggested $500 would be a reasonable amount.

34.     On the same day it received Signor's coverage demand letter, Safeco (through its adjuster) responded to it by leaving a voicemail with Signor's counsel. It said that CCC "is a nationally recognized service which all insurance companies [use]," which Signor took to mean that Safeco takes the position that the CCC system constitutes a "generally recognized used motor vehicle source" that complies with Fla. Stat. § 626.9743(5)(a)(2) and, accordingly, that

Safeco refused to recalculate the value of Signor's vehicle using another source. In the voicemail, Safeco also stated it owed no duty under the Policy to pay dealer fees.

35.    On April 1, 2019, through her counsel, Signor again wrote Safeco. In that letter, Signor asked for a written explanation of Safeco's use of the Uniform Condition Adjustments per her right to same provided by Fla. Stat. § 626.9743(6) and for a written statement as to whether Safeco maintains the information in its claims files required by Fla. Stat. § 626.9743(6) for all its other Florida policy holders. Relatedly, Signor asked Safeco whether it takes the position that its use of the CCC system complied with Fla. Stat. § 626.9743(5)(c) as to Signor and its other policyholders and, if so, to provide Signor with the documentation required by that provision and to state whether it maintains such information for its other Florida policyholders. A copy of the April 1, 2019 letter is attached as **Exhibit C**.

36.    In the April 1, 2019 letter, Signor also informed Safeco that it had breached the Policy as to her and its other Florida policyholders by requiring them to transfer ownership of their total loss vehicles in order to receive payment of their total loss claims because no Policy provision set forth such a requirement. Thus, Signor demanded that Safeco pay her and Safeco's other Florida total loss policyholders the amounts that Safeco had received from the salvage sales of their vehicles.

37.    On April 3, 2019, Safeco, by and through its assigned adjuster, responded to the April 1 letter by email. The email did not respond to Signor's demands pursuant to Fla. Stat. §§ 626.9743(5)(c) & (6). It did advise Signor that Safeco takes the position that it is entitled to take the salvage value of total loss vehicles under the Policy. Furthermore, Safeco stated that that CCC One is a valid methodology under Florida law and the policy (no evidence was provided to support this erroneous assertion). A copy of Safeco's April 03, 2019 adjuster e-mail/response is attached hereto as "**Exhibit C**."

38.     The NADA database is one several computer databases that is "a generally recognized used motor vehicle industry source." A NADA report showed that the clean retail or dealer value of the Covered Vehicle was in fact $20,125 for a non-dealer certified vehicle. A true and correct copy of the NADA report is attached hereto as **Exhibit D**." Thus, based on NADA, Signor's vehicle was undervalued by approximately $2,159, not including an additional $129.54 of applicable sales tax on this additional value and dealer fees.

39.     Recalculating "actual cash value" using CCC's "comparable vehicles" and the Covered Vehicle, both without any condition adjustments whatsoever, results in a valuation of $18,441, still $1,688 short of the actual replacement cost at retail as evidenced by the NADA report. Even keeping the favorable combined "component condition adjustments" of +$589, the resulting Covered Vehicle valuation would be $19,030, still $1,095 less than the actual replacement cost at retail as evidenced by the NADA report. In addition to showing that the CCC system uses the "Uniform Condition Adjustment" to systematically lower the actual cash value paid to less than the real cost to purchase a comparable vehicle at retail, this demonstrates that the CCC system selects "comparable vehicles" and/or uses some other techniques to deliberately undervalue total loss vehicles without even taking into consideration the "Uniform Condition Adjustment" and dealer fees.

40.     Safeco maintains that its use of the CCC system to calculate the actual cash value of her car met the requirements of Florida law and the Collision and Comprehensive coverages of the Policy. Safeco additionally maintains that it was not required to pay Signor the dealer fees it could reasonably anticipate she would incur.

41.     Signor is in doubt of her rights as to whether her vehicle was valued with a method that complied with Fla. Stat. § 626.9743(5) and the Collision and Comprehensive coverages of the Policy.

42.     Signor is further in doubt of her rights as to whether Fla. Stat. § 626.9743(5) and the Collision and Comprehensive coverages of the Policy require payment of dealer feed by Safeco.

43.     Signor is still insured by Safeco and she can reasonably expect that she may suffer another total loss in the future, and she is in doubt as to her rights in that event.

### Class Action Allegations

9.     Pursuant to Florida Rule of Civil Procedure 1.220(b)(1)(A), (2) & (3), Signor brings Count I of this action for declaratory judgment on her own behalf and on behalf of the Class defined below. Pursuant to Rule 1.220(b)(1)(A) & (3), she brings Counts II, III and IV for breach of contract on her own behalf and on behalf of the Class defined below.

10.     The Class consists of and is defined as all individuals who: (a) on or after June __, 2014; (b) are or were covered by a Safeco Florida personal automobile insurance policy; (c) made a claim under the Collision or Comprehensive coverage of that policy for damage or loss to a covered vehicle which Safeco accepted and treated as a total loss claim; and (d) Safeco paid the claim or offered to pay the claim (which offer remains unaccepted) on a cash settlement basis with the actual cash value derived from the CCC system  (hereafter the "Class"). The class period will be from June __, 2014, to the date of class certification (hereinafter the "Class Period").

11.     Signor reserves the right to amend the Class and/or add sub-class definitions as discovery proceeds and to conform to the evidence.

12.     While the exact number of Class members is unknown at this time, Signor submits, based upon her counsel's representation of automobile accident victims in Florida, that there are at least a hundred Safeco policyholders spread throughout the State of Florida who are potential Class members in this action.  Accordingly, separate joinder of all Class members would be impracticable.

13.     This action poses questions of law and fact that are common to and affect the rights of all members of the Class. Such questions of law and fact common to the Class include, but are not limited to, the following:

a.  Whether Safeco's use of the CCC system to adjust and settle first-party motor vehicle total loss claims breaches the Policy and violates Florida law?

b.  Whether Safeco's refusal to pay dealer fees breaches the Policy and violates Florida law?

c.  Whether Signor and the other Class members were damaged by Safeco's use of the CCC system in the amount of the difference between the "Base Vehicle Value" of the total loss vehicle and the NADA clean retail or dealer value for the vehicle plus the additional sales tax on that amount?

d.   Alternatively, whether Signor and the other Class members were damaged by Safeco's use of the CCC system in the amount of the difference between the "Adjusted Vehicle Value" of the total loss vehicle and the NADA clean retail or dealer value for the vehicle plus the additional sales tax on that amount?

e.  Alternatively, whether Signor and the other Class members were damaged by Safeco's use of the CCC system in the amount of Uniform Condition Adjustment used in their CCC Reports plus the additional sales tax on that amount?

f.  Whether Signor and the other Class members were damaged in the amount of the average dealer fees in Florida Safeco refused to pay?

g.  Whether Signor and the other Class members are entitled to a declaration of their rights under the Policy and Florida law?

h.  Whether the Policy clearly and unambiguously permits Safeco to take the salvage values of its insureds' total loss vehicles by either (a) requiring them to transfer title

18

and possession of the total loss vehicles to Safeco without compensating them for the salvage values of the vehicles or (b) deducting the salvage values from the insureds' total loss payments;

i.  Whether Safeco thereby breached the Policy as to Signor and the Class, entitling them to recover from Safeco the net amounts Safeco received from the sales of their total loss vehicles or the amounts Safeco deducted from their total loss payments for "salvage value," as the case may be; and

j.  Whether Signor and the other Class members are entitled to recover reasonable attorneys' fees and costs in connection with the successful prosecution of their declaratory judgment and/or breach of contract causes of action?

14.   Signor's claims are typical of the claims of the other members of the Class, because they all arise out of the exact same policies and practices of Safeco and under the exact same theories of law.

15.   Signor will adequately represent the Class, because she and the undersigned counsel she has retained have no conflicts of interest with the other Class members, she is ready, willing and able to represent the Class, and the undersigned retained attorneys are very experienced class action practitioners with extensive experience in prosecuting class actions against automobile insurers.

16.   Signor and the Class's declaratory judgment and breach of contract causes of action may be maintained as a class action pursuant to Rule 1.220(b)(1)(A) because the prosecution of separate claims by individual Class members would create a risk of inconsistent or varying adjudications concerning individual members of the Class which would establish incompatible standards of conduct for Safeco.  For example, the court in one case might rule that Safeco must pay dealer fees while another might rule that it does not have to do so.  Safeco would be left in

an untenable legal limbo in such an event, because Florida law requires it to treat all insureds the same under similar circumstances.

17.     Signor's declaratory judgment cause of action may also be maintained as a class action pursuant to Rule 1.220(b)(2), because Safeco has acted and refused to act on grounds generally applicable to all members of the Class, thereby making final declaratory relief concerning the Class as a whole appropriate.  Specifically, Safeco has in the past and will in the future adjust total loss claims the exact same way in breach of the Policy and in violation of Florida law, making declaratory relief for the Class as to its members' rights under the Policy and Florida law appropriate.

18.     Signor's declaratory judgment and breach of contract causes of action may also be maintained as a class action pursuant to Rule 1.220(b)(3), because the questions of law or fact common to Signor and the Class predominate over any questions of law or fact affecting only individual Class members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. As demonstrated by paragraph 56 above, all the questions necessary for resolution of Safeco's liability to Signor and the Class are common.  The only individual issues are the amounts of damages, and they may be calculated on a mechanical, ministerial basis without the need for the trier of fact to individually decide them.

19.     More specifically, the damages to each Class member from Safeco's use of the CCC system can be calculated by subtracting the "Base Value" or the "Adjusted Value" from the NADA value and then performing the multiplication necessary to calculate the additional sales tax on that amount. To the extent any NADA values are not already in Safeco's possession, they can be obtained from the NADA system. Alternatively, the damages for each Class member are the amount of the Uniform Condition Adjustment used in their CCC Report plus the additional sales tax on that amount which can be calculated with simple multiplication. Signor can also

provide evidence of the average dealer fee in Florida; which amount can be awarded to every Class member for Safeco's refusal to pay dealer fees. Also, the damages to Signor and each Class member from Safeco taking the salvage value of the total loss vehicle can be determined using Safeco's electronic records, which will show either the net amount received by Safeco for each total loss vehicle it sold or the amount Safeco deducted for salvage value from each Class member's total loss payment.

20.     A class action is superior because the amounts recoverable by individual Class members are not enough to justify individual suits against a large corporation like Safeco which can be expected to vigorously defend every such suit as a matter of precedent. For that reason, Class members do not have a real interest in individually controlling their separate claims.  Further, the overwhelming majority of Class members do not even know they have such claims to sue over. This is demonstrated by the fact that there do not appear be any pending individual suits against Safeco in Florida over these issues. Simply put, there are no alternatives to a class action to resolve this controversy.

21.     Even if individual suits were feasible and likely to be filed, it would be highly inefficient and a waste of the parties' and the court system's resources to repeatedly adjudicate the same factual and legal issues.  Plus, it could result in undesirable inconsistent adjudications as set forth above.   Thus, it is highly desirable to concentrate the litigation in this forum, which is well equipped to resolve the controversy for all Class members and Safeco.

22.     There are no unusual difficulties likely to be encountered in the management of this case as a class action.  Florida law applies to all Class members' claims, and the legal issues are simple matters of statutory and contractual interpretation. All Class members are readily ascertainable from Safeco's records, including physical addresses and email addresses (in most cases), making the provision of notice routine. And, as previously explained, damages are easily

and readily calculable for each Class member on a mechanical, ministerial basis.

## Count I – Class Action for Declaratory Relief

23.     Signor and the Class re-allege and incorporate by reference Paragraphs 1-65 above.

24.     Signor and the Class take the positions that the Collision and Comprehensive coverages of the Policy, on its face and as amended to conform with Fla. Stat. § 626.9743(5)(a) (if necessary): (a) do not allow Safeco to adjust and settle first party motor vehicle total losses using the CCC system;  (b) requires it to pay dealer fees on total loss claims; and (c) do not allow it to take the salvage values of total loss vehicles. Safeco disagrees with these positions and uniformly uses the CCC system to adjust and settle such claims, refuses to pay dealer fees in connection with such claims, and takes the salvage values of total loss vehicles.

25.     Signor and the other Class members are in doubt concerning their rights, and a bona fide present controversy exists between them and Safeco concerning the proper interpretation of Fla Stat. § 626.9743(5) & (6) and the Policy and the parties' respective rights and obligations thereunder.

26.     The rights, status, or other equitable or legal relations of the parties are affected by the Policy and Fla Stat. § 626.9743(5) & (6).  Accordingly, pursuant to Fla. Stat. § 86.021, Signor and the Class may obtain a declaration of their rights, status, or other equitable or legal relations thereunder.

27.     Section 86.011, Florida Statutes states that this Court has "jurisdiction … to declare rights, status, and other equitable or legal relations whether or not further relief is or could be claimed."

28.     Section 86.111, Florida Statutes states, "The existence of another adequate remedy does not preclude a judgment for declaratory relief." Thus, regardless of whether damages are available to Signor and the Class, this Court still has jurisdiction to determine the parties'

respective rights, status, and other equitable or legal relations under the insurance policy and applicable law.

29.     Section 86.011(2), Florida Statutes states that "The court may render declaratory judgments on the existence, or non-existence … Of any fact upon which the existence or nonexistence of such immunity, power, privilege, or right does or may depend, whether such immunity, power, privilege, or right now exists or will arise in the future." Thus, the Court still has jurisdiction to determine whether Safeco's past conduct has been unlawful in order to prevent the same unlawful conduct in the future.

30.     Section 86.021, Florida Statutes states, "Any person claiming to be interested or who may be in doubt about his or her rights under a … contract, … or whose rights, status, or other equitable or legal relations are affected by a statute … may have determined any question of construction or validity arising under such statute, … contract, … or any part thereof, and obtain a declaration of rights, status, or other equitable or legal relations thereunder." Thus, the Court has jurisdiction to determine the rights of "any person" (such as Signor and the Class) who is in doubt about his rights under the Policy and any applicable laws.

31.     Section 86.031, Florida Statutes states, "A contract may be construed either before or after there has been a breach of it." Under this statute, the Court has jurisdiction to determine whether USAA has violated the terms of the Policy and applicable law and whether its conduct will violate the Policy and applicable law in the future.

32.     Section 86.051, Florida Statutes states, "Any declaratory judgment rendered pursuant to this chapter may be rendered by way of anticipation with respect to any act not yet done or any event which has not yet happened, and in such case the judgment shall have the same binding effect with respect to that future act or event, and the rights or liability to arise therefrom, as if that act or event had already been done or had already happened before the judgment was

rendered." This statute confirms that the Court has jurisdiction to determine the legality of the Safeco 's past conduct in order to gauge its anticipated future conduct and to prevent unlawful conduct in the future.

33.    Section 86.071, Florida Statutes states, in pertinent part, that when a declaratory action "concerns the determination of an issue of fact, the issue may be tried as issues of fact are tried in other civil actions in the court in which the proceeding is pending. To settle questions of fact necessary to be determined before judgment can be rendered, the court may direct their submission to a jury."  Thus, the existence of disputed fact issues does not prevent the Court from providing declaratory relief under Chapter 86.

34.    Section 86.061, Florida Statutes provides, in pertinent part, that the Court may grant further or supplemental relief based on a declaratory judgment.

35.    A determination of the rights of Signor and the Class under the Policy and law regarding the Policy's Collision and Comprehensive coverages for the underlying total loss claims will terminate the controversies specified in the previous paragraphs.

36.    Signor and the Class now petition this Court for a declaration that Safeco's use of the CCC System is an invalid method of valuing vehicles under Fla. Stat. § 626.9743(5) and the Collision and Comprehensive coverages of the Policy. They also seek further or supplemental relief in the form of an order that Safeco must recalculate their total loss claims using a method that complies with Fla. Stat. § 626.9743(5) and make them new offers based upon the same if the recalculated amounts exceed the amounts paid based on the CCC system.

37.    Signor and the Class additionally petition this Court for a declaration that Fla. Stat. § 626.9743(5) and the Collision and Comprehensive coverages of the Policy require payment of dealer fees as part as part of a total loss settlement. They also seek further or supplemental relief in the form of an order requiring Safeco to offer dealer fees to them.

38.     Signor and the Class additionally petition this Court for a declaration that the Policy does not grant Safeco the right to take the salvage values of their total loss vehicles such that doing so breaches the Policy. They also seek further or supplemental relief in the form of an order requiring Safeco to pay them the salvage values of their total loss vehicles.

39.     Signor has retained the undersigned counsel to prosecute this action, and she and the Class are entitled to recover their reasonable attorneys' fees and costs for pursuing this cause of action pursuant to Fla. Stat. § 627.428.

<u>**Count II- Class Action for Breach of Contract by Use of the CCC System**</u>

40.     Signor and the Class re-allege and incorporate by reference Paragraphs 1-65 above.

41.     The Policy constituted binding contacts between Safeco and Signor and the other Class members. Pursuant to Florida law, to the extent the Policy's express terms regarding the adjustment and settlement of first-party motor vehicle total losses on the basis of actual cash value vary from the provisions of Fla. Stat. § 626.9743(5) & (6), it is deemed amended to conform with that statute.

42.     As explained above, by using the CCC system to adjust and settle the first-party motor vehicle total losses of Signor and the Class, GEICO breached the Collision and Comprehensive coverages of the Policy as to them. Such breach proximately injured Signor and each Class member in the amount of the difference between the "Base Vehicle Value" or the "Adjusted Vehicle Value" calculated by the CCC system for the Class member's total loss vehicle and the NADA database retail clean or dealer value for the vehicle, plus the additional sales tax on that amount. Alternatively, the breach proximately injured each in the amount of the Uniform Condition Adjustments in their CCC Report, plus the additional sales tax on that amount.

43.     Pursuant to Fla. Stat. § 627.428, Signor and the Class are entitled to recover their reasonable attorneys' fees and costs incurred in prosecuting this cause of action.

### Count III-Class Action for Breach of Contract for Dealer Fees

44.     Signor and the Class re-allege and incorporate by reference Paragraphs 1-65 above.

45.     The Policy constituted binding contacts between Safeco and Signor and the other Class members. Pursuant to Florida law, to the extent the Policy's express terms regarding the adjustment and settlement of first-party motor vehicle total losses on the basis of actual cash value vary from the provisions of Fla. Stat. § 626.9743(5) & (6), it is deemed amended to conform with that statute.

46.     As explained above, by refusing to pay Signor and the Class the dealer fees they would presumptively incur, Safeco breached the Collision and Comprehensive coverages of the Policy. Such breach proximately injured Signor and each Class member in the amount of the average dealer fees in Florida.

47.     Pursuant to Fla. Stat. § 627.428, Signor and the Class are entitled to recover their reasonable attorneys' fees and costs incurred in prosecuting this cause of action.

### Count IV-Class Action for Breach of Contract for Taking Salvage Values

48.     Signor and the Class re-allege and incorporate by reference Paragraphs 1-53 above.

49.     The Policy constituted binding contacts between Safeco and Signor and the other Class members. Pursuant to Florida law, to the extent the Policy's express terms regarding the adjustment and settlement of first-party motor vehicle total losses on the basis of actual cash value vary from the provisions of Fla. Stat. § 626.9743(5) & (6), it is deemed amended to conform with that statute.

50.     As explained above, by taking the salvage values of Signor's and the Class' total loss vehicles, Safeco breached the Policy. Such breach proximately injured Signor and each Class member in the net amounts realized by Safeco from the sales of their total loss vehicles (if ownership was transferred to Safeco) or the amounts deducted by Safeco for "salvage" from their

total loss payments.

51.     Pursuant to Fla. Stat. § 627.428, Signor and the Class are entitled to recover their reasonable attorneys' fees and costs incurred in prosecuting this cause of action.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff Gina Signor and the Class respectfully request the Court to award them the following relief against Safeco:

a.      Issue an order certifying that this action is properly maintainable as a class action under Rule 1.220(b)(1)(a), (2) and/or (3) and appointing Signor to represent the Class defined herein;

b.      Issue an order appointing the undersigned law firms as class counsel;

c.      Grant a judgment pursuant to Count I against Safeco to Signor and the other members of the Class declaring the parties' respective rights and obligations under the Policy and Florida law and ordering further or supplemental relief as set forth above;

d.      Grant a judgment pursuant to Counts II, III and IV against Safeco awarding Signor and the other members of the Class damages for breach of contract as set forth above;

e.      Grant a judgment against Safeco pursuant to Counts I, II, III and/or IV awarding Signor and the Class their reasonable attorneys' fees and costs incurred in this action pursuant to Fla. Stat. § 627.428;

f.      Grant a judgment pursuant to Counts II, III and IV against Safeco awarding Signor and the Class pre-judgment and post-judgment interest at the maximum rates permissible at law or in equity; and

g.      Grant a judgment against Safeco awarding Signor and the Class all such other and further relief, general or special, legal or equitable, to which they may be justly entitled.

## Demand for Jury Trial

Signor and the Class hereby demand a trial by jury on all the issues so triable.

Respectfully Submitted,

*/s/Scott R. Jeeves*
Scott R. Jeeves, Esquire FBN 0905630
Primary Email: sjeeves@jeeveslawgroup.com
Secondary Email: khill@jeeveslawgroup.com
lawclerk@jeeveslawgroup.com
rmandel@jeevesmandellawgroup.com
**THE JEEVES LAW GROUP, P.A**.
954 First Avenue North
St. Petersburg, FL 33705
Telephone: (727) 894-2929

and


Craig E. Rothburd, Esquire FBN 49182
Email: crothburd@e-rlaw.com
**CRAIG E. ROTHBURD, P.A.**
320 W. Kennedy Blvd., Suite 700
Tampa, FL 33606
Telephone: (813) 251-8800

and

Casim Adam Neff, Esquire FBN 94030
**NEFF INSURANCE LAW, PLLC**

P.O. Box 15063
St. Petersburg, FL 33733-5063
Telephone: (727) 342-0617
Primary: cneff@neffinsurancelaw.com

and

Edward H. Zebersky, Esq. FBN 0908370
Mark S. Fistos, Esq. FBN 909191
**ZEBERSKY PAYNE, LLP**
110 S.E. 6th Street, Suite 210
Ft. Lauderdale, FL 33301
Telephone: (954) 989-6333
Emails: ezebersky@zpllp.com;
mfistos@zpllp.com; ndiaz@zpllp.com

and

Alec H. Schultz, Esq. FBN 35022
Carly A. Kligler, Esq. FBN 83990

**LEÓN COSGROVE, LLP**
255 Alhambra Circle, Suite 800
Coral Gables, FL 33134
Telephone: (305) 740-1975
Primary: ashultz@leoncosgrove.com;
ckligler@leoncosgrove.com

and

Benjamin H. Dampf
Bar Roll No. 32416 (to be admitted pro hac vice)
**WHALEY LAW FIRM**


6700 Jefferson Highway
Building 12, Suite A
Baton Rouge, Louisiana 70806
Telephone: 225-302-8810
Telecopier: 225-302-8814
Email: ben@whaleylaw.com


**ATTORNEYS FOR PLAINTIFF GINA
SIGNOR AND THE CLASS**

Exhibit A



**CONTACT US**

**By Phone**
**Direct:** (317) 805-2877
Toll Free: (800) 332-3226
Ext. 20654

**By E-mail**
daniel.copeland@
safeco.com

**Safeco Insurance Company of Illinois**
P.O. Box 515097
Los Angeles, CA 90051-5097

January 17, 2019


Gina Signor
2677 3rd Ave N
Clearwater FL 33759-1006


Claim Number:        PD000-039002023-03
Date of Loss:        01/11/2019
Policy Number:       F3417303
Year: 2014   Make: Lexs   Model: ls 250
VIN #: JTHBF1D29E5023049

Re: The latest information about your vehicle claim

Dear Gina Signor,

As your Safeco Insurance Claims Representative, my goal is to make
your claims experience as easy and worry-free as possible. I'm writing
you now to share the latest information about your claim.

Based on our review, your vehicle was determined to be a "total loss".
This means we will issue a payment based on its its pre-accident value
(see table below).

To ensure prompt payment, this letter covers all your claim settlement
options and next steps, including:
- How we determined your payment
- How to receive prompt payment with completion of paperwork
- Handling storage fees
- Management of the rental car



**How We Determined Your Payment**

We calculated the actual cash value of your vehicle by assessing its pre-accident condition, mileage, and options. Other factors, such as applicable taxes and fees, state and policy provisions, and your deductible, were then taken into account.

*We have applied applicable state taxes and fees to the settlement of your total loss as outlined here. If you incur additional fees directly associated with the replacement of your total loss vehicle please submit the information for our review.*

| | |
|---|---|
| Actual cash value: | $17,966.00 |
| Plus applicable taxes and fees: | $1235.71 |
| Minus your deductible: | $500.00 |
| **Vehicle owner payment:** | $18701.71 |

| | |
|---|---|
| Total amount paid on this claim (this amount should include Lienholder payment): | $18701.71 |

**How to Receive Prompt Payment With Completion of Paperwork**

My records show you have chosen to transfer ownership of your vehicle to  Safeco Insurance. To transfer vehicle ownership and receive prompt payment, please  <u>fill out and return all of the items listed below</u> as soon as possible.

Collect and send the items listed below:

- **Spare Key**- Please send your spare key or key fob using the included small envelope, if applicable.

Fill out and return the enclosed form(s):

- **Secure Power of Attorney Form**- Each vehicle owner must sign the enclosed form in the designated area and return the original. Signature(s) must appear exactly as the name(s) appear on the title. A guide is included to assist with filling out this form.

When you send your title and/or power of attorney documents, make sure they have not been changed or altered in any way. Any alteration may delay the processing of your claim.

Please return all completed items within two business days of receipt of this letter.

I have provided a UPS return label. You can ship the form(s) back to us by using one of the following methods:
- Return the paperwork from your place of employment if UPS picks up on a daily basis.
- Drop off at a local UPS pickup box or UPS store.
- Call UPS for pick-up at your home or business. Please be aware that UPS charges a fee for this service.

**Additional Information to Know**

**Length of Rental Coverage** – We will continue to pay for your rental car until  01/25/2019. After this date, payment for the rental vehicle will be your responsibility. However, you're welcome to stay in the rental as long as needed with our reduced rates.

**Payment to Your Lienholder** – If you have a lien on your vehicle, we'll issue the payment to your lienholder first and any remaining balance will be issued to you. Please continue to make your monthly loan payment at this time. If you have any questions about making further loan payments, please contact your lienholder.



**Updating Your Policy** – Since your vehicle has been deemed a total loss, please contact your agent to have your vehicle removed from your policy. Your  agent can answer any questions about changes to your policy or premium.

Please know that I'll be here for you throughout the entire process. If you have any questions, just call me at (317) 805-2877 and I'll be happy to help you. Thank you for trusting  Safeco Insurance to protect you on the road.


Sincerely,
Daniel Copeland
Safeco Claims



## TL UPS Label Form

Type of Request: **Two Way Title Direct**

Submitter's Name: <u>Daniel Copeland</u>

Submitter's Office: <u>014I INDIANAPOLIS, IN-PARKWOOD</u>

Submitter's Email: <u>daniel.copeland@safeco.com</u>

Claim Number: <u>PD000-039002023-03</u>

Vendor: INSURANCE AUTO AUCTIONS DBA IA

Lot Number: <u>24281311</u>

### 1. Instructions for outgoing UPS package to customer:
Destination Name: Gina Signor

Destination Address:  2677 3RD AVE N, CLEARWATER, FL 33759-1006

Packaging type: UPS Letter

Service: UPS Next

Signature Required: No

Saturday Delivery: No

### 2. Instructions for creating UPS package's Return Label:
Return Addressee: INSURANCE AUTO AUCTIONS DBA IAA Tampa North,8838 Bolton Ave, Hudson, FL 34667-3657

Additional Instructions:  Please include spare key envelope, FL secure POA, POA guide, UPS return label



## Special Mailing Instruction Form

Signature Name: <u>Daniel Copeland</u>

Submitter's Office: <u>014I INDIANAPOLIS, IN-PARKWOOD</u>

Submitter's Email: <u>daniel.copeland@safeco.com</u>

Claim Number: <u>PD000-039002023-03</u>

**Mailing Options :**

Overnight

**Special Instructions:** Please include spare key envelope, FL secure POA, POA guide, UPS return label

 **MARKET VALUATION REPORT**

*Prepared for SAFECO INSURANCE COMPANY OF ILLINOIS*

##  REPORT SUMMARY

### CLAIM INFORMATION

| | |
|---|---|
| Owner | Signor, Gina |
| | 2677 3rd Ave N |
| | Clearwater, FL 33759-1006 |
| Loss Vehicle | 2014 Lexus IS 250 Automatic RWD |
| Loss Incident Date | 01/11/2019 |
| Claim Reported | 01/16/2019 |

The CCC ONE® Market Valuation Report reflects CCC Information Services Inc.'s opinion as to the value of the loss vehicle, based on information provided to CCC by SAFECO INSURANCE COMPANY OF ILLINOIS.

Loss vehicle has 3% greater than average mileage of 62,200.

###  INSURANCE INFORMATION

| | |
|---|---|
| Report Reference Number | 91510719 |
| Claim Reference | 039002023-0003 |
| Adjuster | Ramirez, Amber |
| Appraiser | Brandt, Craig |
| Odometer | 64,000 |
| Last Updated | 01/16/2019 10:11 AM |

### VALUATION SUMMARY

| | |
|---|---|
| **Base Vehicle Value** | **$ 17,377.00** |
| Condition Adjustment | + $ 589.00 |
| **Adjusted Vehicle Value** | **$ 17,966.00** |
| Vehicular Tax (6.2783%) | + $ 1,127.96 |
| Tax reflects applicable state, county and municipal taxes. | |
| **Value before Deductible** | **$ 19,093.96** |
| Deductible | - $ 500.00 |
| **Total** | **$ 18,593.96** |

The total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account.

This is derived per our Valuation methodology described on the next page.

This is determined by adjusting the Base Vehicle Value to account for the actual condition of the loss vehicle and certain other reported attributes, if any, such as refurbishments and after factory equipment.

Inside the Report

Valuation Methodology............................2
Vehicle Information..................................3
Vehicle Condition....................................6
Comparable Vehicles.............................7
Valuation Notes.....................................12
Supplemental Information.....................13

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

| CCC ONE. **MARKET VALUATION REPORT** | Owner: Signor, Gina<br>Claim: 039002023-0003 |

# VALUATION METHODOLOGY

### How was the valuation determined?



**CLAIM INSPECTION**

SAFECO INSURANCE COMPANY OF ILLINOIS has provided CCC with the zip code where the loss vehicle is garaged, loss vehicle VIN, mileage, equipment, as well as loss vehicle condition, which is used to assist in determining the value of the loss vehicle.



CCC maintains an extensive database of vehicles that currently are or recently were available for sale in the U.S. This database includes vehicles that CCC employees have physically inspected, as well as vehicles advertised for sale by dealerships or private parties. All of these sources are updated regularly.



When a valuation is created the database is searched and comparable vehicles in the area are selected. The zip code where the loss vehicle is garaged determines the starting point for the search. Comparable vehicles are similar to the loss vehicle based on relevant factors.



Adjustments to the price of the selected comparable vehicles are made to reflect differences in vehicle attributes, including mileage and options. Dollar adjustments are based upon market research.

Finally, the Base Vehicle Value is the weighted average of the adjusted values of the comparable vehicles based on the following factors:

    Source of the data (such as inspected versus advertised)
    Similarity (such as equipment, mileage, and year)
    Proximity to the loss vehicle's primary garage location
    Recency of information

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT** | Owner: Signor, Gina
Claim: 039002023-0003

# 🚗 VEHICLE INFORMATION

## VEHICLE DETAILS

| | |
|---|---|
| Location | CLEARWATER, FL  33759-1006 |
| VIN | JTHBF1D29E5023049 |
| Year | 2014 |
| Make | Lexus |
| Model | IS 250 |
| Body Style | Automatic RWD |
| Body Type | Sedan |
| Engine - | |
|     Cylinders | 6 |
|     Displacement | 2.5L |
|     Fuel Type | Gasoline |
|     Carburation | Gasoline Direct Injection |
| Transmission | Automatic Transmission |
| Curb Weight | 3461 lbs |

Vehicles sold in the United States are required to have a manufacturer assigned Vehicle Identification Number(VIN). This number provides certain specifications of the vehicle.

Please review the information in the Vehicle Information Section to confirm the reported mileage and to verify that the information accurately reflects the options, additional equipment or other aspects of the loss vehicle that may impact the value.

## VEHICLE ALLOWANCES

| | | |
|---|---|---|
| **Odometer** | 64,000 | - 232 |

Allowances are factors influencing the value of the loss vehicle when compared to a typical vehicle. The typical vehicle is a vehicle of the same year, make, and model as the loss vehicle, including average mileage, and all standard equipment. These allowances are displayed for illustrative purposes only.

The Base Vehicle Value is calculated from the comparable vehicles with adjustments to reflect the loss vehicle configuration

## VEHICLE HISTORY SUMMARY

| | | |
|---|---|---|
| CCC VINguard® | | |
| | 15 Vehicle Market History Information | 06/03/2016 |
| Experian AutoCheck | No Title Problem Found | |
| Insurance Services Organization/ National Insurance Crime Bureau | 1 Record Found | |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.



**MARKET VALUATION REPORT**

| Owner: Signor, Gina
| Claim: 039002023-0003

# 🚗 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | |
|---|---|
| **Odometer** | 64,000 |
| **Transmission** | Automatic Transmission |
| **Power** | Power Steering |
| | Power Brakes |
| | Power Windows |
| | Power Locks |
| | Power Mirrors |
| | Power Driver Seat |
| | Power Passenger Seat |
| | Power Trunk/Gate Release |
| **Decor/Convenience** | Air Conditioning |
| | Climate Control |
| | Tilt Wheel |
| | Cruise Control |
| | Rear Defogger |
| | Intermittent Wipers |
| | Console/Storage |
| | Overhead Console |
| | Keyless Entry |
| | Telescopic Wheel |
| | Message Center |
| | Home Link |
| **Seating** | Bucket Seats |
| | Reclining/Lounge Seats |
| | Leather Seats |
| **Radio** | AM Radio |
| | FM Radio |
| | Stereo |
| | Search/Seek |
| | CD Player |
| | Steering Wheel Touch Controls |
| | Auxiliary Audio Connection |

To the left is the equipment of the loss vehicle that SAFECO INSURANCE COMPANY OF ILLINOIS provided to CCC.

**Standard** This equipment is included in the base configuration of the vehicle at time of purchase.

**Additional** Equipment that is not Standard but was noted to be on the loss vehicle.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT** | Owner: Signor, Gina
Claim: 039002023-0003

# 🚐 VEHICLE INFORMATION

**VEHICLE EQUIPMENT**

|  |  |
|---|---|
|  | Satellite Radio |
| **Wheels** | Aluminum/Alloy Wheels |
| **Roof** | Electric Glass Roof |
| **Safety/Brakes** | Air Bag (Driver Only) |
|  | Passenger Air Bag |
|  | Anti-lock Brakes (4) |
|  | 4-wheel Disc Brakes |
|  | Front Side Impact Air Bags |
|  | Head/Curtain Air Bags |
|  | Rear Side Impact Air Bags |
|  | Communications System |
|  | Hands Free |
|  | Xenon Headlamps |
|  | Alarm |
|  | Traction Control |
|  | Stability Control |
| **Exterior/Paint/Glass** | Dual Mirrors |
|  | Heated Mirrors |
|  | Tinted Glass |
|  | Fog Lamps |
|  | Signal Integrated Mirrors |
|  | Clearcoat Paint |
|  | Metallic Paint |

 **MARKET VALUATION REPORT** | Owner: Signor, Gina
Claim: 039002023-0003

# 🚗 VEHICLE CONDITION

## COMPONENT CONDITION

| | Condition | Inspection Notes | Value Impact |
|---|---|---|---|
| **INTERIOR** | | | |
| Seats | NORMAL WEAR | light wear drivers side | $ 0 |
| Carpets | DEALER READY | clean | $ 38 |
| Dashboard | NORMAL WEAR | Light wear. | $ 0 |
| Headliner | DEALER READY | clean | $ 38 |
| **EXTERIOR** | | | |
| Sheet Metal | DEALER READY | All panels intact and properly aligned. | $ 209 |
| Trim | DEALER READY | No broken and/or missing components | $ 247 |
| Paint | NORMAL WEAR | Slight Fading. | $ 0 |
| Glass | DEALER READY | Light surface scratches and/or pitting. | $ 38 |
| **MECHANICAL** | | | |
| Engine | NORMAL WEAR | could not open hood | $ 0 |
| Transmission | NORMAL WEAR | could not open hood | $ 0 |
| **TIRES** | | | |
| Front Tires | DEALER READY | both 7/32 | $ 19 |
| Rear Tires | NORMAL WEAR | both 6/32 | $ 0 |

SAFECO INSURANCE COMPANY OF ILLINOIS uses condition inspection guidelines to determine the condition of key components of the loss vehicle prior to the loss. The guidelines describe physical characteristics for these key components, for the condition selected based upon age. Inspection Notes reflect observations from the appraiser regarding the loss vehicle's condition.

CCC makes dollar adjustments that reflect the impact the reported condition has on the value of the loss vehicle as compared to Normal Wear condition. These dollar adjustments are based upon interviews with dealerships across the United States.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE**   **MARKET VALUATION REPORT** | Owner: Signor, Gina
Claim: 039002023-0003

## 🔍 COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| Odometer | 64,000 | 49,279 | 78,625 | 32,173 |
| Automatic Transmission | | | | |
| Power Steering | | | | |
| Power Brakes | | | | |
| Power Windows | | | | |
| Power Locks | | | | |
| Power Mirrors | | | | |
| Power Driver Seat | | | | |
| Power Passenger Seat | | | | |
| Power Trunk/Gate Release | | | | |
| Air Conditioning | | | | |
| Climate Control | | | | |
| Tilt Wheel | | | | |
| Cruise Control | | | | |
| Rear Defogger | | | | |
| Intermittent Wipers | | | | |
| Console/Storage | | | | |
| Overhead Console | | | | |
| Keyless Entry | | | | |
| Telescopic Wheel | | | | |
| Message Center | | | | |
| Home Link | | | | |
| Bucket Seats | | | | |
| Reclining/Lounge Seats | | | | |
| Leather Seats | | | | |
| Heated Seats | | x | x | x |
| Ventilated Seats | | x | x | x |
| AM Radio | | | | |
| FM Radio | | | | |
| Stereo | | | | |
| Search/Seek | | | | |
| CD Player | | | | |
| Steering Wheel Touch Controls | | | | |
| Auxiliary Audio Connection | | | | |
| Satellite Radio | | | | |
| Aluminum/Alloy Wheels | | | | |
| Electric Glass Roof | | | | |
| Drivers Side Air Bag | | | | |
| Passenger Air Bag | | | | |
| Anti-lock Brakes (4) | | | | |

**Comp 1**      Updated Date: 12/29/2018
**2014 Lexus Is 250 Automatic Rwd 6**
**2.5l Gasoline Gasoline Direct Injection**
**VIN** JTHBF1D20E5038572
**Dealership** Veterans Ford
**Contact** Lorenzo Pena
**Telephone** (813) 962-1100
**Source** Inspected Inventory
**Stock #** E5038
**Distance from Clearwater, FL**
11 Miles - Tampa, FL

**Comp 2**      Updated Date: 10/23/2018
**2014 Lexus Is 250 Automatic Rwd 6**
**2.5l Gasoline Gasoline Direct Injection**
**VIN** JTHBF1D26E5029763
**Dealership** West Coast Car & Truck
Sales Inc.
**Contact** Ken Mcnall
**Telephone** (727) 576-8007
**Source** Inspected Inventory
**Stock #** 13614
**Distance from Clearwater, FL**
9 Miles - Pinellas Park, FL

**Comp 3**      Updated Date: 01/11/2019
**2014 Lexus Is 250 Automatic Rwd 6**
**2.5l Gasoline Gasoline Direct Injection**
**VIN** JTHBF1D21E5035437
**Dealership** Gettel Toyota
**Contact** Avery Burke
**Telephone** (941) 756-5511
**Source** Inspected Inventory
**Stock #** 1027634A
**Distance from Clearwater, FL**
38 Miles - Bradenton, FL

**Comparable vehicles** used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

**List Price** is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

**Take Price** is the amount that the dealership will accept to sell the inspected vehicle, though a lower price may be obtainable through negotiation.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT**  | Owner: Signor, Gina
Claim: 039002023-0003

# COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| 4-wheel Disc Brakes | | | | |
| Front Side Impact Air Bags | | | | |
| Head/Curtain Air Bags | | | | |
| Backup Camera W/ Parking Sensors | ✗ | | ✗ | |
| Rear Side Impact Air Bags | | | | |
| Communications System | | | | |
| Hands Free | | | | |
| Xenon Headlamps | | | | |
| Alarm | | | | |
| Traction Control | | | | |
| Stability Control | | | | |
| Blind Spot Detection | ✗ | | ✗ | ✗ |
| Dual Mirrors | | | | |
| Heated Mirrors | | | | |
| Tinted Glass | | ✗ | | |
| Privacy Glass | ✗ | | ✗ | ✗ |
| Fog Lamps | | | | |
| Signal Integrated Mirrors | | | | |
| Clearcoat Paint | | | | |
| Metallic Paint | | ✗ | ✗ | ✗ |
| | | | | |
| **List Price** | | $ 19,495 | | $ 20,993 |
| **Take Price** | | $ 19,495 | $ 17,477 | $ 20,993 |
| **Adjustments:** | | | | |
| Options | | - $ 850 | | - $ 200 |
| Mileage | | - $ 1,642 | + $ 1,363 | - $ 2,886 |
| Condition[1] | | - $ 1,064 | - $ 1,064 | - $ 1,064 |

**Distance** is based upon a straight line between loss and comparable vehicle locations.

[1]The **Condition Adjustment** sets that comparable vehicle to Normal Wear condition, which the loss vehicle is also compared to in the Vehicle Condition section.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT** | Owner: Signor, Gina
Claim: 039002023-0003

# COMPARABLE VEHICLES

## ADDITIONAL COMPARABLE VEHICLES

| Source | Vehicle | Price | Adjusted Comparable Value |
|---|---|---|---|
| **Comp 4** | | | |
| Source: Inspected Inventory | **2014 Lexus Is 250** | $ 20,427 | $ 16,803 |
| Lokey Subaru Of Port Richey | **Automatic Rwd 6 2.5l** | (Take) | |
| Port Richey, FL | **Gasoline Gasoline Direct** | | |
| (727) 862-9044 | **Injection** | | |
| 22 Miles From Clearwater, FL | Odometer: 41,315 | | |
| | VIN: JTHBF1D27E5040819 | | |
| | Stock #: 0819 | | |
| | Updated Date: 11/14/2018 | | |
| **Comp 5** | | | |
| Source: Autotrader | **2014 Lexus Is 250** | $ 19,752 | $ 16,755 |
| Dimmitt Cadillac Land Rov | **Automatic Rwd 6 2.5l** | (List) | |
| Clearwater, FL | **Gasoline Gasoline Direct** | | |
| (727) 797-7070 | **Injection** | | |
| 2 Miles From Clearwater, FL | Odometer: 56,896 | | |
| | VIN: JTHBF1D2XE5038448 | | |
| | Stock #: JR349471B | | |
| | Updated Date: 01/13/2019 | | |
| **Comp 6** | | | |
| Source: Autotrader | **2014 Lexus Is 250** | $ 22,981 | $ 19,424 |
| Clearwater Toyota | **Automatic Rwd 6 2.5l** | (List) | |
| Clearwater, FL | **Gasoline Gasoline Direct** | | |
| (727) 799-1234 | **Injection** | | |
| 1 Miles From Clearwater, FL | Odometer: 40,075 | | |
| | VIN: JTHBF1D24E5032144 | | |
| | Stock #: TE5032144 | | |
| | Updated Date: 10/26/2018 | | |
| **Comp 7** | | | |
| Source: Autotrader | **2014 Lexus Is 250** | $ 23,445 | $ 19,121 |
| Dick Norris Buick Gmc - C | **Automatic Rwd 6 2.5l** | (List) | |
| Clearwater, FL | **Gasoline Gasoline Direct** | | |
| (727) 224-9600 | **Injection** | | |
| 3 Miles From Clearwater, FL | Odometer: 28,899 | | |
| | VIN: JTHBF1D26E5019959 | | |
| | Stock #: C4348A | | |
| | Updated Date: 11/03/2018 | | |
| **Comp 8** | | | |

**Additional Comparable Vehicles** are in summary format, but are adjusted the same as those on the previous page.

**Comparable vehicles** used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

**List Price** is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

**Take Price** is the amount that the dealership will accept to sell the inspected vehicle, though a lower price may be obtainable through negotiation.

**Distance** is based upon a straight line between loss and comparable vehicle locations.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE**  **MARKET VALUATION REPORT**

Owner: Signor, Gina
Claim: 039002023-0003

# COMPARABLE VEHICLES

## ADDITIONAL COMPARABLE VEHICLES

| | | | |
|---|---|---|---|
| Source: Truecar | **2014 Lexus Is 250** | $ 19,059 | $ 17,088 |
| New Wave Auto | **Automatic Rwd 6 2.5l** | (List) | |
| Pinellas Park, FL | **Gasoline Gasoline Direct** | | |
| (727) 726-6112 | **Injection** | | |
| 9 Miles From Clearwater, FL | Odometer: 59,667 | | |
| | VIN: JTHBF1D21E5040654 | | |
| | Stock #: KIP40654 | | |
| | Updated Date: 12/23/2018 | | |

**Comp 9**

| | | | |
|---|---|---|---|
| Source: Autotrader | **2014 Lexus Is 250** | $ 23,297 | $ 18,466 |
| Drivetime Pinellas Park | **Automatic Rwd 6 2.5l** | (List) | |
| Clearwater, FL | **Gasoline Gasoline Direct** | | |
| (727) 545-1744 | **Injection** | | |
| 3 Miles From Clearwater, FL | Odometer: 35,358 | | |
| | VIN: JTHBF1D29E5033287 | | |
| | Stock #: 1060167501 | | |
| | Updated Date: 01/13/2019 | | |

**Comp 10**

| | | | |
|---|---|---|---|
| Source: Autotrader | **2014 Lexus Is 250** | $ 19,600 | $ 17,873 |
| Ferman Chevrolet Volvo | **Automatic Rwd 6 2.5l** | (List) | |
| Tarpon Springs, FL | **Gasoline Gasoline Direct** | | |
| (888) 331-6566 | **Injection** | | |
| 11 Miles From Clearwater, FL | Odometer: 58,793 | | |
| | VIN: JTHBF1D27E5041310 | | |
| | Stock #: 18P269B | | |
| | Updated Date: 11/19/2018 | | |

**Comp 11**

| | | | |
|---|---|---|---|
| Source: Autotrader | **2014 Lexus Is 250** | $ 25,243 | $ 19,837 |
| Lexus Of Clearwater | **Automatic Rwd 6 2.5l** | (List) | |
| Clearwater, FL | **Gasoline Gasoline Direct** | | |
| (727) 304-3031 | **Injection** | | |
| 3 Miles From Clearwater, FL | Odometer: 29,165 | | |
| | VIN: JTHBF1D24E5043452 | | |
| | Stock #: E5043452 | | |
| | Updated Date: 10/29/2018 | | |

**Comp 12**

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT**

Owner: Signor, Gina
Claim: 039002023-0003

# COMPARABLE VEHICLES

## ADDITIONAL COMPARABLE VEHICLES

| | | | |
|---|---|---|---|
| Source: Truecar | **2014 Lexus Is 250** | $ 16,995 | $ 17,771 |
| C&I Motors | **Automatic Rwd 6 2.5l** | (List) | |
| Tampa, FL | **Gasoline Gasoline Direct** | | |
| (813) 889-7300 | **Injection** | | |
| 10 Miles From Clearwater, FL | Odometer: 87,006 | | |
| | VIN: JTHBF1D29E5027361 | | |
| | Stock #: 8251 | | |
| | Updated Date: 01/13/2019 | | |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT**

| Owner: Signor, Gina
| Claim: 039002023-0003

## VALUATION NOTES

This Market Valuation Report has been prepared exclusively for use by SAFECO INSURANCE COMPANY OF ILLINOIS, and no other person or entity is entitled to or should rely upon this Market Valuation Report and/or any of its contents. CCC is one source of vehicle valuations, and there are other valuation sources available.

Statutes concerning vehicle value include Florida Statute XXXVII - 626.9743.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

CCC▱ONE  **MARKET VALUATION REPORT**

Owner: Signor, Gina
Claim: 039002023-0003

# SUPPLEMENTAL INFORMATION

 **VEHICLE HISTORY INFORMATION**

**VINguard®**

VINguard® Message: VINguard has decoded this VIN without any errors

**ISO Vehicle History:**

| | |
|---|---|
| **Number of times reported to ISO:** | 1 |
| **ISO's file number:** | H0283962905 |
| Loss date: | 01/11/2019 |
| Phone: | 9547712155 |
| Claim ref: | 039002023 |

**Vehicle Market History Information:**

| | |
|---|---|
| This vehicle was reported to CCC on 04/13/2016 | Mileage: 35340 |
| Location: AutoTrader in CLEARWATER, FL | |
| This vehicle was reported to CCC on 04/05/2016 | Mileage: 35340 |
| Location: AutoTrader in GAINESVILLE, FL | |
| This vehicle was reported to CCC on 04/05/2016 | Mileage: 35340 |
| Location: AutoTrader in GAINESVILLE, FL | |
| This vehicle was reported to CCC on 12/27/2015 | Mileage: 35281 |
| Location: TrueCar in MIAMI, FL | |
| This vehicle was reported to CCC on 12/27/2015 | Mileage: 35281 |
| Location: AutoTrader in MIAMI, FL | |
| This vehicle was reported to CCC on 02/16/2016 | Mileage: 35288 |
| Location: AutoTrader in GAINESVILLE, FL | |
| This vehicle was reported to CCC on 02/16/2016 | Mileage: 35288 |
| Location: AutoTrader in GAINESVILLE, FL | |
| This vehicle was reported to CCC on 02/04/2016 | Mileage: 35288 |
| Location: AutoTrader in MIAMI, FL | |
| This vehicle was reported to CCC on 03/12/2016 | Mileage: 35288 |
| Location: AutoTrader in GAINESVILLE, FL | |
| This vehicle was reported to CCC on 03/12/2016 | Mileage: 35288 |
| Location: AutoTrader in GAINESVILLE, FL | |
| This vehicle was reported to CCC on 02/26/2016 | Mileage: 35288 |
| Location: AutoTrader in GAINESVILLE, FL | |
| This vehicle was reported to CCC on 02/26/2016 | Mileage: 35288 |
| Location: AutoTrader in GAINESVILLE, FL | |
| This vehicle was reported to CCC on 03/02/2016 | Mileage: 35288 |
| Location: AutoTrader in GAINESVILLE, FL | |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT**

Owner: Signor, Gina
Claim: 039002023-0003

# SUPPLEMENTAL INFORMATION

## VEHICLE HISTORY INFORMATION

This vehicle was reported to CCC on 03/02/2016          Mileage: 35288

Location: AutoTrader in GAINESVILLE, FL

This vehicle was reported to CCC on 06/03/2016          Mileage: 35340

Location: CCC Inspected in CLEARWATER, FL

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC ONE  MARKET VALUATION REPORT

Owner: Signor, Gina
Claim: 039002023-0003

## SUPPLEMENTAL INFORMATION

 **EXPERIAN® AUTOCHECK® VEHICLE HISTORY REPORT**

CCC provides SAFECO INSURANCE COMPANY OF ILLINOIS information reported by Experian regarding the **2014 Lexus IS 250 (JTHBF1D29E5023049)**. This data is provided for informational purposes. Unless otherwise noted in this Valuation Detail, CCC does not adjust the value of the loss vehicle based upon this information.

**LEGEND :**

No Event Found

Event Found

Information Needed

### TITLE CHECK

| | RESULTS FOUND |
|---|---|
| Abandoned | No Abandoned Record Found |
| Damaged | No Damaged Record Found |
| Fire Damage | No Fire Damage Record Found |
| Grey Market | No Grey Market Record Found |
| Hail Damage | No Hail Damage Record Found |
| Insurance Loss | No Insurance Loss Record Found |
| Junk | No Junk Record Found |
| Rebuilt | No Rebuilt Record Found |
| Salvage | No Salvage Record Found |

**TITLE CHECK**

AutoCheck's result for this loss vehicle show no significant title events. When found, events often indicate automotive damage or warnings associated with the vehicle.

### EVENT CHECK

| | RESULTS FOUND |
|---|---|
| NHTSA Crash Test Vehicle | No NHTSA Crash Test Vehicle Record Found |
| Frame Damage | No Frame Damage Record Found |
| Major Damage Incident | No Major Damage Incident Record Found |
| Manufacturer Buyback/Lemon | No Manufacturer Buyback/Lemon Record Found |
| Odometer Problem | No Odometer Problem Record Found |
| Recycled | No Recycled Record Found |
| Water Damage | No Water Damage Record Found |
| Salvage Auction | No Salvage Auction Record Found |

**EVENT CHECK**

AutoCheck's result for this loss vehicle show no historical events that indicate a significant automotive problem. These problems can indicate past previous car damage, theft, or other significant problems.

### VEHICLE INFORMATION

| | RESULTS FOUND |
|---|---|
| Accident | No Accident Record Found |
| Corrected Title | No Corrected Title Record Found |
| Driver Education | No Driver Education Record Found |
| Fire Damage Incident | No Fire Damage Incident Record Found |
| Lease | No Lease Record Found |
| Lien | No Lien Record Found |
| Livery Use | No Livery Use Record Found |
| Government Use | No Government Use Record Found |
| Police Use | No Police Use Record Found |
| Fleet | No Fleet Record Found |
| Rental | No Rental Record Found |
| Fleet and/or Rental | No Fleet and/or Rental Record Found |
| Repossessed | No Repossessed Record Found |
| Taxi use | No Taxi use Record Found |
| Theft | No Theft Record Found |
| Fleet and/or Lease | No Fleet and/or Lease Record Found |
| Emissions Safety Inspection | No Emissions Safety Inspection Record Found |
| Duplicate Title | No Duplicate Title Record Found |

**VEHICLE INFORMATION**

AutoCheck's result for this loss vehicle show no vehicle information that indicate a significant automotive problem. These problems can indicate past previous car damage, theft, or other significant problems.

**ODOMETER CHECK**

AutoCheck's result for this loss vehicle show no indication of odometer rollback or tampering was found. AutoCheck determines odometer rollbacks by searching for records that indicate odometer readings less than a previously reported value. Other odometer events can report events of tampering, or possible odometer breakage.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC⬛ONE.** **MARKET VALUATION REPORT** | Owner: Signor, Gina
Claim: 039002023-0003

# SUPPLEMENTAL INFORMATION

📖 **FULL HISTORY REPORT RUN DATE: 01/16/2019**

Below are the historical events for this vehicle listed in chronological order.

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 01/08/2014 | FL | | Independent Source | VEHICLE MANUFACTURED AND SHIPPED TO DEALER |
| 01/08/2014 | | | Independent Source | VEHICLE MANUFACTURED AND SHIPPED TO DEALER |
| 01/18/2014 | FL | 299 | Motor Vehicle Dept. | ODOMETER READING FROM DMV |
| 01/18/2014 | MIAMI BEACH, FL | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 02/19/2014 | FL | | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 12/18/2014 | MIAMI BEACH, FL | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 12/15/2015 | MIAMI BEACH, FL | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 01/14/2016 | FL | 35288 | Auto Auction | REPORTED AT AUTO AUCTION |
| 01/18/2016 | FL | 35288 | Auto Auction | REPORTED AT AUTO AUCTION AS DEALER VEHICLE |
| 01/21/2016 | MARQUETTE, MI | 35291 | Dealer Service | VEHICLE DETAILED |
| 01/21/2016 | MARQUETTE, MI | | Dealer Service | WIPERS REPLACED AND/OR SERVICED |
| 01/21/2016 | MARQUETTE, MI | | Dealer Service | VEHICLE INSPECTED |
| 01/21/2016 | MARQUETTE, MI | | Dealer Service | LUBE, OIL AND/OR FILTER CHANGED |
| 01/27/2016 | MARQUETTE, MI | 35295 | Dealer Service | VEHICLE PAINTED OR REPAINTED |
| 02/02/2016 | MARQUETTE, MI | 35297 | Dealer Service | VEHICLE SERVICED |
| 04/03/2016 | FL | 35340 | Auto Auction | REPORTED AT AUTO AUCTION |
| 04/04/2016 | FL | | Auto Auction | REPORTED AT AUTO AUCTION AS DEALER VEHICLE |
| 04/06/2016 | CLEARWATER, FL | 35340 | Dealer Service | MULTIPLE POINT VEHICLE INSPECTION |
| 04/06/2016 | CLEARWATER, FL | | Dealer Service | VEHICLE DETAILED |
| 04/06/2016 | CLEARWATER, FL | | Dealer Service | TIRES OR WHEELS SERVICE PERFORMED |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC○ONE  MARKET VALUATION REPORT

Owner: Signor, Gina
Claim: 039002023-0003

# SUPPLEMENTAL INFORMATION

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 04/06/2016 | CLEARWATER, FL | | Dealer Service | LUBE, OIL AND/OR FILTER CHANGED |
| 04/06/2016 | CLEARWATER, FL | | Dealer Service | PROMOTIONAL SERVICE PERFORMED |
| 04/15/2016 | CLEARWATER, FL | 35354 | Dealer Service | BODY SERVICE PERFORMED |
| 04/15/2016 | CLEARWATER, FL | | Dealer Service | VEHICLE SERVICED |
| 04/25/2016 | CLEARWATER, FL | | Dealer Service | VEHICLE SERVICED |
| 05/17/2016 | FL | 35358 | Motor Vehicle Dept. | ODOMETER READING FROM DMV |
| 05/17/2016 | CLEARWATER, FL | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL (Lease Reported) |
| 06/06/2016 | CLEARWATER, FL | | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 03/15/2017 | CLEARWATER, FL | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 03/15/2018 | CLEARWATER, FL | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 11/21/2018 | CLEARWATER, FL | | Motor Vehicle Dept. | TITLE (Lien Reported) (Lease Reported) |

**AUTOCHECK TERMS AND CONDITIONS:**

Experian's Reports are compiled from multiple sources. It is not always possible for Experian to obtain complete discrepancy information on all vehicles; therefore, there may be other title brands, odometer readings or discrepancies that apply to a vehicle that are not reflected on that vehicle's Report. Experian searches data from additional sources where possible, but all discrepancies may not be reflected on the Report.

These Reports are based on information supplied to Experian by external sources believed to be reliable, BUT NO RESPONSIBILITY IS ASSUMED BY EXPERIAN OR ITS AGENTS FOR ERRORS, INACCURACIES OR OMISSIONS. THE REPORTS ARE PROVIDED STRICTLY ON AN "AS IS WHERE IS" BASIS, AND EXPERIAN FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE REGARDING THIS REPORT.

YOU AGREE TO INDEMNIFY EXPERIAN FOR ANY CLAIMS OR LOSSES, INCLUDING COSTS, EXPENSES AND ATTORNEYS FEES, INCURRED BY EXPERIAN ARISING DIRECTLY OR INDIRECTLY FROM YOUR IMPROPER OR UNAUTHORIZED USE OF AUTOCHECK VEHICLE HISTORY REPORTS.

Experian shall not be liable for any delay or failure to provide an accurate report if and to the extent which such delay or failure is caused by events beyond the reasonable control of Experian, including, without limitation, "acts of God", terrorism, or public enemies, labor disputes, equipment malfunctions, material or component shortages, supplier failures, embargoes, rationing, acts of local, state or national governments, or public agencies, utility or communication failures or delays, fire, earthquakes, flood, epidemics, riots and strikes.

These terms and the relationship between you and Experian shall be governed by the laws of the State of Illinois (USA) without regard to its conflict of law provisions. You and Experian agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Cook, Illinois.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

Exhibit B

# JlG

# JEEVES LAW GROUP P.A.

PERSONAL INJURY · PERSONAL ATTENTION

February 12, 2019

Dan Copeland
Safeco Insurance Company of Illinois
P.O. Box 515097
Los Angeles, CA  90051
Sent via email to: daniel.copeland@safeco.com
Sent via fax to: 888-268-8840

RE:   My Client/Your Insured : Gina Signor
       Date of Accident    : January 11, 2019
       Safeco Claim       : 39002023

Dear Mr. Copeland:

This is to inform you that my above named client takes the position that Safeco Insurance Company of Illinois ("Your Company") violated Florida law and breached my client's insurance policy ("Policy") in three respects in adjusting my client's total loss claim for my client's 2014 Lexus IS 250 (the "Insured Vehicle") and to provide Your Company a chance to cure those violations and breaches.

As a reminder, Your Company used a CCC One Market Value Report ("CCC One Report") to calculate an actual cash value of the Insured Vehicle of $17966.00, resulting in a total payment of $18593.96 made on the Insured Vehicle after adding amounts for sales tax ($1127.96) and license/transfer fees ($0.00) and subtracting my client's deductible ($500).

Fla. Stat. § 626.9743(5)(a)(2) provides, in pertinent part, as follows:

(5) When the insurance policy provides for the adjustment and settlement of first-party motor vehicle total losses on the basis of actual cash value or replacement with another of like kind and quality, the insurer shall use one of the following methods:

(a) The insurer may elect a cash settlement based upon the actual cost to purchase a comparable motor vehicle, including sales tax, if applicable pursuant to subsection (9). Such cost may be derived from:

...

2. The retail cost as determined from a generally recognized used motor vehicle industry source such as:

a. An electronic database if the pertinent portions of the valuation documents generated by the database are provided by the insurer to the first-party insured upon request;...

To the extent Your Company's Policy could be interpreted on its face as allowing Your Company to value the Insured Vehicle by a method other than those provided in the statute or to pay

www.JeevesLawGroup.com
Page 1 of 2
954 1st Avenue North St. Petersburg, FL 33705 • O: 727.894.2929 • O: 813.249.2929 • F: 727.822.1499

Tampa    •    St. Petersburg    •    Lakeland

other than "the actual cost to purchase a comparable motor vehicle," per the general provisions found in the Policy, Your Company's Policy is deemed amended to conform to the statute.

The payment by Your Company, the accompanying correspondence and the CCC One Report reveal that Your Company has chosen to pay a cash settlement to my client of the retail cost of the Insured Vehicle as determined from an electronic database, specifically the CCC One Database. This violates § 626.9743(5)(a)(2) and thus breaches the Policy, because the CCC One Database is not a "generally recognized used motor vehicle industry source."

Accordingly, my client demands that Your Company recalculate the retail cost of the Insured Vehicle using an electronic database that is a generally recognized used motor industry source. My client suggests using the NADA database because it is clearly a generally recognized used motor vehicle industry source, you likely already have access to it through the CCC One Database, it is otherwise easily available, and it has the capability of giving you a value as of the Date of Loss. If the generally recognized used motor vehicle industry source utilized by Your Company provides a value higher than $17996.00, then my client demands that Your Company pay him the difference plus the additional sales tax that will result.

By paying sales tax as part of the cash settlement without regard to whether my client purchases a replacement vehicle and how much he pays, Your Company properly recognized its obligation under § 626.9743(5)(a)(2) to pay my client all retail costs that he is reasonably likely to incur in purchasing a comparable motor vehicle. Unfortunately, Your Company did not fully pay all such retail costs, resulting in two additional violations of the statute and breaches of the Policy.

First, the proper amount of license/transfer fees that Your Company should have paid is $81.75, and my client demands payment of the difference between this amount and what Your Company previously allowed for these fees. Second, every used car dealer in the Hillsborough/Pinellas area and, indeed, in the State of Florida charges a document fee, so Your Company should have reasonably anticipated my client would incur such a charge in purchasing a comparable motor vehicle at retail, calculated an average or typical charge and paid it to my client. My client now demands Your Company do this and suggests that $500 would be a reasonable amount.

In summary, my client disagrees with and disputes Your Company's determination of actual cash value, and the costs to repair or replace the Insured Vehicle. Please review and respond within ten days as to whether Your Company will cure its violations of Florida law, and breaches of my client's Policy.

Sincerely,

Scott Jeeves, Esq.

SRJ/mmo

```
************************************
***        Send Results        ***
************************************

              Sending is complete.
```

| | |
|---|---|
| Job No. | 2471 |
| Address | 18882688840 |
| Name | |
| Start Time | 02/12 01:40 PM |
| Call Length | 00'40 |
| Sheets | 2 |
| Result | OK |



# JEEVES LAW GROUP P.A.

PERSONAL INJURY · PERSONAL ATTENTION

February 12, 2019

Dan Copeland
Safeco Insurance Company of Illinois
P.O. Box 515097
Los Angeles, CA  90051
Sent via email to: daniel.copeland@safeco.com
Sent via fax to: 888-268-8840

RE:  My Client/Your Insured : Gina Signor
     Date of Accident      : January 11, 2019
     Safeco Claim          : 39002023

Dear Mr. Copeland:

This is to inform you that my above named client takes the position that Safeco Insurance Company of Illinois ("Your Company") violated Florida law and breached my client's insurance policy ("Policy") in three respects in adjusting my client's total loss claim for my client's 2014 Lexus IS 250 (the "Insured Vehicle") and to provide Your Company a chance to cure those violations and breaches.

As a reminder, Your Company used a CCC One Market Value Report ("CCC One Report") to calculate an actual cash value of the Insured Vehicle of $17966.00, resulting in a total payment of $18593.96 made on the Insured Vehicle after adding amounts for sales tax ($1127.96) and license/transfer fees ($0.00) and subtracting my client's deductible ($500).

Fla. Stat. § 626.9743(5)(a)(2) provides, in pertinent part, as follows:

> (5) When the insurance policy provides for the adjustment and settlement of first-party motor vehicle total losses on the basis of actual cash value or replacement with another of like kind and quality, the insurer shall use one of the following methods:
>
> (a) The insurer may elect a cash settlement based upon the actual cost to purchase a comparable motor vehicle, including sales tax, if applicable pursuant to subsection (9). Such cost may be derived from:

Exhibit C



## JEEVES LAW GROUP P.A.
PERSONAL INJURY · PERSONAL ATTENTION

April 1, 2019

Dan Copeland
Safeco Insurance Company of Illinois
P.O. Box 515097
Los Angeles, CA  90051
Sent via email to: daniel.copeland@safeco.com
Sent via fax to: 888-268-8840

RE:  My Client/Your Insured     : Gina Signor
     Date of Accident          : January 11, 2019
     Your Company's Claim       : 39002023

Dear Mr. Copeland:

On behalf of my above-named client, this letter requests documentation in connection with Safeco Insurance Company of Illinois' ("Your Company's") adjustment of total loss claim for my client's 2014 Lexus IS 250 (the "Insured Vehicle") pursuant to Fla. Stat. § 626.9743 or a statement that Your Company does not maintain such documentation. My client also requests that Your Company state whether it maintains such documentation for all its other Florida private automobile insurance policyholder to whom it has made payment on total loss claims in the last five years.

As a reminder, Your Company use a CCC One Market Value Report to calculate an actual cash value of the Insured Vehicle of $17,966.00 (consisting of a base value of $17,377.00 plus a condition adjustment of $589.00), resulting in a total payment of $18,593.96 made on the Insured Vehicle after adding sales tax ($1,127.96), adding license plate and title fees ($107.75) and subtracting her deductible ($500.00). Your Company uses CCC One Reports to value the total loss claims of all of its Florida policyholders.

The CCC One Report calculated the base value by using the weighted average of 12 "comparable vehicles" which were for sale near my client's home at the time of the report or in the preceding 90 days. The CCC One Report that all of the "comparable vehicles" were in "Dealer Retail" condition and deducted $1,064 from the listed price of each as a "condition adjustment" to supposedly set them to the lower value of a vehicle in "Average Private" condition (a lesser condition) to which the total loss vehicle is also supposedly compared. Of course, because the condition adjustments reduced the values of all the "comparable vehicles" used to calculate the value of the Insured Vehicle, they served to reduce the base value of the Insured Vehicle.

The deduction in value to adjust the value of the "comparable vehicles" down from "Dealer Retail" to "Average Private" condition constitutes a deduction for depreciation as that term is outlined in my client's policy at page 25:

"An adjustment for depreciation and physical condition may be made based upon the

www.JeevesLawGroup.com

physical condition and wear and tear of the property or damaged part of the property at the time of loss. This adjustment for physical condition includes but is not limited to, broken, cracked or missing parts, rust, dents, scrapes, gouges and paint condition. When replacing part normally subject to repair or replacement during the useful life of the vehicle, we will not pay for the amount of any betterment."

Thus, given that the "comparable vehicles" were the basis for the calculation of the value of the Insured Vehicle, the condition adjustments constituted a reduction in the value of the Insured Vehicle because of depreciation.

Fla. Stat. § 626.9743(6) provides as follows:

"(6) When the amount offered in settlement reflects a reduction by the insurer because of betterment or depreciation, information pertaining to the reduction shall be maintained with the insurer's claim file. Deductions shall be itemized and specific as to dollar amount and shall accurately reflect the value assigned to the betterment or depreciation. The basis for any deduction shall be explained to the claimant in writing, if requested, and a copy of the explanation shall be maintained with the insurer's claim file."

Accordingly, within seven days of the date of this letter, my client requests a written explanation of the bases for the condition adjustments, including an itemization of each and a specification of each in an appropriate dollar amount. Again, within the same seven days, my client requests a written statement from Your Company as to whether it maintains such information for all its other Florida policyholders to whom it made total loss payments in the last five years. My client additionally demands that your office retain and preserve all data (in its native format) related to Your Company's bases for condition adjustments in connection with my client's claim, the claims of all its other Florida policyholders to whom Your Company made total loss payments in the last five years, and the claims of all future Florida policyholders to whom Your Company will make total loss payment.

Within that same seven days, my client requests Your Company state whether it claims its use of CCC One Reports to adjust the total loss claims of my client and Your Company's other Florida total loss policyholders complied with Fla. Stat. § 626.9743(5)(c), which provides as follows:

"(c) When a motor vehicle total loss is adjusted or settled on a basis that varies from the methods described in paragraph (a) or paragraph (b), the determination of value must be supported by documentation, and any deductions from value must be itemized and specified in appropriate dollar amounts. The basis for such settlement shall be explained to the claimant in writing, if requested, and a copy of the explanation shall be retained in the insurer's claim file."

If Your Company makes this claim, please provide within seven days a written explanation for the basis of Your Company's valuation of the Insured Vehicle, including providing the documentation of the determination of value and of all deductions from value, itemized and specified in specific dollar amounts. Please also state whether Your Company maintains such documentation for all its Florida policyholder to whom it made payments on total loss claims in the last five years. My client additionally demands that your office retain and preserve (in native format) all data related to Your Company's bases for all deductions in value, including condition adjustments in connection with my client's claim, the

claims of all its other Florida policyholders to whom it made total loss payments in the last five years, and for the claims of all future Florida policyholders to whom Your Company will make total loss payment.

Finally, in adjusting my client's total loss claim, Your Company required my client to transfer ownership of the Insured Vehicle to Your Company permanently, but in so doing, Your Company did not pay her any form of monetary consideration attributable to the salvage value of the Insured Vehicle in exchange, just as Your Company does with all its Florida policyholders who suffered covered total losses. No provision in my client's insurance policy with Your Company permitted Your Company to do this. My client now demands that Your Company pay my client the salvage value of the Insured Vehicle it received and, further, that it do the same for all its similarly situated Florida policyholders.

Please review and respond and provide the above requested documentation within seven days. If Your Company fails to do so, my client intends to file suit on his/her own behalf and on behalf of all Your Company's similarly situated Florida policyholders for Your Company's violation of Fla. Stat. § 626.9743(5)-(6).

Sincerely,

Scott R. Jeeves, Esq.

SRJ/kh

```
************************************************
***              Send Results              ***
************************************************

                 Sending is complete.

     Job No.                      2616
     Address                      18882688840
     Name
     Start Time                   04/01 09:14 AM
     Call Length                  01'12
     Sheets                       3
     Result                       OK
```

# $\text{JI}_{\text{G}}$
# JEEVES LAW GROUP™
PERSONAL INJURY • PERSONAL ATTENTION

April 1, 2019

Dan Copeland
Safeco Insurance Company of Illinois
P.O. Box 515097
Los Angeles, CA 90051
Sent via email to: daniel.copeland@safeco.com
Sent via fax to: 888-268-8840

RE: My Client/Your Insured    : Gina Signor
    Date of Accident          : January 11, 2019
    Your Company's Claim       : 39002023

Dear Mr. Copeland:

On behalf of my above-named client, this letter requests documentation in connection with Safeco Insurance Company of Illinois' ("Your Company's") adjustment of total loss claim for my client's 2014 Lexus IS 250 (the "Insured Vehicle") pursuant to Fla. Stat. § 626.9743 or a statement that Your Company does not maintain such documentation. My client also requests that Your Company state whether it maintains such documentation for all its other Florida private automobile insurance policyholder to whom it has made payment on total loss claims in the last five years.

As a reminder, Your Company use a CCC One Market Value Report to calculate an actual cash value of the Insured Vehicle of $17,966.00 (consisting of a base value of $17,377.00 plus a condition adjustment of $589.00), resulting in a total payment of $18,593.96 made on the Insured Vehicle after adding sales tax ($1,127.96), adding license plate and title fees ($107.75) and subtracting her deductible ($500.00). Your Company uses CCC One Reports to value the total loss claims of all of its Florida policyholders.

The CCC One Report calculated the base value by using the weighted average of 12 "comparable vehicles" which were for sale near my client's home at the time of the report or in the preceding 90 days. The CCC One Report that all of the "comparable vehicles" were in "Dealer Retail" condition and

Exhibit D

| From: | Copeland, Daniel |
|---|---|
| To: | Kay Hill |
| Cc: | Law Clerk; Scott Jeeves; Casim Neff; Roger Mandel |
| Subject: | RE: Signor v. Safeco Document: Safeco Letter re Signor Demand; claim number: 39002023 |
| Date: | Wednesday, April 3, 2019 10:19:47 AM |

Hi Kay,

I'm not sure what you are seeking regarding the document that was sent to me but, I can touch base on a few items.

The salvage value is Safeco's recovery amount after the vehicle has been sold at salvage. The settlement is what we pay the insured for her vehicle. The salvage cost would not be a payment to her.
The methodology that Safeco uses is CCC One which of course, is the choice of Safeco. This is a very reputable company that is used all over the country.
I also wanted to add that subrogation is still in process with the at fault party and when we are successful in the recovery, we will issue the deductible of $500.00 back to the insured.

I hope this answered your questions/requests.

Thank you,
Dan Copeland

**From:** Kay Hill [mailto:khill@jeeveslawgroup.com]
**Sent:** Monday, April 01, 2019 9:47 AM
**To:** Copeland, Daniel <Daniel.Copeland@Safeco.com>
**Cc:** Law Clerk <Kylelawclerk@jeeveslawgroup.com>; Scott Jeeves <sjeeves@JeevesLawGroup.com>; Casim Neff <cneff@neffinsurancelaw.com>; Roger Mandel <rmandel@jeevesmandellawgroup.com>
**Subject:** Re: Signor v. Safeco Document: Safeco Letter re Signor Demand; claim number: 39002023

See attached correspondence.

**Kay Hill**
**Jeeves Law Group, P.A.**
*A professional association*

954 1st Avenue North
St. Petersburg, FL 33705
O:    727-894-2929
F:    727-822-1499
<image001.jpg>

**CONFIDENTIALITY NOTE: This electronic mail transmission may contain legally privileged and/or confidential information. This communication originates from the law firm ofJEEVES LAW**

GROUP, P.A., and is protected under the Electronic Communication Privacy Act, 18 U.S.C. § 2510-2521. Do not read this if you are not the person(s) named. Any use, distribution, copying, or disclosure by any other person is strictly prohibited. If you received this transmission in error, please notify the sender by telephone (727-894-2929), or send an electronic mail message to the sender and destroy the original transmission and its attachments without reading or saving in any manner. Do not deliver, distribute or copy this message and/or any attachment and, if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.

CIRCULAR 230 NOTICE: To comply with U.S. Treasury Department and IRS regulations, we are required to advise you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this transmittal, is not intended or written to be used, and cannot be used, by any person for the purpose of (i) avoiding penalties under the U.S. Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this e-mail or attachment.

Exhibit E

1/18/2019

**NADA**
Values
*Licensed by J.D. Power*

NADA Used Cars/Trucks

**Neff Insurance Law, PLLC**

PO Box 15063
St. Petersburg, FL 33733
7273420617
cneff@neffinsurancelaw.com

## Vehicle Information

| | |
|---|---|
| Vehicle: | **2014 Lexus IS Sedan 4D IS250 2.5L V6** |
| Region: | **Southeastern** |
| Period: | **January 11, 2019** |
| VIN: | **JTHBF1D29E5023049** |
| Mileage: | **64,000** |
| Base MSRP: | **$35,950** |
| Typically Equipped MSRP: | **$41,975** |
| Weight: | **3,461** |



## NADA Used Cars/Trucks Values

| Auction* | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Low | $14,100 | $359 | N/A | **$14,459** |
| Average | $15,975 | $359 | N/A | **$16,334** |
| High | $17,875 | $359 | N/A | **$18,234** |
| Trade-In | | | | |
| Rough | $13,550 | $575 | N/A | **$14,125** |
| Average | $15,500 | $575 | N/A | **$16,075** |
| Clean | $17,125 | $575 | N/A | **$17,700** |
| Clean Loan | $15,425 | $575 | N/A | **$16,000** |
| Clean Retail | $19,550 | $575 | N/A | **$20,125** |

*The auction values displayed include typical eqiupment and adjustments for mileage and any of the following applicable accessories: engine size, drivetrain, and trim.

NADA Used Car Guide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report.
NADA Used Car Guide and its logo are registered trademarks of National Automobile Dealers Association, used under license by J.D. Power.
©2019 J.D.Power