UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 0:19-cv-61937-WPD

GINA SIGNOR,

      Plaintiff

v.

SAFECO INSURANCE COMPANY OF ILLINOIS,

      Defendant.

_____/

**SAFECO INSURANCE COMPANY OF ILLINOIS'S
<u>RULE 12(b)(6) MOTION TO DISMISS</u>**

    Safeco Insurance Company of Illinois ("Safeco") hereby moves to dismiss Plaintiff Gina Signor's ("Signor") Class Action Complaint pursuant to FRCP 12(b)(6). In support of its Motion, Safeco states as follows:

**Introduction**

    This is a small dispute over the value of a totaled car that her attorneys have attempted to turn into an effort to wring money out of Safeco under the guise of an effort to police and reform the car insurance industry in Florida. The Court should reign in this ambitious effort by dismissing, or at least narrowing the Complaint, for the following reasons.

    *First*, the Court should dismiss Signor's request for declaratory relief, which seeks to dictate the manner in which insurers value vehicles and the vendors they can hire, because Signor does not have standing to pursue such a claim. There is no private right of action for the provisions of the Florida insurance code cited in Signor's request for declaratory relief. In addition, Signor cannot bring a claim for declaratory relief because there is no realistic threat of

1

future harm to Signor since it is extremely unlikely that Signor will suffer another total loss of her vehicle while covered by an insurance policy from Safeco.

*Second*, the Court should dismiss Signor's breach of contract claims to the extent they are premised on Safeco's alleged violations of subsection (5) of Florida's Claims Settlement Statute because that provision is not mandatory, and therefore, it is not incorporated into Signor's contract. Even if subsection (5) were incorporated into Signor's insurance contract, her Complaint fails to adequately allege that Safeco violated that provision. Moreover, when taken together, Signor's allegations and the valuation report attached to her Complaint demonstrate that Safeco fully complied with subsection (5) when it considered local dealer quotes on the cost to purchase comparable vehicles to Signor's total loss vehicle.

*Third*, the Court should dismiss Signor's breach of contract claims to the extent they are premised on alleged violations of subsection (6) of Florida's Claims Settlement Statute because the Complaint fails to adequately allege that Safeco failed to keep a record of any adjustments made for depreciation or betterment. Instead, the Complaint contains facts showing that Safeco *did* comply with subsection (6) when it generated, maintained, and provided Signor with a copy of CCC's valuation report explaining any adjustments for depreciation or betterment.

*Fourth*, the Court should dismiss Signor's breach of contract claim in Count III for the additional reason that there is no obligation in Signor's insurance agreement or Florida law to reimburse policyholders for dealer's fees – especially since such fees are illegal in Florida.

*Fifth*, the Court should also dismiss Signor's breach of contract claim in Count IV since neither Florida law nor Signor's insurance agreement requires Safeco to return the salvage value of Signor's car. In fact, allowing Signor to retain both the actual cash value of her vehicle and

the salvage value would result in the type of double recovery not permitted under basic contract law.

**Background**

Signor alleges that she was involved in a motor vehicle accident involving her 2014 Lexus IS 250 on January 11, 2019. Compl. ¶ 29. According to the Complaint, Signor's Lexus was covered under an automobile insurance policy issued by Safeco (the "Agreement"). *Id.* Signor alleges that she submitted a claim for the total loss of her Lexus on January 16, 2019. *Id.* ¶ 30. The next day, January 17, 2019, Safeco sent Signor a valuation report prepared by CCC Information Services ("CCC"), which estimated the value of her Lexus to be $17,966.00 at the time of the accident. *Id.* Ex. A.

To arrive at this valuation, the CCC report compared the cost of 12 vehicles located between 1 and 38 miles from Signor's residence in Clearwater, Florida. *Id.* The CCC report provided a detailed analysis of how CCC arrived at the final valuation, which included specific line item information regarding any adjustments made as a result of the age, miles, or condition of Signor's vehicle. *Id.* Safeco ultimately offered Signor $18,701.71 to settle her total loss claim. This amount represented the estimated value of her Lexus ($17,966.00) plus taxes and fees ($1,235.71) and minus Signor's deductible ($500). Compl. Ex. A at p.3.

The next day, January 18, 2019, one of Signor attorneys at Neff Insurance Law, PLLC obtained a valuation report for Signor's vehicle from NADA's Used Care Guide. *See* Compl. Ex. E (NADA report dated "1/18/2019" printed by "Neff Insurance Law, PPLC"). The NADA report shows a wide range of potential valuations depending on the condition of the vehicle. *Id.* Signor and her attorneys of course rely on the highest value in the report ($20,125) and allege that Safeco has undervalued her vehicle by $2,159. *Id.* ¶ 38.

3

Despite already having the NADA report, which provides an arguably higher valuation amount for the Lexus, Signor and her attorneys agreed to settle Signor's claim for the lower valuation amount provided in the CCC report. Signor accepted the settlement amount without disputing the valuation amount and without invoking the appraisal procedure in the Agreement.

Signor's Complaint includes four counts which she purports to bring as a class action on behalf of Florida policyholders who submitted total loss claims to Safeco that were valued by CCC. In Count I, Signor seeks declaratory relief establishing that (a) Florida law prohibits Safeco from using CCC to value total loss claims, (b) Safeco is required to pay "dealer fees" on total loss claims, and (c) Safeco is not permitted to retain the salvage value of total loss vehicles. *Id.* ¶ 24. In Count II, Signor alleges a breach of contract claim and contends that Safeco violated the Agreement by using CCC to value her total loss claim. *Id.* ¶ 41. In Count III, Signor alleges that Safeco also breached the Agreement by failing to reimburse her for dealer fees. *Id.* ¶ 45. Finally, Signor alleges in Count IV that Safeco breached the Agreement by retaining the salvage value of her total loss vehicle. *Id.* ¶ 49.

## Argument

To survive a Rule 12(b)(6) motion to dismiss, the factual allegations in a Complaint must be "plausible" and "must be enough to raise a right to relief above the speculative level." *Ashcroft v. Iqbal,* 129 S. Ct. 1949 (2009). This requires "more than an unadorned, the-defendant-unlawfully harmed- me accusation." *Id.* at 1937. Thus, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.,* 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted). In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.,* 555 F.3d 949,

959 (11th Cir. 2009). The court, however, may consider documents that the complaint incorporates by reference. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

I. **Signor's Claim For Declaratory Relief (Count I) Fails As A Matter Of Law.**

The Court should dismiss Count I for two reasons. First, there is no private right of action for violating Florida statutes at issue in Signor's request for declaratory relief. Second, Signor does not have standing to bring a declaratory action because she does not face a substantial likelihood of future injury.

    A. **Signor Does Not Have Standing To Pursue A Claim For Breach of the Claims Settlement Statute.**

Signor's request for declaratory relief is premised entirely on Safeco's purported violations of Florida's Claim Settlement Statute, Fla. Stat. § 626.9743. Compl. ¶ 24. The Claims Settlement Statute is a subsection of the Florida Unfair Insurance Trade Practices Act ("UITPA"). Although Fla. Stat. § 624.155(1) "creates a private cause of action by any person against an insurer for violating certain enumerated sections of the UITPA," the Claims Settlement Statute is not one of those enumerated sections. *Espana Informatica, S.A. v. Top Cargo, Inc*., 2008 WL 11331683, at *10 (S.D. Fla. Apr. 28, 2008); *see* Fla. Stat. § 624.155(1) (not listing the Claims Settlement Statute as one of the enumerated sections under which a private plaintiff can sue); *see also Joseph v. Bernstein*, 612 F. App'x 551, 557 (11th Cir. 2015) ("We will not imply a cause of action under UITPA where the courts and legislature of the state of Florida have declined to do so.").

Because the UITPA does not provide Signor with standing to pursue a private claim, she cannot assert a statutory claim for declaratory relief. Accordingly, "the UITPA affords

5

[Plaintiffs] no cause of action" here. *Keehn v. Carolina Cas. Ins. Co.*, 758 F.2d 1522, 1524 (11th Cir. 1985).

### B.     There Is No Risk Of Future Harm to Signor.

The Declaratory Judgment Act "provides that a declaratory judgment may only be issued in the case of an 'actual controversy.'" *See Emory v. Peeler*, 756 F.2d 1547, 1551-52 (11th Cir. 1985) (citing 28 U.S.C. § 2201).  Thus, a substantial continuing controversy must exist between the adverse parties.  *Id.* at 1552.  The controversy cannot be "conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury."  *Id.*  Article III standing must be determined at the time that the complaint is filed. *E.g., Arcia v. Florida Sec'y of State*, 772 F.3d 1335, 1340 (11th Cir. 2014).

To demonstrate that a case or controversy satisfies Article III's standing requirement for seeking declaratory relief, the plaintiff must allege facts from which it appears that there is a "substantial likelihood that he will suffer injury in the future."  *Malowney v. Federal Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999).  In other words, "in order for this Court to have jurisdiction to issue a declaratory judgment, . . . [the plaintiffs] must assert a reasonable expectation that the injury they have suffered will continue or will be repeated in the future." *Malowney*, 193 F.3d at 1347.  Accordingly, where a plaintiff does not assert a reasonable expectation of future injury, she lacks standing to bring an action for declaratory relief.  *Id.* Further, a class representative must individually have Article III standing in order to pursue relief on behalf of a class.  *O'Shea v. Littleton*, 94 S.Ct. 669 (1974); *Griffin v. Dugger*, 823 F.2d 1476, 1482-83 (11th Cir. 1987).

Applying this framework, the Eleventh Circuit has found that the exact type of declaratory relief that Signor seeks here does not satisfy the Article III standing requirement. *E. g., A&M Gerber*

6

*Chiropractic LLC v. GEICO Gen. Ins. Co.*, No. 17-15606, 2019 WL 2292326, at *1214 (11th Cir. May 30, 2019).  As the court explained:

> We can see no potential future threat to Carruthers, other than the possibility that he may someday be in another car accident; sustain an injury entitling him to PIP benefits; and still be insured by GEICO under the same or a similar policy being interpreted the same way, thereby having this issue present itself again. But, that is too contingent to constitute a 'substantial likelihood' of future injury.

*Id.*

As in *GEICO*, there is no potential future threat to Signor.  Signor's accident occurred in the past.  The likelihood of Signor suffering another accident while "still insured by [Safeco] under the same policy being interpreted the same way" is extremely low.  *Id.*  Accordingly, Signor lacks standing to pursue a claim for declaratory relief.

**II.     Signor's Claims Under Subsection (5) Of The Claims Settlement Statute Fail.**

**A.     Subsection (5) Of The Claims Settlement Statute Is Not Incorporated Into Signor's Insurance Agreement.**

In order to avoid the limitation on private claims in the UITPA, Signor seeks to disguise her statutory claims as ones for breach of contract.  Signor's three breach of contract claims (Count II, III, and IV) are each premised on Safeco's alleged violation of two statutory provisions of the Claims Settlement Statute, Fla. Stat. § 626.9743(5) & (6), which Signor alleges are incorporated into her Agreement with Safeco.  *See, e.g.,* Compl. ¶¶ 42, 45, 49.  Subsection (5), however, is not incorporated into Signor's Agreement.

Although Florida's insurance code is sometimes incorporated into insurance contracts, that is only the case for mandatory statutory requirements.  As the court explained in *Bastian v. United Svcs. Auto. Ass'n*, 150 F. Supp. 3d 1284, 1295 (M.D. Fla. 2015) when analyzing the same statute at issue here, Fla. Stat. § 626.9743, the use of the permissive word "may" in Florida's insurance code indicates that a provision is *not* automatically incorporated into

7

insurance contracts. *Id.* By contrast, provisions preceded by the mandatory word "shall" are automatically incorporated into insurance contracts. *Id.*

In *Bastian*, the court considered an insurer's argument that Fla. Stat. § 626.9743(9) allowed insurers to pay only the amount of sales tax actually incurred by the policyholder in replacing his or her vehicle. *Id.* at 1291. The insurer relied on the following text of subsection (9): "[i]f sales tax will necessarily be incurred by a claimant upon replacement of a total loss or upon repair of a partial loss, the insurer ***may*** defer payment of the sales tax unless and until the obligation has actually been incurred." *Id.* at 1292 (emphasis added).

The court found that this was permissive language "not incorporated into a policy unless done so expressly." *Id.* at 1294. The court explained that "[t]he statute used the phrase 'may limit reimbursement' in accordance with particular reimbursement schedules, which is 'language that indicates that this option choice is not mandatory.'" *Id.* at 1295 (emphasis in original).

The court also cited multiple Florida state court decisions that reached the same result in the context of other insurance regulations. *Geico Gen. Ins. Co. v. Virtual Imaging Servs.*, 141 So. 3d 147, 157 (Fla. 2013) (holding that use of the word "may" as opposed to "shall" indicated that medical insurance provision was permissive, not mandatory); *Kingsway Amigo Ins. Co. v. Ocean Health, Inc.*, 63 So. 3d 63, 67 (Fla. 4th DCA 2011) (holding that permissive methodology in health insurance code was not applicable since "[t]he applicable policy made no reference" to it); *State Farm Fla. Ins. Co. v. Nichols*, 21 So. 3d 904 (Fla. 5th DCA 2009) (holding that provision providing that insurers "may" limit costs of reimbursement for sinkholes was permissive and not incorporated into policy).

The *Bastian* court went on to explain that the prefatory language in subsection (5) of the Claims Settlement Statute was different because it contains the mandatory word "shall." *Bastian*, 150 F. Supp. 3d at 1295. Accordingly, the court explained that the first part of subsection (5) affirmatively requires a party to use one of four different methods to settle a first-party total loss claim. *Id.* Under subsection (5), an insurer must (a) make a cash settlement based on the actual cost to purchase a comparable vehicle, (b) provide a replacement, (c) use a different method so long as it is adequately explained to the insured, or (d) use an agreed-upon method. Fla. Stat. § 626.9743(5).

If an insurer proceeds under subsection (5)(a) and pays a cash settlement based on the actual cost of a comparable vehicle, the statute then provides that the insurer "may" calculate the settlement using three different permitted methods (among others). According to the statute:

> Such cost ***may*** be derived from:
>
> 1. When comparable motor vehicles are available in the local market area, the cost of two or more such comparable motor vehicles available within the preceding 90 days;
>
> 2. The retail cost as determined from a generally recognized used motor vehicle industry source such as:
>
>    a. An electronic database if the pertinent portions of the valuation documents generated by the database are provided by the insurer to the first-party insured upon request; or
>
>    b. A guidebook that is generally available to the general public if the insurer identifies the guidebook used as the basis for the retail cost to the first-party insured upon request; or
>
> 3. The retail cost using two or more quotations obtained by the insurer from two or more licensed dealers in the local market area.

Fla. Stat. § 626.9743(5)(a).  Under the holdings of *Bastian, Geico, Kingsway,* and *State Farm*, these three options are optional, non-exhaustive ways that an insurer "may" calculate the value of a total loss vehicle.  As a result, the provisions of are not automatically incorporated into Signor's Agreement.

The Middle District of Florida recently considered similar issues in *Richardson v. Progressive Am. Ins. Co.*, 2019 U.S. Dist. LEXIS 89371 (M.D. Fla. May 29, 2019).  In *Richardson*, the defendant insurer argued that the court should dismiss the plaintiff's breach of contract claims because they were simply "disguised claims for violation of Florida's settlement statute." *Id.* at *12.  The court rejected the insurer's argument because the plaintiff's insurance policy specifically referenced and incorporated Florida law.  *Id.* at *13.  According to the court: "Plaintiffs are ***not*** bringing a private action to enforce the Claims Settlement Statute, but instead are asserting a claim based on breach of certain Policy provisions that the parties agreed would conform to all applicable Florida statutes." *Id.* at *14 (emphasis added).

Unlike *Richardson,* Signor has not pointed to any provision of her Agreement that incorporates Florida law generally or the Claims Settlement Statute specifically.  That is because there is none.  Accordingly, the court should dismiss any breach of contract claims premised on a violation subsection (5) of the Claims Settlement Statute since that provision is not referenced or automatically incorporated into Signor's Agreement.

    **B.**    **Signor Has Not Adequately Alleged a Breach of Subsection (5).**

Even if subsection (5) is incorporated into Signor's Agreement, the Court should dismiss Signor's contract claims premised on a breach of subsection (5) because she has not alleged a violation of that provision.  As noted above, subsection (5) provides three, non-exhaustive

options for calculating the cost of a vehicle.  Plaintiff's Complaint fails to plausibly allege that Safeco failed to comply with any of them.

***First***, subsection (5)(a)(1) allows insurers to use the "cost of two or more such comparable motor vehicles available within the preceding 90 days."  Fla. Stat. § 626.9743(5)(a)(1).  The CCC report in dispute here compares the cost of twelve vehicles located 1-38 miles from Signor's residence in Clearwater, Florida.  Signor's assertion that CCC report should have used "actual sales data," Compl. ¶¶ 3, 17, instead of the highest advertised prices, defies common sense since consumers negotiate the price of vehicles *down* from the advertised price, not up.  In other words, if Safeco had used sale prices rather than advertised prices of comparable vehicles, Signor's valuation would have been lower.  In addition, the CCC report is dated January 16, 2019, and all twelve of the comparison vehicles were sold or available for sale within 90 days of the report.  Signor has therefore failed to allege a plausible breach of subsection (5)(a)(1).

***Second,*** subsection 5(a)(2) allows insurers to use "a generally recognized used motor vehicle industry source such as" an "an electronic database if the pertinent portions of the valuation documents generated by the database are provided by the insurer to the first-party insured upon request."  Fla. Stat. § 626.9743(5)(a)(2).  Signor's Complaint fails to allege why the CCC system is not "generally recognized" in the vehicle industry.  To be sure, Signor complains about the methodologies CCC uses to value vehicles, but that does not establish that the CCC system is not "generally recognized" in the industry.  Glaringly absent from Signor's Complaint is any allegation that the CCC system is not widely used in the industry or that it has been rejected in Florida.  In fact, Signor's allegations state the opposite and allege that system is widely used.  Compl. ¶ 19 ("CCC focuses on selling the CCC system as a subscription service to

insurance companies."). As to the second component of subsection 5(a)(2), which examines whether the "valuation documents generated by the database are provided" to the insured, Signor's Complaint makes clear that Safeco satisfied the statute by sending her a copy of the CCC valuation report. Compl. Ex. A.

***Third***, subsection 5(a)(3) allows insurers to determine the value of a totaled vehicle by considering the "retail cost using two or more quotations obtained by the insurer from two or more licensed dealers in the local market area." Fla. Stat. § 626.9743. As explained above, Safeco considered far more than two quotations in the local market area – Safeco considered 12 quotations. Further, subsection 5(a)(3) uses the term "quotation" which can only mean the pre-sale advertised price, not the final sales price. This further undercuts Signor's argument that an insurer must use the final sales price in setting the value of a totaled vehicle.

At bottom, Signor has failed to allege a plausible violation of any of the subparts of subsection (5).

### III.    Plaintiff's Complaint Makes Clear That Safeco Has Satisfied Subsection (6) Of The Claims Settlement Statute.

Although subsection (6) of the Claims Settlement Statute is incorporated into Signor's Agreement, Signor's own Complaint shows that Safeco has complied with the statute. Subsection (6) provides that an insurer "shall" (1) maintain information pertaining to any reduction for "betterment" or "depreciation" in the insurer's claim file; (2) itemize and accurately reflect the value assigned to any betterment or depreciation; and (3) provide the basis for any deduction to the claimant in writing if requested. Fla. Stat. § 626.9743(6).

It is clear from Signor's Complaint that Safeco complied with each of these requirements. In Paragraph 18 of the Complaint, Signor expressly alleges that Safeco maintained information about the reductions and betterments applied to Signor's vehicle in its

12

claim file. Compl. ¶ 18 ("[CCC's] report is retained in Safeco's electronic claims records."). The CCC valuation report attached to Signor's Complaint also shows that Safeco itemized the deductions or additions for depreciation and betterment. Compl. Ex. A. For example, page 8 of the CCC report shows that Signor received deductions for the higher mileage on her vehicle compared to other vehicles, and page 6 shows that she was credited $38 for clean carpets, $38 for a clean headliner, $209 for exterior panels being intact and aligned. *Id.* at pp. 6 and 8. Page 8 of the CCC report also provides line-item information relating to the condition adjustments made to comparable vehicles and explains that the adjustments set the comparable vehicle to "Normal Wear" condition in order to make an accurate comparison to the subject vehicle. *Id.* at p. 8. Finally, the cover letter attached to the Complaint shows that Signor received a copy of the valuation report and an itemization of the taxes and fees for which she was credited an extra $1,235.71 and the deduction of $500 for Signor's deductible. *Id.* Ex. A.[1]

In sum, based on the facts alleged in the Complaint, the only "plausible" reading of Signor's Complaint is that Safeco complied with subsection (6). Accordingly, the Court should dismiss any breach of contract allegations relating to an alleged violation of subsection (6).

**IV.** **The Court Should Dismiss Count III Because Safeco Has No Obligation To Pay Dealer Fees, Which Are Illegal Under Florida Law.**

Signor alleges in Count III that Safeco failed to pay "dealer fees" which she defines as the "costs and profit to the dealer for items such as inspecting, cleaning and adjustment vehicles and preparing documents related to the sale." Compl. ¶ 4. The Court should dismiss this claim for three reasons:

---

[1] The Complaint also suggests Safeco did not provide Signor with money to cover the sales tax on a replacement vehicle (Compl. ¶¶ 4, 26), but that expense was included in her cash settlement as explained in Safeco's letter. *See* Compl. Ex. A, p. 2 (explaining additional monies are attributable to "applicable tax and fees").

13

*First,* Safeco is not required to pay dealer fees under the terms of Signor's Agreement. There is no provision in the Agreement referencing dealer fees.

*Second*, none of the statutory provisions cited in the Complaint require insurers to pay dealer fees.  In support of her allegations in Count II, Signor cites three Florida statutory provisions and one section of the Florida Administrative Code: Fla. Stat. § 501.976(11), Fla. Stat. § 520.02(2), Fla. Stat. § 626.9743(5), and Fla. Admin Code § 69V-50.001.  None of these provisions obligate insurers to pay dealer fees.  In fact, three of the provisions, Fla. Stat. § 501.976(11), Fla. Stat. § 520.02(2), and Fla. Admin Code § 69V-50.001, apply to car dealers, not insurers and do not reference dealer fees in any event.  The fourth provision, Fla. Stat. § 626.9743(5), simply obligates an insurer to pay the "actual cost" of the total loss vehicle.

*Third*, the authorities cited by Signor also make clear that adding dealer fees as a separate line item or expense would be illegal.  Fla. Stat. § 501.976(11) provides that it is a violation of the Florida Deceptive and Unfair Trade Practices Act for a dealer to "[a]dd to the cash price of a vehicle . . . any fee or charge other than those provided . . . in rule 69V-50.001." Rule 69V-50.001 in turn lists (1) tax charges, (2) official fees, (3) insurance charges, and (4) warranty fees as the only additional costs that can be imposed on top of the "cash price" of the vehicle.  Fla. Admin Code § 69V-50.001.  Safeco has no obligation to reimburse policyholders for illegal or unlawful expenses charged by Florida auto dealers.

## V.    The Court Should Dismiss Count IV Since Signor Has No Right To Retain The Salvage Value Of Her Vehicle.

Signor alleges in Count IV that Safeco breached the Agreement by retaining the salvage value of her vehicle.  But once again, Signor does not cite any provision in her Agreement that authorizes her to retain the salvage value of her vehicle.  That is because the Agreement does not provide for double-recovery of both salvage value and actual cash value.  Instead, the contract

limits Safeco's liability to the lesser of: (1) the actual cash value of the damaged property; (2) the amount necessary to repair or replace the property with other property of like kind and quality; or (3) the limit of liability shown in the Declarations.  *See* **Exhibit 1**, Agreement at 25.[2] This limitation of liability provision does not entitle Signor to retain *both* the actual cash value and salvage value. Similarly, Signor does not identify any insurance regulation that permits her to retain the salvage value of her vehicle.

Further, allowing Signor to retain both the actual cash value and salvage value of her vehicle would result in a double-recovery, leaving Signor in a much better position than before the accident.  This sort of windfall is prohibited in the insurance industry. *See, e.g. Centex-Rodgers Const. Co. v. Herrera*, 761 So. 2d 1215, 1216 (Fla. Dist. Ct. App. 2000) (holding that "where full recovery has been made and the insured has been made whole, any payments to the insured exceeding the actual damages may be viewed as a double recovery."); *Humana Health Plans v. Lawton*, 675 So. 2d 1382, 1384 (Fla. Dist. Ct. App. 1996) ("where full recovery has been made by the insured, who is thus 'made whole,' any payments to the insured over and above his actual damages may be viewed as a 'double recovery,' thus equitably entitling the insurer to subrogation against the insured's recovery.").  Accordingly, the Court should dismiss Count IV with prejudice.

---

[2] The court may properly consider documents that the complaint incorporates by reference and matters of which a court may take judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

## Conclusion

For all the foregoing reasons, the Court should dismiss Signor's Complaint with prejudice.

/*s/Steven M. Appelbaum*
Steven.Appelbaum@saul.com
Florida Bar No. 71399
SAUL EWING ARNSTEIN & LEHR LLP
Southeast Financial Center
200 S. Biscayne Blvd., Suite 3600
Miami, FL 33131

James A. Morsch, Esq.
Casey Grabenstein, Esq.
(Admitted Pro Hac Vice)
SAUL EWING ARNSTEIN & LEHR LLP
161 North Clark, Suite 4200, Chicago, IL

**CERTIFICATE OF ELECTRONIC SERVICE**

I hereby certify that on this 15th day of August, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is being served this date on all counsel of record identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing: Scott R. Jeeves, Esq, THE JEEVES LAW GROUP, P.A., 954 First Avenue North, St. Petersburg, FL 33705; Craig E. Rothburd, Esq., CRAIG E. ROTHBURD, P.A., 320 W. Kennedy Blvd., Suite 700, Tampa, FL 33606; Casim Adam Neff, Esq., NEFF INSURANCE LAW, PLLC., P.O. Box 15063, St. Petersburg, FL 33733-5063; Edward H. Zebersky, Esq., Mark S. Fistos, Esq.; ZEBERSKY PAYNE, LLP., 110 SE. 61h Street, Suite 210, Ft. Lauderdale, FL 33301; Alec H. Schultz, Esq., Carly A. Kligler, Esq., LEON COSGROVE, LLP, 255 Alhambra Circle, Suite 800, Coral Gables, FL 33134, Benjamin H. Dampf, Esq., WHALEY LAW FIRM, 6700 Jefferson Highway, Building 12, Suite A, Baton Rouge, Louisiana 70806.

/*s/Steven M. Appelbaum*
Steven.Appelbaum@saul.com
SAUL EWING ARNSTEIN & LEHR LLP
Southeast Financial Center
200 S. Biscayne Blvd., Suite 3600
Miami, FL 33131

James A. Morsch, Esq.
Casey Grabenstein, Esq.
SAUL EWING ARNSTEIN & LEHR LLP
161 North Clark, Suite 4200, Chicago, IL

35702119.5