

**CONTACT US**

**By Phone**
Direct:    (407) 807-5046
Toll Free: (800) 332-3226
Ext.      21226
Fax:      (877) 493-6841

**By E-mail**
justin.stephens@
libertymutual.com

**Safeco Insurance Company of Illinois**
P.O. Box 515097
Los Angeles, CA 90051-5097

January 23, 2019

Latour & Associates, P.A.
135 E Lemon St
Tarpon Springs FL 34689-3619

| | |
|---|---|
| Insured: | Gina Signor |
| Claimant: | Tara Alemayehu |
| Claim Number: | LA000-039002023-06 |
| Date of Loss: | 01/11/2019 |
| Policy Number: | F3417303 |

Dear Latour & Associates, P.A. ,

Please find the attached Sworn Policy Disclosure Statement and Complete
Copy of Policy , with it's declarations page and any endorsements.

We will provide an amendment to this statement should facts become known
which would alter this information.

Sincerely,
Justin Stephens
Safeco Claims

## Sworn Policy Disclosure Statement

1. That David Semesco is a Claims Team Manager with Safeco Insurance Company of Illinois. The information provided in this sworn statement was garnered by the undersigned while in the course and scope of his employment from the business records of Safeco Insurance Company of Illinois.

   a. Name of Insurer:  Safeco Insurance Company of Illinois

   b. Name of each Insured:  Gina Signor

   c. Limits of Liability Coverage:
      I.   Bodily Injury:      $100,000 each person/$300,000 each accident
      II.  Property Damage: $100,000 each accident

   d. Policy or Coverage Defenses: Coverage is currently pending.  Safeco Insurance Company of Illinois will supplement this disclosure should new information regarding coverage arise.

   e. A true and correct copy of the policy, with its declarations and any endorsements, is attached to this sworn statement.

2. That Safeco Insurance Company of Illinois has not written an excess liability policy in favor of the subject insured.

3. That Safeco Insurance Company of Illinois has made inquiry of its insured and been advised by that insured that the following amounts to that insured's non-Safeco Insurance Company of Illinois excess liability carrier and purported coverage: None.

The foregoing statements are made under oath and under penalty of perjury and I declare that I have read the following sworn statement and that the facts stated in it are true and correct.

_____1/24/19_____
Date

_____
Signature

David Semesco – Claims Team Manager



Safeco Insurance™
A Liberty Mutual Company

SOLACE INSURANCE LLC
300 E BAY DR STE A
LARGO        FL  33770-3716

November 29, 2018

Policy Number: F3417303
24-Hour Claims: 1-800-332-3226
Policy Service: (800) 915-0969
Online Account Services: www.safeco.com

**THIS IS NOT A BILL.**

GINA SIGNOR
2677 3RD AVE N
CLEARWATER FL 33759-1006

Countersigned by:
Authorized Representative

for SOLACE INSURANCE LLC

Thank you for allowing us to continue serving your insurance needs.

To ensure you are receiving the best coverage and value available, the following changes have been made to your 12-month automobile policy, including those requested by you or your agent or broker.

2014 LEXUS IS 250
  - The Loss Payee is amended to read:
    ACHIEVA CREDIT UNION
    PO BOX 948077
    MAITLAND  FL 32794

This change is effective November 29, 2018.  Please place this letter with your insurance policy. Information on coverages and limits can be found on the revised Declarations page, enclosed.

No additional premium or credit resulted from this change.

If you have any questions or wish to make any changes to your policy, you can do so by calling your agent at (800) 915-0969.

We appreciate the opportunity to serve you.  Thank you.

Personal Lines Underwriting

**SAFECO INSURANCE COMPANY OF ILLINOIS**

OC-429/EP 10/13



**POLICY NUMBER:** F3417303

# SAFECO INSURANCE COMPANY OF ILLINOIS
# AUTOMOBILE POLICY DECLARATIONS

**NAMED INSURED:**
GINA SIGNOR
2677 3RD AVE N
CLEARWATER FL 33759-1006

**POLICY CHANGE**
**CHANGED EFFECTIVE:** NOV. 29 2018
**POLICY PERIOD FROM:** SEPT 1 2018
**TO:** SEPT 1 2019
at 12:01 A.M. standard time at the address of the insured as stated herein.

**AGENT:**
SOLACE INSURANCE LLC
300 E BAY DR STE A
LARGO       FL  33770-3716

**AGENT TELEPHONE:**
(800) 915-0969

---

| RATED DRIVERS | GINA SIGNOR, MICHAEL A KIRISITS |
|---|---|

**2014 LEXUS**    IS 250         4 DOOR SEDAN        ID# JTHBF1D29E5023049
**LOSS PAYEE**    ACHIEVA CREDIT UNION

**Insurance is afforded only for the coverages for which limits of liability or premium charges are indicated.**

| COVERAGES | 2014 LEXS LIMITS | PREMIUMS |
|---|---|---|
| **LIABILITY:** | | |
| BODILY INJURY | $100,000 Each Person $300,000 Each Occurrence | $ 360.50 |
| PROPERTY DAMAGE | $100,000 Each Occurrence | 178.30 |
| **PERSONAL INJURY PROTECTION** | | 240.50 |
| **UNINSURED MOTORISTS (NON-STACKED LIMITS):** | | |
| BODILY INJURY | $50,000 Each Person $100,000 Each Accident | 132.80 |
| **COMPREHENSIVE** | Actual Cash Value Less $100 Deductible | 247.30 |
| **COLLISION** | Actual Cash Value Less $500 Deductible | 328.60 |
| **ADDITIONAL COVERAGES:** | | |
| LOSS OF USE | $35 Per Day/$1050 Max | 14.70 |
| ROADSIDE ASSISTANCE PACKAGE | | 6.40 |
| **ENHANCED COVERAGE LEVEL** | | 66.90 |
| | | ---------- |
| | **TOTAL** | $ 1,576.00 |

| PREMIUM SUMMARY | | PREMIUM |
|---|---|---|
| VEHICLE COVERAGES | | $ 1,576.00 |
| DISCOUNTS & SAFECO SAFETY REWARDS | You saved $597.90 | Included |
| | | ---------- |
| **TOTAL 12 MONTH PREMIUM** ................................................ | | $ 1,576.00 |

YOU SAVED $597.90 BY QUALIFYING FOR THE FOLLOWING DISCOUNTS:
     Anti-Lock Brakes
     Anti-Theft
     Advance Quoting
     Accident Free

-CONTINUED-
P O BOX 515097, LOS ANGELES, CA 90051

SA-1697/EP 9/90
G15

DATE PREPARED: NOV. 29 2018



A Liberty Mutual Company

**POLICY NUMBER:** F3417303

### SAFECO INSURANCE COMPANY OF ILLINOIS
### AUTOMOBILE POLICY DECLARATIONS
(CONTINUED)

Violation Free
Coverage
Homeowners
Billing Plan
Both Side Air Bag



**Safeco Insurance**™
A Liberty Mutual Company

SOLACE INSURANCE LLC
300 E BAY DR STE A
LARGO        FL  33770-3716

August 29, 2018

Policy Number:  F3417303
24-Hour Claims:  1-800-332-3226
Policy Service:  (800) 915-0969
Online Account Services:  www.safeco.com

**THIS IS NOT A BILL**
**IDENTIFICATION CARDS ENCLOSED**

GINA SIGNOR
2677 3RD AVE N
CLEARWATER FL  33759-1006

Welcome to Safeco]

We believe insurance shouldn't be any more complex than it has to be.  Welcome to an easier experience with Safeco.

Enclosed is your new automobile policy.  Read it through carefully.  It will give you a detailed description of the type and amount of your coverage, any deductibles (your out-of-pocket costs) that apply and the effective date of your policy.  If, after reading your policy, you have any questions or want to find out about discounts that may apply to your policy, please call (800) 915-0969.

The premium for your policy is $1,576.00 for the September 1, 2018 to September 1, 2019 policy term.  When you receive your billing statement, please review it carefully for the amount and date of your next payment.  Please also verify that your requested payment method is correct.

You can uncomplicate your bill paying experience by choosing our Automatic Deduction Payment Plan, which offers the convenience of monthly deductions from your checking account that can be scheduled any day of the month you like.  Please use the form on the back of your next billing statement to enroll.

For added convenience, visit www.safeco.com and make use of our automated services available to you including, but not limited to:

- Make a payment by online check, or credit card.
- Review your billing history.
- Change your billing due date.
- View your policy documents.
- Order a copy of your policy and/or insurance ID cards.
- Report to us a name change, or change of address.
- Review Safeco's Producer Compensation Disclosure.

For all other assistance please call your agent at (800) 915-0969.

PLEASE SEE REVERSE
**SAFECO INSURANCE COMPANY OF ILLINOIS**

OC-429/EP  10/13

Thank you for your business. We look forward to serving you.

Sincerely,

Tyler Asher
President, Safeco Insurance



A Liberty Mutual Company

## Consumer Privacy Statement

Safeco appreciates the trust you place in us when you purchase insurance from one of our companies. We are committed to protecting your nonpublic personal information ("personal information") and we value you as a customer.

To learn more about how Safeco collects and uses your personal information, please read the following notice.

### Safeco's sources of information about you

We collect personal information about you from different sources, including:

- The information you provide on applications or other forms (such as your name, address and Social Security number);
- Your transactions with us, our affiliates or others (such as your payment history and claims information);
- The information we receive from a consumer reporting agency or insurance support organization (such as your credit history, driving record or claims history); and
- Your independent insurance producer (such as updated information pertaining to your account).

### Safeco's use of your personal information

We only disclose personal information about our customers and former customers as permitted by law. Generally, this includes sharing it with third parties to administer your transactions with us, service your insurance policy or claim, detect and prevent fraud, or with your authorization. These third parties may include independent insurance producers authorized to sell Safeco insurance products, independent contractors (such as automobile repair facilities and property inspectors), independent claims representatives, insurance support organizations, other insurers, auditors, attorneys, courts and government agencies. We may also disclose your personal information to other financial institutions with whom we have joint marketing agreements. When we disclose your information to these individuals or organizations, we require them to use it only for the reasons we gave it to them.

We may also share information about our transactions (such as payment history and products purchased) and experiences with you (such as claims made) within our Safeco family of companies.

Safeco does not sell your personal information to others and we do not provide your information to third parties for their own marketing purposes.

### Independent Safeco Insurance Agents

The independent insurance agents authorized to sell Safeco products are not Safeco employees and not subject to Safeco's Privacy Policy. Because they have a unique business relationship with you, they may have additional personal information about you that Safeco does not have. They may use this information differently than Safeco. Contact your Safeco distributor to learn more about their privacy practices.

### Information about Safeco's web site

If you have internet access and want more information about our web site specific privacy and security practices, click on the Privacy Policy link on www.safeco.com.

OC-701/EP 3/16                                                                                    Page 1 of 2

### Protecting your personal information from unauthorized access

We maintain physical, electronic and procedural safeguards to protect your personal information. Our employees are authorized to access customer information only for legitimate business purposes.

### State Privacy Laws

This privacy statement may be supplemented by privacy laws in your state. We will protect your information in accordance with state law.

### This Privacy Statement applies to the following members of the Safeco family of companies:

American Economy Insurance Company
American States Insurance Company
American States Insurance Company of Texas
American States Lloyds Insurance Company
American States Preferred Insurance Company
First National Insurance Company of America
General Insurance Company of America
Insurance Company of Illinois
Liberty County Mutual Insurance Company
Safeco Insurance Company of America
Safeco Insurance Company of Illinois
Safeco Insurance Company of Indiana
Safeco Insurance Company of Oregon
Safeco Lloyds Insurance Company
Safeco National Insurance Company
Safeco Surplus Lines Insurance Company

© 2011 Safeco Insurance Company of America, Member of Liberty Mutual Group. All Rights Reserved.

## WHERE TO TURN FOR HELP

Your Safeco agent is a professional Independent Insurance Agent. If you have specific questions about your policy, YOU MAY DIRECT THEM TO THE AGENT at the address or phone number shown on the Declarations, Statement of Coverage or Extension Certificate. If you are unable to obtain the information about your policy from your agent, you may contact the company for assistance.

Safeco Insurance Company of Illinois
Safeco Insurance Company of America
General Insurance Company of America
First National Insurance Company of America
Regional Office
P.O. Box 100027
Duluth, Georgia 30096-9427
Telephone: (678) 417-3000
Customer Service Number: 1-800-332-3226

P-1037/FLEP 3/03
G1

## Insurance Information and the Use of Credit

Thank you for being a Safeco Insurance customer. We appreciate your business and the trust you have placed with us.

Like most insurance companies, we use credit information as a factor in determining the cost of your insurance. We do so because research studies have shown it to be an accurate predictor of the probability of future insurance losses. Studies also show that a majority of customers benefit from the use of credit information.

It's important to understand that many factors are used to determine the cost of insurance such as driving history for auto insurance, the year your home was built for home insurance, previous insurance and claims history, discounts and coverage limits. Your credit history is also part of the overall calculation that determines your premium. We look at credit history very differently than a financial institution because we're not evaluating your credit-worthiness. We're using credit-based information in combination with other factors to help us properly price insurance risks.

<u>FREQUENTLY ASKED QUESTIONS</u>

Why do you use my credit information?
Insurance companies often use credit information because it is a predictor of the probability of future losses. Its use is an objective way to assess and price potential risk and enables us to more accurately price policies and equitably distribute insurance costs among our policyholders.

Is my credit history the only factor that determines my rate?
No. Many factors such as previous insurance, claims history, discounts and coverage limits go into determining what you pay for your insurance. In addition, the information you provided when you purchased your policy and the verification of that information is used to determine your rate.

How do I know if I'm getting the best possible rate?
One of the benefits of buying insurance through an independent agent is their ability to advise you on your options and ways to save money. Between the guidance of your local independent agent and a vast array of Safeco options, you can be sure you're getting the coverage you want at a competitive rate. If you have any questions, we encourage you to contact your independent Safeco agent and ask for an insurance checkup.

How is credit information used in determining my rate?
Safeco, like most insurance companies, calculates an insurance score based on information from your credit report. Different values or weights are assigned to the information contained in your credit report, such as payment history, amounts owed or the number of applications for new credit lines. The total sum of these weights creates your insurance score. As a result, it is likely that some of your credit information helped to improve your insurance score, and some lowered it. The calculation process and weights used by each insurance company and/or its service providers are proprietary and confidential. As a result, we do not disclose your specific score or the details of how it was calculated.

Did my credit information help or hurt my rate?
Your insurance score is among the highest of customers who have quoted with us and likely helped qualify you for a better rate. However, you did not receive the lowest possible rate, due in part to your credit information. The reasons for this are explained in this document under "What factors affected my insurance score?"

What can I do to improve my insurance score?
Safeco or your independent agents are not credit counselors or financial advisors, so we are not in a position to provide specific advice on how to improve your credit or insurance score. However, we can tell you that the areas that have the biggest impact on your credit report are: payment history, amounts owed, length of credit history, new credit applications and type of credit accounts. To get a copy of your current credit report, contact TransUnion and follow the instructions under "How do I get a copy of my credit report?"

CN-7400/EP  10/12
G1

REMOVED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS

How do I get a copy of my credit report?
The Fair Credit Reporting Act allows you to request a free copy of your credit report within 60 days of receipt of this letter. To get a copy of your report do one of the following:

- Call TransUnion at 1-800-645-1938; or
- Write to TransUnion Consumer Disclosure Center, PO Box 1000, Chester, PA 19022.

TransUnion can give you information about your credit report. However, they did not make any decisions about your insurance premium or how your policy was rated, and they are unable to answer questions about those decisions.

What can I do if I think my credit report is not accurate?
If you believe your report is incomplete or incorrect, you may contact TransUnion to dispute the accuracy or completeness of the information. At your request, they will review your credit information and if corrections are made, they will send you an updated report.

Can I get my policy re-rated if corrections are made to my credit report?
Yes. If you would like us to re-evaluate your policy after your credit report has been corrected, please send us a copy of the documentation from the credit reporting agency indicating the report has been corrected. Include your name, policy number and address, and ask for a credit-based insurance score re-evaluation. Mail your request to: Safeco ATTN: UW Verification & Policy Support, PO Box 515097, Los Angeles, CA, 90051-5097 or fax it to 877-344-5107.

Where can I go to learn more about credit and how it is used in insurance?
To learn more about credit scores visit http://www.myfico.com/CreditEducation/CreditScores.aspx. For more information about how Safeco uses information from your credit report go to http://www.safeco.com/insurancescores.

Who is sending me this notice?
This notice is provided to you by SAFECO INSURANCE COMPANY OF ILLINOIS who underwrites your Automobile Policy F3417303

What factors affected my insurance score?
Below is more information about the factors that affected your insurance score and what you can do to improve them:

CN-7400/EP 10/12

Time since last inquiry on report

*What information is this message derived from?* The score considers the number of months since the most recent inquiry. The score is based on inquiries initiated by you when you are actively seeking to obtain credit, or to obtain higher limits on an existing account. It is not based on inquiries initiated by you to obtain your own insurance score, or inquiries related to obtaining an insurance policy. Inquiries that are not solicited by you, such as account reviews by an existing creditor, or from a promotional mailing are not included in this score. Inquiries as a result of searching for rates on a similar type of loan, such as auto and/or mortgage loans are counted as one inquiry if they occur within 30 days. Only inquiries from the past two (2) years are considered.

*How does this affect my insurance score?* Research shows that consumers who are looking to obtain new credit within a short period of time have more insurance losses.

*What can I do to improve this aspect of my score?* To improve this aspect of your score, apply for credit only when needed.

(Reason Code 319)
CN-7295/EP 7/12

Time since last inquiry on report

*What information is this message derived from?* The score considers the number of months since the most recent inquiry. The score is based on inquiries initiated by you when you are actively seeking to obtain credit, or to obtain higher limits on an existing account. It is not based on inquiries initiated by you to obtain your own insurance score, or inquiries related to obtaining an insurance policy. Inquiries that are not solicited by you, such as account reviews by an existing creditor, or from a promotional mailing are not included in this score. Inquiries as a result of searching for rates on a similar type of loan, such as auto and/or mortgage loans are counted as one inquiry if they occur within 30 days. Only inquiries from the past two (2) years are considered.

*How does this affect my insurance score?* Research shows that consumers who are looking to obtain new credit within a short period of time have more insurance losses.

*What can I do to improve this aspect of my score?* To improve this aspect of your score, apply for credit only when needed.

(Reason Code 319)
CN-7295/EP 7/12

Policy Number: F3417303

## IMPORTANT NOTICE

Your rates were impacted, at least in part, due to prior insurance information provided by:

LexisNexis
Current Carrier Report
P.O. Box 105108
Atlanta, GA 30348-5108
1-800-456-6004
www.consumerdisclosure.com

When you contact LexisNexis, use the following reference number: 708VJW5

LexisNexis can provide you with a copy of your report, but will not be able to answer questions regarding your insurance application. All decisions regarding your insurance application, including the premium charged, were made by SAFECO INSURANCE COMPANY OF ILLINOIS

The Fair Credit Reporting Act gives you certain rights regarding information about you. You have the right, under Section 612, to obtain a free copy of the report from the company shown above, as long as you request it within 60 days of receipt of this notice. You also have the right, under Section 611, to dispute with them any information contained in the report.

CN-7126/EP 11/09

REPRODUCED FOR THE NOTICE. THE ONLINE TRANSACTION MAY INCLUDE ADDITIONAL FORMS

## SAFECO ENHANCED™ COVERAGE LEVEL

Congratulations! You have purchased one of our finest auto coverage levels available — the Safeco Enhanced coverage level. With Safeco Enhanced, you receive more coverage, higher limits and better benefits than with our basic policy.

Below are just some of the great features and benefits you receive with Safeco Enhanced. Safeco's Enhanced coverage level provides you even more benefits and coverage that are not listed here. Read the policy and endorsement in this packet to learn more about the coverages and benefits you're receiving.

| **Features** | **Benefits** |
| --- | --- |
| **Accident Forgiveness** | After six consecutive years without an at-fault accident or violation, your premium will not increase if you have an at-fault accident. |
| **Auto Theft Transportation** | If your vehicle is stolen, we pay up to $25 a day to a maximum benefit of $750 to cover your transportation expenses. |
| **Audio/Visual Equipment** | We cover audio/visual equipment such as a stereo or DVD player permanently installed by the manufacturer or manufacturers' dealership. We will pay up to $1,000 if the equipment was installed by someone else. |
| **Customized Equipment** | We provide up to $1,000 for permanently installed customized equipment such as new wheel rims. |
| **Loss of Earnings** | We will pay you up to $250 a day if you have to miss work in order to attend a trial or a court hearing at our request. |
| **Bail Bonds** | We will pay up to $1,000 for the cost of a bail bond required due to an accident. |

If you have any questions about your policy, please feel free to contact your independent Safeco agent.

*No coverage is provided by this summary. If there is any conflict between the policy and this summary, the provisions of the policy, including any endorsements, shall prevail.*

SA-2912/EP 11/12

REMINDER: REMOVE FROM THE ENGINE   THE ENGINE TRANSACTION MAY INCLUDE ADDITIONAL FORMS

 **Safeco Insurance**
A Liberty Mutual Company

**POLICY NUMBER:** F3417303

## SAFECO INSURANCE COMPANY OF ILLINOIS
## AUTOMOBILE POLICY DECLARATIONS

**NAMED INSURED:**
GINA SIGNOR
2677 3RD AVE N
CLEARWATER FL  33759-1006

**POLICY PERIOD FROM:** SEPT  1 2018
**TO:** SEPT  1 2019

at 12:01 A.M. standard time at the address of the insured as stated herein.

**AGENT:**
SOLACE INSURANCE LLC
300 E BAY DR STE A
LARGO          FL   33770-3716

**AGENT TELEPHONE:**
(800) 915-0969

| RATED DRIVERS | GINA SIGNOR, MICHAEL A KIRISITS | |
|---|---|---|
| 2014 LEXUS | IS 250              4 DOOR SEDAN | ID# JTHBF1D29E5023049 |
| LOSS PAYEE | PINELLAS COUNTY CREDIT UNION | |

**Insurance is afforded only for the coverages for which limits of liability or premium charges are indicated.**

| COVERAGES | 2014 LEXS LIMITS | PREMIUMS |
|---|---|---|
| **LIABILITY:** | | |
| BODILY INJURY | $100,000 Each Person $300,000 Each Occurrence | $ 360.50 |
| PROPERTY DAMAGE | $100,000 Each Occurrence | 178.30 |
| **PERSONAL INJURY PROTECTION** | | 240.50 |
| **UNINSURED MOTORISTS (NON-STACKED LIMITS):** | | |
| BODILY INJURY | $50,000 Each Person $100,000 Each Accident | 132.80 |
| **COMPREHENSIVE** | Actual Cash Value Less $100 Deductible | 247.30 |
| **COLLISION** | Actual Cash Value Less $500 Deductible | 328.60 |
| **ADDITIONAL COVERAGES:** | | |
| LOSS OF USE | $35 Per Day/$1050 Max | 14.70 |
| ROADSIDE ASSISTANCE PACKAGE | | 6.40 |
| **ENHANCED COVERAGE LEVEL** | | 66.90 |
| | | ---------- |
| | TOTAL | $ 1,576.00 |

| PREMIUM SUMMARY | | PREMIUM |
|---|---|---|
| VEHICLE COVERAGES | | $ 1,576.00 |
| DISCOUNTS & SAFECO SAFETY REWARDS | You saved $597.90 | Included |
| | | ---------- |
| **TOTAL 12 MONTH PREMIUM** ................................................. | | $ 1,576.00 |

YOU SAVED $597.90 BY QUALIFYING FOR THE FOLLOWING DISCOUNTS:
    Anti-Lock Brakes
    Anti-Theft
    Advance Quoting
    Accident Free

-CONTINUED-
P O BOX 515097, LOS ANGELES, CA 90051

SA-1697/EP  9/90
G15

Page 1 of 2

DATE PREPARED:  AUG. 29 2018

REPRODUCED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS



**POLICY NUMBER:** F3417303

## SAFECO INSURANCE COMPANY OF ILLINOIS
## AUTOMOBILE POLICY DECLARATIONS
### (CONTINUED)

Violation Free
Coverage
Homeowners
Billing Plan
Both Side Air Bag

**POLICY FORMS APPLICABLE TO THIS POLICY:**
SA-1697/EP 9/90, SA-2890/FLEP R1 3/15, SA-2891/FLEP 3/15, SA-1700/EP 7/09,
SA-1807/FLEP 10/17, SA-1643/FLEP 7/12

**Safeco Insurance** ™
A Liberty Mutual Company

**POLICY NUMBER:** F3417303

## LOSS PAYEE ENDORSEMENT

**AGENT:**

SOLACE INSURANCE LLC
300 E BAY DR STE A
LARGO        FL    33770-3716

**AGENT TELEPHONE:** (800) 915-0969

**INSURED:**

GINA SIGNOR

**DESCRIBED VEHICLE:**
2014 LEXUS

**IDENTIFICATION NUMBER:**
JTHBF1D29E5023049

PINELLAS COUNTY CREDIT UNION
PO BOX 2300
LARGO FL  33779-2300

← **LOSS PAYEE**

**EFFECTIVE DATE:**
SEPT  1 2018

The Declarations outlines the coverages purchased by our **insured** for the described vehicle.

If you have any questions, please contact the insurance agent shown above.

**TO THE LOSS PAYEE:**

This policy will be extended automatically for each policy term shown on the Declarations on payment of the premium when due.

You will be notified if the policy is canceled. Your interest is fully protected until you receive notice and for a period of  10 days thereafter.

**SAFECO INSURANCE COMPANY OF ILLINOIS**

SA-1700/EP 7/09
G1

INSURED'S COPY

DATE PREPARED:  AUG. 29 2018

*** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ***

# FLORIDA RATING INFORMATION

## HOW YOUR AUTO RATES ARE DETERMINED

Your automobile insurance rates are determined by a number of factors, including your driving record, the kind of car you drive, your age, where the car is located, and how it is used. The following information provides a general description on how these rates are determined and what you can do to keep the cost of your insurance as low as possible.

### DRIVING RECORD

One of the main factors determining the amount you pay for insurance is your driving record. Accidents and violations add to the cost of insurance through a system of "points". The more serious the incident, the higher the number of points and the higher the premium. Points are assigned for tickets and accidents that occurred in the thirty-four months preceding the application or renewal date of the policy. They are automatically dropped at the first renewal after the thirty-four months. As an incident ages it will be assigned fewer points.

Driving record points for traffic convictions or bail forfeitures are charged as follows:

Twelve points for the first major traffic violation and eight points for each subsequent major traffic violation such as failure to stop and report when involved in an accident, homicide or assault arising from the operation of an automobile, driving while license is suspended or revoked, or reckless driving or traffic violations related to alcohol or drugs.

Six points for the first minor traffic violation and four points for any additional minor moving traffic violation. Except, no points are assigned for: inadequate muffler or excessive exhaust, light or other equipment except brake lights, or failure to show registration card, license plates or driver's license or if the violation is the one and only violation in the last 18 months.

Four points for the first incidental minor violation and two points for any additional incidental minor violation. Incidental minor violations include failure to use seat belts, failure to use turn signals and failure to use headlights.

Six points for speed convictions under 20 miles over the speed limit and four points for each subsequent speed conviction under 20 miles over the speed limit.

Ten points for speed convictions 20 miles over the speed limit and six points for each subsequent speed conviction 20 miles over the speed limit.

Per Section 626.9541(1)(o)4., Florida Statutes, Point Assignment begins with the second Speed/Minor infraction in an 18-month period, or the third Speed/Minor infraction committed within a 36-month period.

Twelve points for the first alcohol or drug conviction and eight points for each subsequent alcohol or drug conviction.

Driving record points for accidents are charged as follows:

Ten points for the first at-fault automobile accident and 6 points for each subsequent at-fault accident involving you or any operator of the automobile who resides with you and is not the named insured or principal operator on another insurance policy. Accidents must result in bodily injury or death or result in payment in excess of $750 by all insurance companies for property damages. Except, no points are assigned if: you were reimbursed by the other party; you were struck in the rear and did not receive a violation in conjunction with the accident; the other driver was cited and you were not; your auto was lawfully parked; you were struck by a "hit-and-run" driver and you reported it to the proper authorities within 24 hours; you were operating an emergency vehicle as a paid or volunteer member of a police or fire department, aid squad or law enforcement agency during an emergency situation; the accident involved hitting an animal; damage was caused by flying gravel, missiles, or falling objects; or, for the first accident and policy has been loss free for nine years or more.

Also, no points are charged for violations or accidents if they occurred while operating a vehicle during employment for a local transit system or private bus company certified by the PUC or ICC; as a driver of a vehicle certified by the ICC or FPSC and displaying a valid certificate number; or during employment as a fire fighter or law enforcement officer.

Points assigned diminish over time starting as early as six months from the date of the incident.

SA-1807/FLEP 10/17

*** REMOVED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ***

**AGE, LOCATION AND USE OF VEHICLE**

Statistics show that the younger you are, the more likely you are to be in an accident (up to about age 65). Therefore, younger drivers pay more for insurance. Where your vehicle is located and how you use it also play a role in how much you pay for insurance. If you live in the country and only use your car to run errands, such as going to the store, you'll pay less than someone who lives in the heart of a congested urban center and drives 40 miles to work each day. As theft and vandalism are also more likely to occur in the city, costs for comprehensive coverage increases.

SA-1807/FLEP 10/17

*** PRINTED COPY IS INACTIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ***

### WHAT YOU CAN DO TO LOWER YOUR INSURANCE RATES

When determining the appropriate market and coverage tiers for your customer's policy, we will consider driving and claims activity up to five years as stipulated below. After determining the appropriate market and coverage tiers, the experience period for charging convictions or at-fault-accident points is 34 months prior to the effective date of the policy. There are things you can do to lower your insurance rates. One of the best ways to keep the cost of your insurance low is to maintain a clean driving record. Another is to purchase a car with safety features. Following are the discounts available to you as a Safeco policyholder. Any discounts you already receive are listed in the Discounts section of your Policy Declarations page.

### DISCOUNTS

Discounts that reduce the cost of the major coverages are available for the following:

| | |
|---|---|
| Account | Applies when other Safeco policies are active for the named insured. |
| Advanced Quote | Applies if the new business quote is within 8 days or more in advance of the effective date. Applies for the first 24 months of the policy. |
| Coverage Discount | Applies to any vehicle on the policy that is insured for both Liability and Comprehensive and/or Collision. |
| Distant Student | Away at school that is more than 100 miles from home for part of the year without a car. |
| Good Student | 3.0 GPA or better grades or ranked in upper 20% of class. |
| Homeowner Discount | Applies if the named insured owns a home or condominium. |
| Motor Vehicle Accident Prevention Course (age 55 or older) | |
| Multi-Car | Insuring more than one car with a Safeco Company. |
| New Teen | Applies if at least one rated operator is a teenager and has been licensed less than one year. |
| Newly Independent | Applies if a new Safeco policy is created as a result of a divorce or youthful operator leaving an existing Safeco policy. |
| Preferred Payment | Applies if EFT payment method or Payroll Deduction applies to the policy. |
| Renewal Discount | Applied automatically at renewals. |
| Paid in Full Discount | |
| Low Mileage | Available to regular pleasure use vehicles driven less than 8,000 miles annually where the principal operator is 25 years or older. |

Credits that reduce the premium of certain coverages are:

| | |
|---|---|
| Anti-Theft Device | (Comprehensive Coverage) Factory installed anti-theft equipment only. |
| Air Bag | |

*****

Other factors that influence the amount you pay for insurance include the amount and type of coverage selected. Following this notice is an explanation of the different coverages available. If you have questions about your premiums or coverages, please contact your Safeco agent, whose number is shown on the billing statement. One choice you have already made will save you money over time — you have chosen Safeco, a company dedicated to insuring responsible people who drive carefully. We are also constantly striving to reduce our own expenses and assisting in the prevention of fraud. This keeps our costs down, so we can pass these savings on to you.

Thank you for entrusting us with your insurance needs. We appreciate having you as a customer.

*** REPRINTED FROM INACTIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ***

## PERSONAL AUTO POLICY — OUTLINE

The following outline of coverage is for informational purposes only. It is the express intent of ss.627.4143, Florida Statutes, that this outline shall not be construed to modify any of the provisions of the legal insurance contract which is the subject of this outline. READ YOUR PERSONAL AUTO POLICY CAREFULLY.

### POLICY COVERAGES

Your auto policy billing lists the principal coverages available. You have those for which a premium charge is shown.

**Liability Coverage:** This covers your legal liability for bodily injury to others (Bodily Injury Liability) or damage to their property (Property Damage Liability). Florida law requires you to have Property Damage Liability coverage. The principal exclusions (items not covered by your policy) for this coverage are:

1.  autos owned by you or furnished or available for the regular use of you or your family members, which have not been specifically covered under the policy;

2.  vehicles with less than 4 wheels; and

3.  claims for injuries to family members.

**Personal Injury Protection:** This covers you, your family members and certain others, for bodily injuries resulting from auto accidents, without regard to fault. Payments are for 80% of medical expenses, 60% for loss of income, replacement household services and (if the limit has not been exhausted by other benefits) a death benefit. Personal Injury Protection is also required under Florida law. The principal exclusions for this coverage are injuries sustained in autos you or family members own which have not been specifically covered under the policy, and injuries to other vehicle owners required by law to have their own coverage.

**Medical Payments Coverage:** This coverage supplements the medical expense reimbursement of PIP coverage and provides basic coverage in situations where PIP does not pay. The principal exclusions are similar to those for liability coverage.

**Uninsured Motorists Coverage:** This coverage pays for bodily injuries to you, family members and certain others, resulting from the negligence of others. It pays when the at-fault party has: no liability insurance, or liability coverage with limits not adequate to pay for the damages incurred, or if injuries result from a hit-and-run vehicle. Your coverage may be "Stacked" or "Non-stacked." The principal difference between these two forms is that the total amount of protection under the stacked form is the sum of the limits applicable to each vehicle insured whereas under the non-stacked form the limit stated applies per accident regardless of how many vehicles you own or insure.

**Collision:** This covers damage to your car resulting from upset or impact with another object. **Comprehensive** provides coverage for damage to your car resulting from fire, theft and other direct losses not excluded. The principal exclusions are for damage to certain electronic and sound equipment, tapes and other media, radar detectors; and undeclared camper bodies.

**Rental Vehicle Coverage:** If you buy Collision Coverage for an auto you own, you will also have Collision Coverage for damage to any rental vehicle. If you buy Other Than Collision Coverage (Comprehensive) for an auto you own, you will have Comprehensive Coverage for loss to any rental vehicle.

Additionally, if you buy Comprehensive Coverage, we will pay the loss of use expenses for which you become legally responsible if the rental vehicle is stolen, subject to the maximum amount stated in the policy.

**Other Coverages:** In addition, your policy may contain other endorsements which add or broaden coverage, as indicated by their titles. The principal endorsements which may be found are towing and labor costs; loss of use; and coverage for audio, visual and data electronic equipment; tapes, records, discs and other media.

*** REPRODUCED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ***

**Renewal and Cancellation Provisions:** You may cancel your policy at any time after it has been in effect for 60 days. During the first 60 days of your policy, you may cancel only if you dispose of the vehicle or it is a total loss. Under conditions where the law permits us to cancel or refuse renewal of your policy, we must give you advance notice as follows:

1. 10 days for cancellation because of nonpayment of premium;

2. 45 days for cancellation for any other reason;

3. 45 days if we refuse to renew.

**Deductibles:**

For Comprehensive Coverage, the following deductibles are available: $100, $250, $500, $750, $1,000, $1,500.

For Collision Coverage, the following deductibles are available: $100, $250, $500, $750, $1,000, $1,500.

For Personal Injury Protection Coverage, deductibles are available for one named insured or named insured and each dependent relative: $250, $500, $1,000. These same deductibles are also available for Extended Personal Injury Protection.

SA-1807/FLEP 10/17

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

## ENHANCED LEVEL ENDORSEMENT

It is agreed that the Essential Personal Auto Policy is amended as follows:

**PART A — LIABILITY COVERAGE**

If the Declarations indicates that Part A — Liability Coverage applies, then the following applies:

**SUPPLEMENTARY PAYMENTS**

Item **1.** is amended to increase the $250 to $1,000.

Item **4.** is amended to increase the $200 a day to $250 a day.

---

**PART D — COVERAGE FOR DAMAGE TO YOUR AUTO**

The following items apply in the event of a covered **collision** or **comprehensive** loss:

**TRANSPORTATION EXPENSES**

**B.1.** is replaced by the following:

1.  Up to $25 per day, to a maximum of $750; or

**EXCLUSIONS**

Exclusion **6.** is amended by increasing the $500 to $1,000.

Exclusion **18.** is amended by increasing the $500 to $1,000.

SA-2891/FLEP 3/15

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS



**A Liberty Mutual Company**

## FLORIDA ESSENTIAL PERSONAL AUTO POLICY

SAFECO INSURANCE COMPANY OF ILLINOIS
Home Office: 2815 Forbs Ave., Suite 200, Hoffman Estates, Illinois 60192

(A stock insurance company.)

### READY REFERENCE TO YOUR AUTO POLICY

|  | Beginning On Page |
|---|---|
| **AGREEMENT** | 1 |
| **DEFINITIONS** | 1 |
| **PART A — LIABILITY COVERAGE** | 2 |
| Insuring Agreement | |
| Supplementary Payments | |
| Exclusions | |
| Limit of Liability | |
| Out of State Coverage | |
| Financial Responsibility | |
| Other Insurance | |
| **PERSONAL INJURY PROTECTION COVERAGE** | 6 |
| Insuring Agreement | |
| Exclusions | |
| Limit of Liability | |
| Other Insurance | |
| **PART B — MEDICAL PAYMENTS COVERAGE** | 14 |
| Insuring Agreement | |
| Exclusions | |
| Limit of Liability | |
| Other Insurance | |
| **PART C — UNINSURED MOTORISTS COVERAGE (STACKED OPTION)** | 17 |
| Insuring Agreement | |
| Definitions | |
| Exclusions | |
| Limit of Liability | |
| Other Insurance | |
| **PART D — COVERAGE FOR DAMAGE TO YOUR AUTO** | 21 |
| Insuring Agreement | |
| Deductible | |
| Transportation Expenses | |
| Exclusions | |
| Limit of Liability | |
| Payment of Loss | |
| No Benefit to Bailee | |
| Other Sources of Recovery | |
| Appraisal | |

SA-2890/FLEP R1 3/15

|  | Beginning On Page |
|---|---|
| **PART E — DUTIES AFTER AN ACCIDENT OR LOSS** | **26** |
| **PART F — GENERAL PROVISIONS** | **28** |
| Policy Period and Territory | |
| Changes | |
| Payment of Premium | |
| Fraud | |
| Legal Action Against Us | |
| Our Right to Recover Payment | |
| Termination | |
| Transfer of Your Interest in This Policy | |
| Two or More Autos Insured; Two or More Auto Policies | |
| **ADDITIONAL COVERAGES** | **33** |
| Uninsured Motorists Coverage — Non-Stacked | |
| Extended Personal Injury Protection Coverage | |
| Towing and Labor Costs Coverage | |
| Loss of Use Coverage | |

SA-2890/FLEP R1 3/15

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS

## AGREEMENT

In return for your payment of all premiums, and in reliance upon the statements in the application we agree to insure you subject to the terms, conditions and limitations of this policy. We will insure you for the coverages and limits shown on the Declarations. Your policy consists of the policy contract, Declarations and endorsements applicable to the policy.

## DEFINITIONS

A.  Throughout this policy, "you" and "your" refer to:

   1.  The "named insured" shown in the Declarations;

   2.  The spouse if a resident of the same household.

B.  "We," "us" and "our" refer to the Company, as shown in the Declarations providing this insurance.

C.  For purposes of this policy, a private passenger auto shall be deemed to be owned by a person if leased:

   1.  Under a written agreement to that person; and

   2.  For a continuous period of at least six months.

Other words and phrases are defined. They are in bold type when used.

D.  **"Bodily injury"** means bodily harm, sickness or disease, including death that results.

E.  **"Business"** includes trade, profession or occupation.

F.  **"Family member"** means a person related to you by blood, marriage or adoption who is usually a resident of your household. This includes a ward or foster child who is a resident of your household.

G.  **"Fungi"** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by **fungi**.

H.  **"Occupying"** means in; upon; or getting in, on, out or off.

I.  **"Property damage"** means physical injury or destruction of tangible property including loss of use.

J.  **"Punitive** or **exemplary damages"** include damages which are awarded to punish or deter wrongful conduct, to set an example, to fine, penalize or impose a statutory penalty, and damages which are awarded for any purpose other than as compensatory damages for **bodily injury** or **property damage**.

K.  **"Trailer"** means a vehicle designed to be pulled by a:

   1.  Private passenger auto; or

   2.  Pickup, van or motorhome.

It also means a recreational camping vehicle, a farm wagon or farm implement while towed by a vehicle listed in **K.1.** or **K.2.** above.

L.  **"Your covered auto"** means:

   1.  Any vehicle shown in the Declarations.

   2.  a.  Any newly acquired vehicle, whether operational or not, on the date you become the owner, subject to conditions for **Newly Acquired Replacement Vehicle** and **Newly Acquired Additional Vehicle** under **L.2.b.** below. Any newly acquired vehicle must be of the following types:

      (1)  a private passenger auto;

      (2)  a pickup or van that:

         (a)  has a Gross Vehicle Weight Rating of 12,000 lbs or less; and

         (b)  is not used for the delivery or transportation of goods and materials unless such use is:

            i.  incidental to your **business** of installing, maintaining or repairing furnishings or equipment; or

SA-2890/FLEP R1 3/15                                                                           - 1 -

*** PRINTED FROM IMAGERIGHT. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ***

        ii.   for farming or ranching; or

   **(3)**   a motorhome or **trailer**.

**b.**   A newly acquired vehicle is subject to the following conditions:

   **(1)**   **Newly Acquired Replacement Vehicle.** If the vehicle you acquire replaces one shown in the Declarations, the replacement vehicle will have the same coverage as the vehicle it replaced, other than Part **D** — Coverage for Damage to Your Auto. This provision applies only if there is no other insurance policy that provides coverage for that replacement vehicle.

        Part **D** — Coverage for Damage to Your Auto shall apply for the first thirty (30) days after you acquire the vehicle, including the date of acquisition, only to the extent Part **D** — Coverage for Damage to Your Auto applied to the vehicle being replaced. You must notify us within thirty (30) days after you acquire the replacement vehicle for Part **D** — Coverage for Damage to Your Auto to continue.

   **(2)**   **Newly Acquired Additional Vehicle.** For any newly acquired vehicle that is in addition to any shown in the Declarations coverage shall apply for the first thirty (30) days after you acquire the vehicle, including the date of acquisition. Coverage shall be the broadest coverage we provide for any vehicle shown in the Declarations. This coverage applies only if:

       **(a)**   you acquire the additional vehicle during the policy period shown on the Declarations; and

       **(b)**   there is no other insurance policy that provides coverage for the additional vehicle.

        If you wish to add or continue coverage you must ask us to insure the additional vehicle within thirty (30) days after you acquire the additional vehicle. This thirty (30) days of coverage includes the day you acquire the vehicle.

   **(3)**   Collision Coverage for a newly acquired vehicle begins on the date that you acquire the vehicle. However, if the Declarations does not indicate that Collision Coverage applies to at least one vehicle, you must ask us to insure the newly acquired vehicle within four (4) days after you acquire it. If a loss occurs during the four (4) days after you acquire the vehicle but before you asked us to insure the newly acquired vehicle, a $500 collision deductible will apply.

   **(4)**   Comprehensive Coverage for a newly acquired vehicle begins on the date that you acquire the vehicle. However, if the Declarations does not indicate that Comprehensive Coverage applies to at least one vehicle, you must ask us to insure the newly acquired vehicle within four (4) days after you acquire it. If a loss occurs during the four (4) days after you acquire the vehicle but before you asked us to insure the newly acquired vehicle, a $500 comprehensive deductible will apply.

**3.**   any trailer you own.

**4.**   Any auto or **trailer** you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

   **a.**   breakdown;

   **b.**   repair;

   **c.**   servicing;

   **d.**   loss; or

   **e.**   destruction.

This provision **(L.4.)** does not apply to Coverage for Damage to Your Auto.

---

## PART A — LIABILITY COVERAGE

**INSURING AGREEMENT**

**A.**   We will pay damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy.

**B.** **"Insured"** as used in this Part **A** — Liability Coverage means:

**1.** You or any **family member** for the ownership, maintenance or use of any auto or **trailer**.

**2.** Any person using **your covered auto** with your express or implied permission.

**3.** For **your covered auto**, any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under **B.1.** and **B.2.** above.

**4.** For any auto or **trailer**, other than **your covered auto**, any other person or organization but only with respect to legal responsibility for acts or omissions of you or any **family member** for whom coverage is afforded under this Part **A** — Liability Coverage. This provision **(B.4.)** applies only if the person or organization does not own or hire the auto or **trailer**.

## SUPPLEMENTARY PAYMENTS

We will pay on behalf of an **insured**:

**1.** Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in **bodily injury** or **property damage** covered under this policy. We are not obligated to apply for or furnish such bonds.

**2.** Premiums on appeal bonds and bonds to release attachments in any suit we defend.

**3.** Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

**4.** Up to $200 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

**5.** Other reasonable expenses incurred at our request.

**6.** All expenses incurred by an **insured** for first aid to others at the time of the accident, but not to exceed $10,000.

**7.** Where we are required to cover prejudgment interest, it shall be included in the limit of liability and is not an additional amount of insurance.

## EXCLUSIONS

**A.** We do not provide Liability Coverage for:

**1.** Any **insured** who intentionally causes **bodily injury** or **property damage** even if such **bodily injury** or **property damage** is of a different kind or degree than expected or intended, or such **bodily injury** or **property damage** is sustained by a different person or persons than expected or intended.

**2.** **Property damage** to property owned or being transported by any **insured**.

**3.** **Property damage** to property:

    **a.** rented to;

    **b.** used by; or

    **c.** in the care of;

    that **insured**.

This exclusion **(A.3.)** does not apply to **property damage** to a residence or private garage.

**4.** **Bodily injury** to an employee of that **insured** during the course of employment. This exclusion **(A.4.)** does not apply to **bodily injury** to a domestic employee unless workers compensation benefits are required or available for that domestic employee.

**5.** Any **insured's** liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This exclusion **(A.5.)** does not apply to a share-the-expense car pool.

SA-2890/FLEP R1 3/15

*** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ***

6.   Any **insured** using any vehicle while employed in the pickup or delivery of newspapers or magazines, food or any products for the purpose of compensation. This exclusion does not apply to delivery that is incidental to an **insured's business**.

7.   **a.**   Any **insured** while employed or otherwise engaged in the **business** of:

   **(1)**   selling;

   **(2)**   repairing;

   **(3)**   servicing;

   **(4)**   storing; or

   **(5)**   parking;

   vehicles designed for use mainly on public highways. This includes road testing and delivery.

   **b.**   This exclusion (**A.7.**) does not apply to the ownership, maintenance or use of **your covered auto** by:

   **(1)**   you;

   **(2)**   any **family member**; or

   **(3)**   any partner, agent or employee of you or any **family member**.

8.   Any **insured** maintaining or using any vehicle while that **insured** is employed or otherwise engaged in any **business** (other than farming or ranching) not described in exclusions **A.6.** or **A.7.** This exclusion (**A.8.**) does not apply to the maintenance or use of a:

   **a.**   private passenger auto;

   **b.**   pickup or van; or

   **c.**   **trailer** used with a vehicle described in **A.8.a.** or **A.8.b.** above.

9.   Any **insured** using a vehicle without the express or implied permission of the owner or other person having lawful possession. However, this exclusion does not apply to a **family member** using **your covered auto**.

10.   **a.**   **Bodily injury** or **property damage** for which any **insured**:

   **(1)**   is an **insured** under a nuclear energy liability policy; or

   **(2)**   would be an **insured** under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

   **b.**   A nuclear energy liability policy is a policy issued by any of the following or their successors:

   **(1)**   Nuclear Energy Liability Insurance Association;

   **(2)**   Mutual Atomic Energy Liability Underwriters; or

   **(3)**   Nuclear Insurance Association of Canada.

11.   **Punitive or exemplary damages** awarded against any **insured**.

12.   **Bodily injury** to you or any **family member**.

13.   **Bodily injury** or **property damage** arising out of the use of **your covered auto** while leased or rented to others. However, this exclusion does not apply to the operation of **your covered auto** by you or a **family member**.

14.   **Bodily injury** or **property damage** arising out of a criminal act or omission of the **insured**. However, this exclusion (**14.**) does not apply to traffic violations.

**B.**   We do not provide Liability Coverage for the ownership, maintenance or use of:

1.   **a.**   Any vehicle which:

   **(1)**   has fewer than four wheels;

   **(2)**   is designed mainly for use off public roads; or

SA-2890/FLEP R1 3/15                                   - 4 -

*** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ***

      **(3)** is a vehicle not required to be licensed for use on public roads.

   **b.** This exclusion does not apply:

      **(1)** while such vehicle is being used by an **insured** in a medical emergency; or

      **(2)** to any **trailer**; or

      **(3)** to any non-owned golf carts.

**2.** Any vehicle, other than **your covered auto**, which is:

   **a.** owned by you; or

   **b.** furnished or available for your regular use.

**3.** **a.** Any vehicle, other than **your covered auto**, which is:

      **(1)** owned by any **family member**; or

      **(2)** furnished or available for the regular use of any **family member**.

   **b.** However, this exclusion **(B.3.)** does not apply to you while you are maintaining or **occupying** any vehicle which is:

      **(1)** owned by a **family member**; or

      **(2)** furnished or available for the regular use of a **family member**.

**4.** Any vehicle operated by an **insured** while it is:

   **a.** located inside a facility designed for racing, for the purpose of preparing for, practicing for, used in, or competing in any prearranged or organized:

      **(1)** race activity; or

      **(2)** speed, performance, stunt, or demolition contest or exhibition; or

   **b.** participating in a high performance driving or racing instruction course or school.

This exclusion does not apply to an organized and controlled event that is not a speed, performance, stunt or demolition event.

**LIMIT OF LIABILITY**

**A.** If the Declarations indicates "per person/per accident" coverage applies:

The limit of liability as shown in the Declarations for "each person" for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care and loss of services (including loss of consortium and wrongful death), arising out of **bodily injury** sustained by any one person in any one auto accident.

Subject to this limit for "each person," the limit of liability shown in the Declarations for "each accident" for Bodily Injury Liability is our maximum limit of liability for all damages for **bodily injury** resulting from any one auto accident.

The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all **property damage** resulting from any one accident.

This is the most we will pay regardless of the number of:

**1.** **Insureds**;

**2.** Claims made;

**3.** Vehicles or premiums shown in the Declarations; or

**4.** Vehicles involved in the auto accident.

**B.** If the Declarations indicate **Combined Single Limit** applies, Paragraph **A.** above is replaced by the following:

The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:

**1.** **Insureds**;

SA-2890/FLEP R1 3/15        - 5 -

**** RETRIEVED FROM THE ARCHIVE . THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

We will apply the limit of liability to provide any separate limits required by law for **bodily injury** and **property damage** liability. However, this provision will not change our total limit of liability.

**C.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part **B** — Medical Payment Coverage or any Uninsured Motorists Coverage of this policy.

**D.** A vehicle and attached **trailer** are considered one vehicle. Therefore the limits of liability will not be increased for an accident involving a vehicle which has an attached **trailer**.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which **your covered auto** is principally garaged, we will interpret your policy for that accident as follows:

**A.** If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for **bodily injury** or **property damage** higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

**B.** No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any other collectible insurance.

However, we will provide primary insurance for a vehicle you do not own if:

1. The vehicle is leased by you under a written rental or lease agreement; and

2. The face of the rental or lease agreement contains, in at least 10-point type, the following language:

The valid and collectible liability insurance of any authorized rental or leasing driver is primary for the limits of liability coverage required by §. 324.021(7) and 627.736, Florida Statutes.

---

## PERSONAL INJURY PROTECTION COVERAGE

---

### INSURING AGREEMENT

**A.** We will pay in accordance with the Florida Motor Vehicle No-Fault Law as amended, personal injury protection benefits to or for an **insured** who sustains **bodily injury**. The **bodily injury** must be caused by an accident arising out of the ownership, maintenance or use of a **motor vehicle** and sustained by:

1. You or any **family member** while **occupying** a **motor vehicle** or, while a **pedestrian**, through being struck by a **motor vehicle**; or

2. Any other person while **occupying your covered auto** or, while a **pedestrian**, through being struck by **your covered auto**.

**B.** Personal injury protection benefits consist of:

1. **Medical Benefits.** 80% of reasonable expenses, as listed in the schedule under the Florida Motor Vehicle No-Fault Law, § 627.736(5)(a) for **medically necessary** medical, surgical, X-ray, dental, and

*** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ***

rehabilitative services including prosthetic devices, and medically necessary ambulance, hospital, and nursing services if the individual receives initial services and care within 14 days after the motor vehicle accident. The **medical benefits** provide reimbursement only for:

**a.** Initial services and care that are lawfully provided, supervised, ordered or prescribed by a physician, osteopathic physician, chiropractic physician, or dentist licensed under Florida statutes or that are provided in a hospital or in a facility that owns, or is wholly owned by, a hospital. Initial services and care may also be provided by a person or entity licensed under Florida statutes which provides emergency transportation and treatment.

**b.** Upon referral by a provider described in **1.a.** above, follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to **1.a.** above which may be provided, supervised, ordered, or prescribed only by a physician, osteopathic physician, chiropractic physician or dentist licensed under Florida statutes to the extent permitted by applicable law and under the supervision of such physician, osteopathic physician, chiropractic physician, or dentist, by a physician assistant or advanced registered nurse practitioner licensed under Florida statutes. Follow-up services and care may also be provided by any of the following persons or entities:

    **(1)** a hospital or ambulatory surgical center licensed under Florida statutes.

    **(2)** an entity wholly owned by one or more physicians, chiropractic physicians, osteopathic physician, or dentists licensed under Florida statutes or by such practitioners and the spouse, parent, child, or sibling of such practitioners.

    **(3)** an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals.

    **(4)** a physical therapist licensed under Florida statutes based upon a referral by a provider described in this **1.b.** provision.

    **(5)** A health care clinic licensed under the Florida Health Care Clinic Act:

        **(a)** Which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc.; or

        **(b)** Which:

            **(i)** Has a licensed medical director;

            **(ii)** Has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

            **(iii)** Provides at least four of the following medical specialties:

                **i.** General medicine;

                **ii.** Radiography;

                **iii.** Orthopedic medicine;

                **iv.** Physical medicine;

                **v.** Physical therapy;

                **vi.** Physical rehabilitation;

                **vii.** Prescribing or dispensing outpatient prescription medication; or

                **viii.** Laboratory services;

            as authorized under the Florida Motor Vehicle No-Fault Law.

**c.** reimbursement for services and care provided in **1.a.** or **1.b.** above, up to $10,000 if a physician, dentist, physician assistant or an advanced registered nurse practitioner licensed under Florida statutes has determined that the injured person had an **emergency medical condition**.

**d.** reimbursement for services and care provided in **1.a.** or **1.b.** above is limited to $2,500 if a provider listed in paragraph **1.a.** or **1.b.** above determines that the injured person did not have an **emergency medical condition**.

SA-2890/FLEP R1 3/15

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

    **e.** **medical benefits** do not include massage as defined in Florida statutes, § 480.033 or acupuncture as defined in Florida statutes, § 457.102, regardless of the person, entity, or licensee providing massage or acupuncture, and a licensed massage therapist or licensed acupuncturist may not be reimbursed for **medical benefits** under this section.

    **Medical benefits** shall only be reimbursed up to 80% of the schedule of maximum charges listed in the Florida Motor Vehicle No-Fault Law § 627.736(5)(a), Florida Statutes for such services and care that are lawfully provided, supervised, ordered or prescribed by a healthcare provider or facility authorized under Florida's Motor Vehicle No-Fault Law.

**2.** **Work loss.** With respect to the period of disability of an **insured**, 60% of any loss of gross income and earning capacity from that **insured's** inability to work due to **bodily injury**. However, **work loss** does not include any loss after an **insured's** death.

**3.** **Replacement Services.** With respect to the period of disability of an **insured**, all expenses reasonably incurred in obtaining ordinary and necessary services from others instead of those that the **insured** would have performed, without income, for the benefit of the **insured's** household had the **insured** not sustained **bodily injury**.

**4.** **Accidental Death.** A death benefit.

**C.** **DEFINITIONS APPLICABLE TO THIS COVERAGE**

**1.** For purposes of this coverage, a **motor vehicle** shall be deemed to be owned by a person if that person:

    **a.** holds the legal title to such vehicle.

    **b.** is a debtor having the right to possession, if such vehicle is the subject of a security agreement.

    **c.** is a lessee having the right to possession, if such vehicle is the subject of a lease which:

        **(1)** has an option to purchase; and

        **(2)** is for a period of at least 6 months.

    **d.** is a lessee having the right to possession, if such vehicle is the subject of a lease which:

        **(1)** does not have an option to purchase;

        **(2)** is for a period of at least 6 months; and

        **(3)** requires the lessee to secure insurance.

**2.** **"Emergency medical condition"** in this coverage means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

    **a.** serious jeopardy to patient health.

    **b.** serious impairment to bodily functions.

    **c.** serious dysfunction of any body organ or part.

**3.** **"Insured"** in this coverage means:

    **a.** You or any **family member** while:

        **(1)** **occupying**; or

        **(2)** a **pedestrian** struck by;

        a **motor vehicle**.

    **b.** Any other person while:

        **(1)** **occupying**; or

        **(2)** a **pedestrian** struck by;

        **your covered auto**.

REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

4.  **"Medically necessary"** refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing or treating an illness, injury, disease or symptom in a manner that is:

    a.  in accordance with the generally accepted standards of medical practice;

    b.  clinically appropriate in terms of type, frequency, extent, site and duration; and

    c.  not primarily for the convenience of the patient, physician or other health care provider.

5.  **"Motor vehicle"** means:

    a.  any self-propelled vehicle with four or more wheels which is:

        (1)  designed; and

        (2)  required to be licensed;

        for use on Florida highways.

    b.  any trailer or semitrailer designed for use with such vehicle.

    However, **"motor vehicle"** does not include:

    a.  any motor vehicle which is:

        (1)  used in mass transit other than public school transportation;

        (2)  designed to transport more than five passengers (excluding the operator); and

        (3)  owned by a:

            (a)  municipality;

            (b)  transit authority; or

            (c)  political subdivision of the state.

    b.  a mobile home.

6.  **"Occupying"** means:

    a.  in or upon;

    b.  entering into; or

    c.  alighting from.

7.  **"Pedestrian"** means a person who is not **occupying** a self-propelled vehicle.

8.  **"Your covered auto"** means a **motor vehicle** owned by you and for which security is required to be maintained under the Florida Motor Vehicle No-Fault Law as amended, and either:

    a.  a premium is charged; or

    b.  it is a **trailer**, other than a mobile home, designed for use with a **motor vehicle**.

## EXCLUSIONS

A.  We do not provide Personal Injury Protection Coverage for any **insured**:

    1.  While operating **your covered auto** without your express or implied consent.

    2.  If that **insured's** conduct contributed to his/her **bodily injury** under any of the following circumstances:

        a.  intentionally causing **bodily injury** to himself/herself; or

        b.  while committing a felony.

    3.  Other than you, if that **insured** owns a **motor vehicle** for which security is required under the Florida Motor Vehicle No-Fault Law as amended.

    4.  Other than you or any **family member**, who is entitled to personal injury protection benefits from a person who owns a **motor vehicle** which is not **your covered auto** under this policy, or from that vehicle's owner's policy.

    5.  Who sustains **bodily injury** while **occupying** a **motor vehicle** located for use as a residence or premises.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

**B.** We do not provide Personal Injury Protection Coverage for:

 1. You or any **family member** while **occupying** a **motor vehicle** which is:

    a. owned by you; and

    b. not **your covered auto** under this policy.

 2. Any **pedestrian**, other than you or any **family member** who is not a legal resident of Florida.

 3. Any person operating **your covered auto** without your express or implied consent.

## PAYMENT OF LOSS

We may pay the insured or any person or organization providing the medical services, supplies or care.

## LIMIT OF LIABILITY

**A.** Regardless of the number of:

 1. **Insureds**;

 2. Policies or bonds applicable;

 3. Vehicles involved; or

 4. Claims made;

 the total aggregate limit of liability for all medical benefits, work loss and replacement services available, to or for each **insured** injured in any one accident, from all sources combined, including this policy shall be $10,000.

**B.** Any amount payable under Personal Injury Protection Coverage shall be reduced by any amounts paid or payable for the same elements of loss under any workers compensation laws.

**C.** Any coverage provided under any Uninsured Motorists Coverage of this policy shall be excess over any personal injury protection benefits paid or payable.

**D.** The amount of any deductible shown in the Declarations shall be applied to 100% of the following required personal injury protection related expenses and losses. The total amount otherwise payable under this coverage for:

 1. **Medical Benefits**;

 2. **Work loss**; and

 3. **Replacement Services**;

 for each **insured** to whom the deductible applies. Accidental death is not subject to a deductible.

**E.** Any amounts payable under this coverage shall be subject to Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers.

**F.** Any amounts payable under this coverage for **medical benefits** shall not exceed the prescribed Schedule of Maximum Charges for such medical expenses as prescribed by the Florida Motor Vehicle No-Fault Law.

 We will limit reimbursement of medical expenses to 80 percent of a properly billed reasonable charge, but in no event will we pay more than 80 percent of the following schedule of maximum charges:

 1. For emergency transport and treatment by providers licensed under Chapter 401, Florida Statutes, 200 percent of Medicare.

 2. For emergency services and care provided by a hospital licensed under Chapter 395, Florida Statutes, 75 percent of the hospital's **usual and customary charges**.

 3. For emergency services and care as defined by § 395.002, Florida Statutes, provided in a facility licensed under Chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the **usual and customary charges** in the community.

 4. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

 5. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

*** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ***

6. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

   a. The participating physicians fee schedule of Medicare Part B, except as provided in sub-subparagraphs II and III.

   b. Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

   c. The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

   However, if such services, supplies, or care is not reimbursable under Medicare Part B, we will limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under § 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation will not be reimbursed by us.

   For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1, of the year in which the services, supplies, or care was rendered through March 1 of the following year and for the area in which such services were rendered, except that it may not be less than the allowable amount under the participating physicians schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

G. Any death benefit payable under Personal Injury Protection Coverage shall be $5,000 per person. Death benefits are in addition to the **medical benefits**, **work loss** and **replacement services** provided under the policy.

## OTHER INSURANCE

A. No one will be entitled to receive duplicate payments for the same elements of loss under this or any other insurance. If an **insured** receives personal injury protection benefits from another insurer, that insurer shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses of processing the claim.

B. If an **insured** sustains **bodily injury** while:

   1. **Occupying**; or

   2. Struck by a **motor vehicle** rented or leased under a rental or lease agreement;

   the personal injury protection benefits afforded under the lessor's policy shall be primary.

   This provision (**B.**) does not apply if the face of the rental or lease agreement contains, in at least 10-point type, the following language:

   The valid and collectible personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of personal injury protection coverage required by § 324.021(7) and § 627.736 Florida Statutes.

## GENERAL PROVISIONS APPLICABLE TO THIS COVERAGE ONLY

## POLICY TERRITORY

The policy territory is:

1. Florida.

2. The United States of America, its territories or possessions or Canada.

   This provision applies only to:

   a. you or any **family member** while **occupying your covered auto**; or

   b. you while **occupying** a **motor vehicle**:

      (1) owned by any **family member**; and

      (2) for which security is maintained as required by the Florida Motor Vehicle No-Fault Law as amended.

REPRINTED FROM THE ARCHIVE  THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

**FRAUD**

We do not provide Personal Injury Protection Coverage for an **insured** if that **insured** has committed, by a material act or omission, any insurance fraud relating to Personal Injury Protection Coverage under this policy, and if the fraud is:

    **1.** Admitted to in a sworn statement by the **insured**; or

    **2.** Established in a court of competent jurisdiction.

We may deny coverage or void all Personal Injury Protection Coverage arising from the claim with respect to the **insured** who committed any insurance fraud. Any benefits paid prior to the discovery of that **insured's** fraud shall be recoverable from that **insured**.

If we have a reasonable belief that a fraudulent insurance act has been committed, we will notify you, in writing, within 30 days after submission of the claim that the claim is being investigated for suspected fraud. Beginning at the end of the initial 30-day period, the insurer has an additional 60 days to conduct its fraud investigation. We must either deny the claim or pay the claim no later than 90 days after submission of the claim.

**LEGAL ACTION AGAINST US**

**A.** No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, no legal action may be brought against us:

    **1.** Until the claim for benefits is overdue in accordance with the provisions of Payment of Benefits, paragraph **1.**; and

    **2.** Until a demand letter is provided to us in accordance with the requirements of the Florida Motor Vehicle No-Fault Law, § 627.736, Florida Statutes; and

    **3.** With respect to the overdue claim specified in the demand letter, if we have:

        **a.** paid the overdue claim; or

        **b.** agreed to pay for future treatment not yet rendered;

    within 30 days from the date of receipt of the demand letter by us, in accordance with the requirements of the Florida Motor Vehicle No-Fault Law, § 627.736, Florida Statutes.

    The demand letter shall be mailed to us by U.S. certified mail or registered mail, return receipt requested.

**B.** No person or organization has any right under this policy to bring us into any action to determine the liability of an **insured**.

**C.** If legal action is brought against us, all claims related to the same health care provider for the same **insured** shall be brought in one action, unless good cause is shown why such claims should be brought separately.

**OUR RIGHT TO RECOVER PAYMENT**

**A.** If we make a payment under Personal Injury Protection Coverage and the person to or for whom payment was made has a right to recover damages from another we shall, to the extent of our payment, be subrogated to that right. That person shall:

    **1.** Execute and deliver instruments and papers and do whatever else is necessary to secure our rights; and

    **2.** Do nothing after loss to prejudice these rights.

**B.** If we make a payment under Personal Injury Protection Coverage and the person to or for whom payment was made sustained **bodily injury** while:

    **1.** **Occupying**; or

    **2.** A **pedestrian** struck by;

    a commercial motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law as amended, we shall, to the extent of our payment, be entitled to reimbursement from the person who owns such motor vehicle or that person's insurer.

    However, our right of reimbursement under Paragraph **B.** does not apply to the owner or registrant of a **motor vehicle** used as a taxicab.

*** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ***

**PAYMENT OF BENEFITS**

1. Benefits payable under Personal Injury Protection Coverage may be overdue if not paid within 30 days after written notice of loss and the amount of loss have been filed with us in accordance with the provisions of the Florida Motor Vehicle No-Fault Law as amended.

2. We may, at our option, pay any **medical benefits** to the:

   a. **insured**; or

   b. person or organization providing services or supplies for such benefits.

   However, we will not pay:

   a. a claim or charges for such benefits made by a:

      (1) broker, as defined in the Florida Motor Vehicle No-Fault Law as amended; or

      (2) person making the claim on behalf of such broker.

   b. any charge or reimbursement made by or on behalf of a clinic that is required to be licensed with the Agency For Health Care Administration:

      (1) but is not so licensed; or

      (2) that is otherwise operating in violation of the Florida Health Care Clinic Act.

   c. a claim or charges for such benefits:

      (1) for any service or treatment that was not lawful at the time rendered;

      (2) to any person who knowingly submits a false or misleading statement relating to the claim or charges;

      (3) with respect to a bill or statement that does not substantially meet the applicable requirements of FLA. STAT. SECTION § 627.736(5)(d), Florida Statutes;

      (4) for any service or treatment that is:

         (a) upcoded; or

         (b) that is unbundled when such treatment or service should be bundled;

         in accordance with the provisions of the Florida Motor Vehicle No-Fault Law as amended;

      (5) for any medical services or treatment billed by a physician and not provided in a hospital unless such services or treatment:

         (a) are actually rendered by the physician or are incident to the physician's professional services; and

         (b) are included on the physician's bill, including documentation verifying that the physician is responsible for the medical services or treatment that were rendered and billed.

   d. for any invalid diagnostic test as determined by the Florida Department of Health in accordance with the Florida Motor Vehicle No-Fault Law as amended.

   e. charges for any services rendered by any person who violates the provisions of FLA. STAT. SECTION 817.234(8) in regard to the **insured** for whom such services were rendered and with respect to soliciting business or causing business to be solicited from any **insured** involved in a motor vehicle accident for the purpose of making:

      (1) motor vehicle tort claims; or

      (2) claims for personal injury protection benefits.

3. If a person seeking Personal Injury Protection Coverage is charged with committing a felony, we shall withhold benefits until, at the trial level:

   a. The prosecution makes a formal entry on the record that it will not prosecute the case against that person;

   b. The charge is dismissed; or

   c. That person is acquitted.

SA-2890/FLEP R1 3/15                                   - 13 -

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

4.  If we pay only a portion of a claim or reject a claim due to an alleged error in the claim, we, at the time of the partial payment or rejection, will provide an itemized specification or explanation of benefits due to the specified error. Upon receiving the specification or explanation, the person making the claim, at the person's option and without waiving any other legal remedy for payment, has 15 days to submit a revised claim, which will be considered a timely submission of written notice of a claim.

5.  We will create and maintain for each **insured** a log of personal injury protection benefits paid by us on behalf of the **insured**. If litigation is commenced, we shall provide the **insured** a copy of the log within 30 days after receiving a request for the log from the **insured**.

6.  If there is a dispute between an **insured** and us, or between an assignee of the **insured's** rights and us, upon request, we will notify the **insured** or the assignee that the policy limits under this coverage have been reached within 15 days after the limits have been reached.

## MODIFICATION OF POLICY COVERAGES

A.  Any coverage provided under Part **B** — Medical Payments Coverage or any Uninsured Motorists Coverage of this policy shall be excess over our share of any personal injury protection benefits paid or payable.

B.  Regardless of whether the limits for personal injury protection benefits have been exhausted any coverage provided under Part **B** — Medical Payments Coverage shall pay the amount of any claim for medical expenses payable under Personal Injury Protection Coverage which exceeds the 80% limitation as listed in the schedule under the Florida Motor Vehicle No-Fault Law, § 627.736(5)(a), Florida Statutes for medical expenses.

C.  No coverage is provided under Part **B** — Medical Payments Coverage for the amount of any applicable deductible under Personal Injury Protection Coverage.

## PROVISIONAL PREMIUM

A.  In the event of any change in the:

1.  Rules;

2.  Rates;

3.  Rating plan;

4.  Premiums; or

5.  Minimum premiums;

applicable to Personal Injury Protection Coverage, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-Fault Law as amended which provide for the exemption of persons from tort liability, the premium shown in the Declarations for any coverage under Part **A** — Liability Coverage, Part **B** — Medical Payments Coverage or any Uninsured Motorists Coverage of this policy shall be deemed to be provisional and subject to recomputation.

B.  If this policy is a renewal policy, such recomputation shall include the amount of any return premium previously credited or refunded to you, in accordance with the Florida Motor Vehicle No-Fault Law as amended, with respect to insurance provided under a previous policy.

C.  If the final recomputed premium exceeds the premium shown in the Declarations, you shall pay us:

1.  The excess amount; and

2.  The amount of any return premium previously credited or refunded.

## PART B — MEDICAL PAYMENTS COVERAGE

## INSURING AGREEMENT

A.  We will pay usual and customary charges incurred for reasonable and necessary medical and funeral expenses because of **bodily injury**:

1.  Caused by accident; and

2.  Sustained by an **insured**.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

Medical Payments Coverage does not cover:

1. Massage, regardless of the person, entity or licensee providing massage, and a licensed massage therapist may not be reimbursed for medical benefits.

2. Acupuncture, regardless of the person, entity or licensee providing acupuncture, and a licensed acupuncturist may not be reimbursed for medical benefits.

We will pay only those expenses:

1. Incurred for services rendered within three (3) years from the date of the accident; and

2. The initial services and care were received within 14 days after the motor vehicle accident.

We have a right to review medical expenses and services to determine if they are reasonable and necessary for the **bodily injury** sustained.

**B.** **"Insured"** as used in this Part **B** — Medical Payments Coverage means:

1. You or any **family member**:

   **a.** while **occupying**; or

   **b.** as a pedestrian or bicyclist when struck by;

   a motor vehicle designed for use mainly on public roads or a trailer of any type.

2. Any other person while **occupying your covered auto** with your express or implied permission.

3. Any other person while **occupying**, as a guest, an automobile not owned by you or a **family member**, while being operated by you or a **family member**.

**C.** **"Emergency medical condition"** in this coverage means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

**a.** serious jeopardy to patient health.

**b.** serious impairment to bodily functions.

**c.** serious dysfunction of any body organ or part.

## EXCLUSIONS

We do not provide Medical Payments Coverage for any **insured** for **bodily injury**:

1. Sustained while **occupying** any motorized vehicle having fewer than four wheels.

2. Sustained while **occupying your covered auto** when it is being used as a public or livery conveyance. This exclusion **(2.)** does not apply to a share-the-expense car pool.

3. Sustained while **occupying** any vehicle while employed in the pickup or delivery of newspapers or magazines, food or any products for the purpose of compensation. This exclusion does not apply to delivery that is incidental to an **insured's business**.

4. Sustained while **occupying** any vehicle located for use as a residence or premises.

5. Occurring during the course of employment if workers compensation benefits are required or available for the **bodily injury**.

6. Sustained while **occupying**, or when struck by, any vehicle (other than **your covered auto**) which is:

   **a.** owned by you; or

   **b.** furnished or available for your regular use.

7. Sustained while **occupying**, or when struck by, any vehicle (other than **your covered auto**) which is:

   **a.** owned by any **family member**; or

   **b.** furnished or available for the regular use of any **family member**.

   However, this exclusion **(7.)** does not apply to you.

*** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ***

8. Sustained while **occupying** a vehicle without the express or implied permission of the owner or other person having lawful possession. However, this exclusion does not apply to a **family member** using **your covered auto**.

9. Sustained while **occupying** a vehicle when it is being used in the **business** of an **insured**. This exclusion **(9.)** does not apply to **bodily injury** sustained while **occupying** a:

   a. private passenger auto;

   b. pickup or van; or

   c. **trailer** used with a vehicle described in **a.** or **b.** above.

10. Caused by or as a consequence of:

    a. discharge of a nuclear weapon (even if accidental);

    b. war (declared or undeclared);

    c. civil war;

    d. insurrection; or

    e. rebellion or revolution.

11. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

    a. nuclear reaction;

    b. radiation; or

    c. radioactive contamination.

12. Sustained while **occupying** any vehicle operated by the **insured** while it is:

    a. located inside a facility designed for racing, for the purpose of preparing for, practicing for, used in, or competing in any prearranged or organized:

       (1) race activity; or

       (2) speed, performance, stunt, or demolition contest or exhibition; or

    b. participating in a high performance driving or racing instruction course or school.

    This exclusion does not apply to an organized and controlled event that is not a speed, performance, stunt or demolition event.

13. Caused by the actual growth, proliferation or spread of **fungi** or bacteria.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this Medical Payments Coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

   1. **Insureds**;

   2. Claims made;

   3. Vehicles or premiums shown in the Declarations; or

   4. Vehicles involved in the accident.

   The maximum limit of liability for the total of all Medical Payment Coverage shown in the Declarations is the total aggregate limit for Medical Payments Coverage available, to or for each **insured** injured in any one accident, from all sources combined, including this policy, if the **insured** receives initial services and care within 14 days after the motor vehicle accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this Medical Payments Coverage and Part **A** — Liability Coverage or any Uninsured Motorists Coverage of this policy.

C. No one will be entitled to receive supplemental payment under Medical Payments Coverage for claims in excess of Personal Injury Protection Coverage limits if they did not sustain an emergency medical condition as defined under Personal Injury Protection Coverage.

*** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ***

**D.** Any amounts payable under this coverage shall be subject to Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers.

**E.** Any amounts payable under this coverage shall not exceed the prescribed Schedule of Maximum Charges for such medical expenses as prescribed by the Florida Motor Vehicle No-Fault Law.

In no event will we pay more than the following schedule of maximum charges:

**1.** For emergency transport and treatment by providers licensed under Chapter 401, Florida Statutes, 200 percent of Medicare.

**2.** For emergency services and care provided by a hospital licensed under Chapter 395, Florida Statutes, 75 percent of the hospital's **usual and customary charges**.

**3.** For emergency services and care as defined by § 395.002, Florida Statutes, provided in a facility licensed under Chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the **usual and customary charges** in the community.

**4.** For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

**5.** For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

**6.** For all other medical services, supplies, and care, 200 percent of the allowable amount under

**a.** The participating physicians fee schedule of Medicare Part B, except as provided in sub-subparagraphs II and III.

**b.** Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

**c.** The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B, we will limit reimbursement to the maximum reimbursable allowance under workers' compensation, as determined under § 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided.

For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care was rendered and for the area in which such services were rendered through March 1 of the following year, except that it may not be less than the allowable amount under the participating physicians schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

**OTHER INSURANCE**

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

Medical Payments Coverage under this policy shall be excess over **medical benefits** of all Personal Injury Protection Coverage available from all sources. However, this does not apply to the 20% of the **medical benefits** that are not paid under Personal Injury Protection Coverage because of the 80% limitation.

---

## PART C — UNINSURED MOTORISTS COVERAGE (STACKED OPTION)

**INSURING AGREEMENT**

We will pay damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury**:

**1.** Sustained by an **insured**; and

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

   **2.**   Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle**.

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

## DEFINITIONS

**A.**   **"Insured"** as used in this Part **C** — Uninsured Motorists Coverage means:

   **1.**   You or any **family member**.

   **2.**   Any rated driver shown on the Declarations other than you or a **family member**.

   **3.**   Any other person **occupying your covered auto** with your express or implied permission.

   **4.**   Any person for damages that person is entitled to recover because of **bodily injury** to which this coverage applies sustained by a person described in **1.** through **3.** above.

**B.**   **"Uninsured motor vehicle"** means a land motor vehicle or trailer of any type:

   **1.**   To which no bodily injury liability bond or policy applies at the time of the accident.

   **2.**   To which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for **bodily injury** under that bond or policy to an **insured** is not enough to pay the full amount the **insured** is legally entitled to recover as damages.

   **3.**   Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in **bodily injury** without hitting:

      **a.**   you, any **family member** or any other rated driver listed on the Declarations;

      **b.**   a vehicle which you, any **family member** or any other rated driver listed on the Declarations are **occupying**; or

      **c.**   **your covered auto.**

      If there is no physical contact with the hit-and-run vehicle the facts of the accident must be proved. We will only accept competent evidence other than the testimony of a person making claims under this or any similar coverage.

   **4.**   To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

      **a.**   denies coverage; or

      **b.**   is or becomes insolvent.

However, **uninsured motor vehicle** does not include any vehicle or equipment:

   **1.**   Owned by or furnished or available for the regular use of you or any **family member** unless it is a **your covered auto** to which Part **A** of the policy applies and liability coverage is excluded for any person other than you or any **family member** for damages sustained in the accident by you or any **family member**.

   **2.**   Operated on rails or crawler treads.

   **3.**   Designed mainly for use off public roads while not on public roads.

   **4.**   While located for use as a residence or premises.

## EXCLUSIONS

**A.**   We do not provide Uninsured Motorists Coverage for **bodily injury** sustained by any **insured**:

   **1.**   If that **insured** or the legal representative settles the **bodily injury** claim without our consent. However, this exclusion **(A.1.)** does not apply:

      **a.**   if such settlement does not prejudice our right to recover payment; or

      **b.**   to a settlement made with the insurer of a vehicle described in section **2.** of the definition of **uninsured motor vehicle**.

\*\*\*\* REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS \*\*\*\*

2. While **occupying your covered auto** when it is being used as a public or livery conveyance. This exclusion **(A.2.)** does not apply to a share-the-expense car pool.

3. While using any vehicle while employed in the pickup or delivery of newspapers or magazines, food or any products for the purpose of compensation. This exclusion does not apply to delivery that is incidental·to an **insured's business**.

4. While using a vehicle without the express or implied permission of the owner or other person having lawful possession. However, this exclusion does not apply to you, any **family member** or any other rated driver listed on the Declarations using **your covered auto**.

5. With respect to damages for pain, suffering, mental anguish or inconvenience unless the **bodily injury** consists in whole or in part of:

   a. significant and permanent loss of an important bodily function;

   b. permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement;

   c. significant and permanent scarring or disfigurement; or

   d. death.

B. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

   1. Workers compensation law; or

   2. Disability benefits law.

C. We do not provide Uninsured Motorists Coverage for **punitive or exemplary damages**.

### LIMIT OF LIABILITY

A. Our maximum limit of liability for you, any **family member**, or any other rated driver shown on the Declarations for all damages, including damages for care and loss of services (including loss of consortium and wrongful death), arising out of **bodily injury** sustained by any one person in any one accident is the sum of the limits of liability shown in the Declarations for "each person."

   Subject to this limit for "each person," our maximum limit of liability for you, any **family member**, or any other rated driver shown on the Declarations for all damages arising out of **bodily injury** resulting from any one accident is the sum of the limits of liability shown in the Declarations for "each accident."

B. For **insureds** other than you, any **family member** or any other rated driver listed in the Declarations, the limit of liability shown in the Declarations for "each person" for Uninsured Motorists Coverage applicable to **your covered auto** that the **insured** was **occupying** at the time of the accident, is our maximum limit of liability for all damages, including damages for care and loss of services (including loss of consortium and wrongful death), arising out of **bodily injury** sustained by any one person in any one accident.

   Subject to this limit of "each person", the limit of liability shown in the Declarations for "each accident" for Uninsured Motorists Coverage applicable to **your covered auto** that the **insured**, other than you, any **family member** or any other rated driver listed in the Declarations, was **occupying** at the time of the accident, is our maximum limit of liability for all damages for **bodily injury** resulting from any one auto accident.

C. This is the most we will pay regardless of the number of:

   1. **Insureds**;

   2. Claims made;

   3. Vehicles or premiums shown in the Declarations; or

   4. Vehicles involved in the accident.

D. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

   1. Part **A** — Liability Coverage of this policy;

   2. No-fault coverage; or

   3. Automobile medical payments coverage.

**E.**  We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

**F.**  We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

    **1.**  Workers compensation law; or

    **2.**  Disability benefits law.

**G.**  With respect to coverage under Paragraph **2.** of the definition of **uninsured motor vehicle**, we will reduce the **insured's** total damages by any amount available to that **insured**, under any bodily injury liability bonds or policies applicable to the **uninsured motor vehicles**, that such **insured** did not recover as a result of a settlement between that **insured** and the insurer of an **uninsured motor vehicle**. However, any reduction of the **insured's** total damages will not reduce the limit of liability for this coverage.

This Paragraph **G.** shall not apply if we advance payment to the **insured** in an amount equal to the tentative settlement with the insurer of the **uninsured motor vehicle**.

**H.**  A vehicle and attached **trailer** are considered one vehicle. Therefore the limits of liability will not be increased for an accident involving a vehicle which has an attached **trailer**.

**I.**  If Combined Single Limit Uninsured Motorists Coverage applies the paragraphs under **A.** and **B.** of the Limit of Liability provision for Uninsured Motorists Coverage (Stacked Options) are replaced by the following:

The maximum limit of liability for Uninsured Motorists Coverage in any accident involving you, any **family member** or any other rated driver listed in the Declarations is the sum of the Uninsured Motorists Coverage limits shown in the Declarations applicable to each vehicle in the Declarations.

The maximum limit of our liability for Uninsured Motorists Coverage in any one accident involving an **insured** other than you, any **family member** or any other rated driver listed in the Declarations is the limit shown on the Declarations applicable to the vehicle that the **insured** was **occupying** at the time of the accident.

This is the most we will pay regardless of the number of:

    **1.**  **Insureds**;

    **2.**  Claims made;

    **3.**  Vehicles or premiums shown in the Declarations; or

    **4.**  Vehicles involved in the accident.

## OTHER INSURANCE

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

## ARBITRATION

**A.**  If we and an **insured** do not agree:

    **1.**  Whether that **insured** is legally entitled to recover damages; or

    **2.**  As to the amount of damages which are recoverable by that **insured**;

from the owner or operator of an **uninsured motor vehicle** then the matter may be:

    **1.**  Mediated, in accordance with the Mediation provision contained in Part **F** — General Provisions of the policy, if the damages resulting from **bodily injury** are for $10,000 or less; or

    **2.**  Arbitrated. However, disputes concerning coverage under this Part **C** — Uninsured Motorists Coverage may not be arbitrated.

If either party demands mediation, the mediation must be completed before arbitration can occur.

**B.**  Both parties must agree to arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

*** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ***

Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

**C.** Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the **insured** is legally entitled to recover damages; and

2. The amount of damages.

### FLORIDA ARBITRATION CODE

If we and an **insured** agree to arbitration, the Florida Arbitration Code will not apply.

### ADDITIONAL DUTIES

A person seeking Uninsured Motorists Coverage under section **2.** of the definition of **uninsured motor vehicle** must also promptly:

1. Send us copies of the legal papers if a suit is brought; and

2. Notify us in writing of a tentative settlement between the **insured** and the insurer of the uninsured motor vehicle and allow us 30 days to advance payment to that **insured** in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such **uninsured motor vehicle**.

### GENERAL PROVISIONS

### TWO OR MORE AUTOS INSURED; TWO OR MORE AUTO POLICIES

1. This provision does not apply to Uninsured Motorists Coverage to you, any **family member** or any other rated driver listed on the Declarations if you have purchased Uninsured Motorists Coverage — Stacked Option.

2. No one will be entitled to receive duplicate payments for the same elements of loss under Uninsured Motorists Coverage STACKED OPTION.

---

## PART D — COVERAGE FOR DAMAGE TO YOUR AUTO

---

### INSURING AGREEMENT

**A.** We will pay for direct and accidental loss to **your covered auto** or any **non-owned auto**, including its equipment, any child safety seat in use in **your covered auto** or **non-owned auto**, minus any applicable deductible shown in the Declarations. We will pay for loss to **your covered auto** caused by:

1. Other than **collision** only if the Declarations indicate that Comprehensive Coverage is provided for that auto.

2. **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a **non-owned auto**, we will provide the broadest coverage applicable to any vehicle shown in the Declarations.

**B.** "**Collision**" means the upset of **your covered auto** or a **non-owned auto** or its impact with another vehicle or object.

"**Comprehensive**" means loss, other than **collision**, to **your covered auto** or a **non-owned auto**. Losses caused by the following are not **collision** losses but are **comprehensive** losses:

Loss caused by missiles or falling objects; fire; theft or larceny; explosion or earthquake; windstorm; hail; water or flood; malicious mischief or vandalism; riot or civil commotion; contact with a bird or animal; or breakage of glass.

If breakage of glass is caused by a **collision**, you may elect to have it considered a loss caused by **collision**.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

C.  1.  **"Non-owned auto"** means:

    a.  Any private passenger auto, pickup, van (other than a cargo van) or **trailer** with a Gross Vehicle Weight Rating of 12,000 pounds or less or any cargo van or moving van with a Gross Vehicle Weight Rating of 18,000 pounds or less, not owned by or furnished or available for the regular use of you or any **family member** while in the custody of or being operated by you or any **family member**; or

    b.  Any auto or **trailer** you do not own while used as a temporary substitute for **your covered auto** which is out of normal use because of its:

        (1)  breakdown;

        (2)  repair;

        (3)  servicing;

        (4)  loss; or

        (5)  destruction.

  2.  **"Non-owned auto"** does not include any vehicle which has been operated or rented by or in the possession of you or any **family member** for 30 or more consecutive days. This does not apply to a temporary substitute vehicle authorized by us.

D.  **"Camper body"** means a body equipped as sleeping or living quarters which is designed to be mounted on a pickup.

E.  **"Diminution in value"** means the actual or perceived loss in market or resale value which results from a direct and accidental loss.

**DEDUCTIBLE**

Unless stated otherwise, the applicable deductible shown in the Declarations shall be applied to each accidental loss covered under Part D — Coverage for Damage to Your Auto of the policy. However,

  1.  If loss to more than one of **your covered autos** or a **non-owned auto** results from the same loss, only the highest applicable deductible will apply.

  2.  In the event of a **collision** with another vehicle insured by:

    a.  a Safeco insurance company; or

    b.  another Liberty Mutual Agency Corporation company;

    no deductible will apply.

    This does not include a vehicle described as **your covered auto** or **non-owned auto**.

  3.  We will pay under Comprehensive Coverage for the cost of repairing or replacing the damaged windshield on **your covered auto** or a **non-owned auto** without a deductible. We will pay only if the Declarations indicates that Comprehensive Coverage applies.

**TRANSPORTATION EXPENSES**

A.  Subject to the limitations described in paragraphs **B.** and **C.**, below, we will pay:

  1.  Temporary transportation expenses incurred by you in the event of the total theft of **your covered auto** or a **non-owned auto**. We will pay for such expenses only if the Declarations indicate that Comprehensive Coverage is provided for that auto. We will pay only expenses incurred during the period:

    a.  beginning 48 hours after the theft; and

    b.  ending when **your covered auto** or the **non-owned auto** is returned to use or we pay for its loss.

  2.  Indirect loss expenses for which you become legally responsible in the event of a loss to a **non-owned auto**. We will pay only expenses beginning when the **non-owned auto** is withdrawn from use for more than 24 hours. We will pay for indirect loss expenses if the loss is caused by:

    a.  a comprehensive loss only if the Declarations indicate that Comprehensive Coverage is provided for any **your covered auto**.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

     **b.**  **collision** only if the Declarations indicate that Collision Coverage is provided for any **your covered auto**.

**B.**  For the expenses described in paragraphs **A.1.** and **A.2.** we will pay the greater of the following, without application of a deductible:

    **1.**  Up to $20 per day, to a maximum of $600; or

    **2.**  The limit for Loss of Use, if any, shown in the Declarations.

**C.**  Our payment for the expenses described in paragraphs **A.1.** and **A.2.** will be limited to that period of time reasonably required to repair or replace the **your covered auto** or the **non-owned auto**.

### EXCLUSIONS

We will not pay for:

    **1.**  Loss to **your covered auto** or any **non-owned auto** which occurs while it is being used as a public or livery conveyance. This exclusion (**1.**) does not apply to a share-the-expense car pool.

    **2.**  Loss to **your covered auto** or any **non-owned auto** while employed in the pickup or delivery of newspapers or magazines, food or any products for the purpose of compensation. This exclusion does not apply to delivery that is incidental to an **insured's business**.

    **3.**  Damage due and confined to:

        **a.**  wear and tear;

        **b.**  freezing;

        **c.**  mechanical or electrical breakdown or failure; or

        **d.**  road damage to tires.

        This exclusion (**3.**) does not apply if the damage results from the total theft of **your covered auto** or any **non-owned auto**.

    **4.**  Loss due to or as a consequence of:

        **a.**  discharge of any nuclear weapon (even if accidental);

        **b.**  war (declared or undeclared);

        **c.**  civil war;

        **d.**  insurrection; or

        **e.**  rebellion or revolution.

    **5.**  Loss from or as a consequence of the following, whether controlled or uncontrolled or however caused:

        **a.**  nuclear reaction;

        **b.**  radiation; or

        **c.**  radioactive contamination.

    **6.**  Loss to:

        **a.**  any electronic equipment designed for the production or reproduction of sound, pictures, audio, visual or data or that receives or transmits sound, pictures or data signals.

        **b.**  This exclusion (**6.**) does not apply to:

            **(1)**  equipment designed for the reproduction of sound or transmission of sound, pictures, audio, visual or data signals and accessories used with such equipment, provided:

               **(a)**  the electronic equipment is permanently installed by the original vehicle manufacturer or manufacturer's dealership in **your covered auto** or any **non-owned auto**; or

               **(b)**  the electronic equipment is:

                   **i.**  removable from a housing unit which is permanently installed by the original vehicle manufacturer or manufacturer's dealership in the auto;

*** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ***

      **ii.**  designed to be solely operated by use of the power from the auto's electrical system; and

      **iii.**  in or upon **your covered auto** or any **non-owned auto**;

      at the time of loss.

  **(c)**  any equipment installed through our Teen Safe Driver™ program.

  However, we will pay only up to a total of $500 or the actual cash value of **your covered auto** or any **non-owned auto**, whichever is less, for all such equipment that is not installed by the original vehicle manufacturer or manufacturer's dealership.

**(2)**  any other electronic equipment that is:

  **(a)**  necessary for the normal operation of the auto or the monitoring of the auto's operating systems;

  **(b)**  an integral part of the same unit housing any electronic equipment described in **7.a.** and permanently installed by the original vehicle manufacturer or manufacturer's dealership in **your covered auto** or any **non-owned auto**.

**7.**  Loss to:

  **a.**  tapes, records, discs, or other media used with such equipment described in exclusion **(6.)**; or

  **b.**  any other accessories, not permanently installed used with such equipment described in exclusion **(6.)**.

**8.**  Loss to **your covered auto** or any **non-owned auto** due to destruction or confiscation by governmental or civil authorities because you or any **family member**:

  **a.**  engaged in illegal activities; or

  **b.**  failed to comply with Environmental Protection Agency or Department of Transportation standards.

  This exclusion **(8.)** does not apply to the interests of Loss Payees in **your covered auto**.

**9.**  Loss to a **camper body**, motorhome or **trailer** you own which is not shown in the Declarations. This exclusion **(9.)** does not apply to a **camper body**, motorhome or **trailer** you:

  **a.**  acquire during the policy period; and

  **b.**  ask us to insure during the policy period or within 30 days after you become the owner, whichever is greater.

**10.**  Loss to any **non-owned auto** when used by you or any **family member** without the express or implied permission of the owner or other person having lawful possession.

**11.**  Loss to equipment, whether operational or not, whose design may be used for the detection or location of law enforcement equipment.

**12.**  Loss to any **non-owned auto** being maintained or used by any person while employed or otherwise engaged in the **business** of:

  **a.**  selling;

  **b.**  repairing;

  **c.**  servicing;

  **d.**  storing; or

  **e.**  parking;

  vehicles designed for use on public highways. This includes road testing and delivery.

**13.**  Loss to any **non-owned auto** being maintained or used by any person while employed or otherwise engaged in any **business** not described in exclusion **2.** This exclusion **(13.)** does not apply to the maintenance or use by you or any **family member** of a **non-owned auto** which is a private passenger auto or **trailer**.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

14. Loss to **your covered auto** or any **non-owned auto** operated by an **insured** while it is:

    a. located inside a facility designed for racing, for the purpose of preparing for, practicing for, used in, or competing in any prearranged or organized:

        **(1)** race activity; or

        **(2)** speed, performance, stunt, or demolition contest or exhibition; or

    b. participating in a high performance driving or racing instruction course or school.

    This exclusion does not apply to an organized and controlled event that is not a speed, performance, stunt or demolition event.

15. Loss to, or loss of use of, a **non-owned auto** rented by:

    a. you; or

    b. any **family member**;

    if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that **family member**, pursuant to the provisions of any applicable rental agreement or state law.

16. Loss to **your covered auto** or any **non-owned auto**, arising out of the actual presence, growth, proliferation or spread of **fungi**, dry rot or bacteria.

17. Loss to **your covered auto**, **non-owned auto**, or **trailer**, for **diminution in value**.

18. Loss in excess of $500 per claim or the actual cash value of **your covered auto** or any **non-owned auto**, whichever is less, for any furnishings or equipment that were not installed by the original vehicle manufacturer or manufacturer's dealership which mechanically or structurally changes your vehicle and results in increase in performance or change in appearance, including but not limited to:

    a. custom murals, paintings or other decals or graphics;

    b. custom wheels, tachometers, pressure and temperature gauges;

    c. modified or custom engines and fuel systems, light bars, racing slicks and/or oversized tires, roll bars and lift kits, winches, utility boxes, and tool boxes; or

    d. non-standard paint.

    This exclusion does not apply to equipment installed to make a vehicle handicap accessible.

19. Loss arising out of the use of **your covered auto** while leased or rented to others.

20. Loss to **your covered auto** or a **non-owned auto** caused by an intentional act by you or a **family member**, or at the direction of you or a **family member**.

**LIMIT OF LIABILITY**

**A.** At our option, our limit of liability for loss will be the lowest of:

    1. The actual cash value of the stolen or damaged property;

    2. a. The amount necessary to repair or replace the property with other property of like kind and quality.

       b. Determination of the cost of repair or replacement will be based upon one of the following:

          **(1)** the cost of repair or replacement agreed upon by you and us;

          **(2)** an estimate written based upon the prevailing competitive price. You agree with us that we may include in the estimate parts furnished by the original vehicle manufacturer or parts from other sources including non-original equipment manufacturers. The prevailing competitive price means prices charged by a majority of the repair market in the area where the vehicle is to be repaired as determined by us; or

    3. The limit of liability shown in the Declarations.

    However, the most we will pay for loss to any **non-owned auto**, which is a **trailer**, is $1,500.

**B.** An adjustment for depreciation and physical condition may be made based upon the physical condition and wear and tear of the property or damaged part of the property at the time of the loss. This adjustment for physical condition includes but is not limited to, broken, cracked or missing parts, rust, dents, scrapes,

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

gouges and paint condition. When replacing parts normally subject to repair or replacement during the useful life of the vehicle, we will not pay for the amount of any betterment.

**PAYMENT OF LOSS**

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or

2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

**NO BENEFIT TO BAILEE**

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

**OTHER SOURCES OF RECOVERY**

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a **non-owned auto** shall be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the **non-owned auto**;

2. Any other applicable physical damage insurance;

3. Any other source of recovery applicable to the loss.

**APPRAISAL**

A. If we and you do not agree on the amount of loss, either may request an appraisal of the loss. Both parties must agree to the appraisal. Upon notice of request for an appraisal, the opposing party may, prior to appraisal, request mediation of the dispute in accordance with the Mediation provision. The mediation must be completed before a request for appraisal can be made.

B. In the event of an appraisal, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

C. We do not waive any of our rights under this policy by agreeing to an appraisal.

## PART E — DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. Any person or organization making claim or seeking payment must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit. This includes but is not limited to recorded interviews at a reasonable location, while not in the presence of any other person or establishment making a claim or claiming benefits. The recorded interview may be recorded by audio, video, court reporter or any combination thereof.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

SA-2890/FLEP R1 3/15

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

3. Submit, as often as we reasonably require to physical or mental examinations by physicians we select. We will pay for these exams. If that person unreasonably refuses to submit to an exam, we will not be liable for subsequent **medical benefits**.

4. Authorize us to obtain medical reports and other pertinent records.

C. We may require any person including an omnibus **insured** making a claim with us to also:

1. Submit a proof of loss, under oath if requested, when required by us;

2. Submit to examinations under oath, as often as reasonably needed, and subscribe the same. The scope of questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information. The examination under oath may be recorded by audio, video, court reporter or any combination thereof. We may examine any **insured** separately and apart from the presence of any other **insured**.

3. Submit to interviews and recorded statements without the need for us to conduct and examination under oath. The recorded interview may be recorded by audio, video or court reporter or any combination thereof.

Compliance with these requirements is a condition precedent to filing suit under the policy.

D. A person seeking Personal Injury Protection Coverage must:

1. Promptly forward to us a copy of the:

    a. summons and complaint; or

    b. other process;

served in connection with any legal action that the **insured** takes against a third party to recover damages for **bodily injury**.

2. Promptly give us written proof of claim, under oath if required. Such proof shall include:

    a. full details of the nature and extent of the injuries and treatment received and contemplated; and

    b. any other information which may assist us in determining the amount due and payable.

3. Submit as often as we reasonably require to mental or physical exams. We will:

    a. pay for these exams; and

    b. forward a copy of the medical report to that person if requested.

If that person unreasonably refuses to submit to an exam, we will not be liable for subsequent personal injury protection benefits. An **insured's** refusal to submit to or failure to appear at two examinations raises a rebuttable presumption that the **insured's** refusal or failure was unreasonable.

E. A person seeking Uninsured/Underinsured Motorists Coverage must also:

1. Report the accident to the police or other civil authority within twenty-four (24) hours or as soon as practicable if a hit-and-run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought.

F. A person seeking Coverage for Damage to Your Auto must also:

1. Take reasonable steps after loss to protect **your covered auto** or any **non-owned auto** and its equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if **your covered auto** or any **non-owned auto** is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

## PART F — GENERAL PROVISIONS

### POLICY PERIOD AND TERRITORY

**A.** This policy applies only to accidents and losses which occur:

    **1.** During the policy period as shown in the Declarations; and

    **2.** Within the policy territory.

**B.** The policy period is the period stated in the Declarations. The policy may be renewed for successive policy periods if the required premium is paid and accepted by us on or before the expiration of the current policy period. The premium will be computed at our then current rate for coverage then offered.

**C.** The policy territory is:

    **1.** The United States of America, its territories or possessions;

    **2.** Puerto Rico; or

    **3.** Canada.

    This policy also applies to loss to, or accidents involving, **your covered auto** while being transported between their ports.

### BANKRUPTCY

Bankruptcy or insolvency of the **insured** shall not relieve us of any obligations under this policy.

### CHANGES

**A.** This policy, your Declarations page and endorsements issued by us to this policy contain all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

**B.** The premium for this policy is based on information we have received from you or other sources. You agree to cooperate with us in determining if this information is correct and complete and you will notify us if it changes. If this information is incorrect, incomplete, or changes, we may adjust your premium during the policy term or take other appropriate action based upon the corrected, completed or changed information. Changes during the policy term that may result in a premium increase or decrease during the policy term include, but are not limited to, changes in:

    **1.** The number, type or use classification of insured vehicles.

    **2.** Operators using insured vehicles including newly licensed **family member** drivers and any household members that have licenses.

    **3.** The location where your vehicle is principally garaged.

    **4.** Customized equipment or parts.

    You also agree to disclose all licensed drivers residing in your household.

**C.** If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (**C.**) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

    **1.** A subsequent edition of your policy; or

    **2.** An Amendatory Endorsement.

### PAYMENT OF PREMIUM

If your initial premium payment is by check, draft or any remittance other than cash, coverage under this policy is conditioned upon the check, draft or remittance being honored upon presentment to the bank or other financial institution. If the check, draft or remittance is not honored upon presentment, this policy may, at our option, be deemed void from its inception. This means that we will not be liable under this policy for any claims or damages which would otherwise be covered if the check, draft, or remittance had been honored upon presentment.

SA-2890/FLEP R1 3/15

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

This provision does not apply if the non-payment is cured within the earlier of 5 days after actual notice by certified mail is received by the applicant or 15 days after notice is sent to the applicant by certified mail or registered mail. If the contract is void, any premium received shall be refunded in full.

## FRAUD

This policy was issued in reliance upon the information provided on your application. We may void this policy if you or an **insured** concealed or misrepresented any material fact or circumstance; or engaged in fraudulent conduct related to this insurance, at the time application was made or any time during the policy period.

We may void this policy or deny coverage for an accident or loss if you or an **insured** have concealed or misrepresented any material fact or circumstance; or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim. This paragraph does not apply to Personal Injury Protection Coverage.

## LEGAL ACTION AGAINST US

**A.** No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part **A** — Liability Coverage, no legal action may be brought against us until:

    **1.** We agree in writing that the **insured** has a legal obligation to pay damages; or

    **2.** The amount of that obligation has been finally determined by judgment after trial.

**B.** No person or organization has any right under this policy to bring us into any action to determine the legal liability of an **insured**.

## OUR RIGHT TO RECOVER PAYMENT

**A.** If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another person, entity or organization we shall be subrogated to that right. That person shall:

    **1.** Do whatever is necessary to enable us to exercise our rights; and

    **2.** Do nothing after loss to prejudice them.

However, our rights in this paragraph **(A.)** do not apply under Part **D** — Coverage for Damage to Your Auto, against any person using **your covered auto** with your express or implied permission or other person having lawful possession.

We shall not use that right if the person against whom it may be asserted is an **insured** under Part **A** — Liability Coverage of this policy.

Our rights do not apply under paragraph **A.** above with respect to coverage under section **2.** of the definition of **uninsured motor vehicle** if we:

    **1.** Have been given prompt written notice of a tentative settlement between an **insured** and the insurer of an **uninsured motor vehicle**; and

    **2.** Fail to advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification:

    **1.** That payment will be separate from any amount the **insured** is entitled to recover under the provisions of Uninsured Motorists Coverage; and

    **2.** We also have a right to recover advance payment.

**B.** If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

    **1.** Hold in trust for us the proceeds of the recovery; and

    **2.** Reimburse us to the extent of our payment.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

## TERMINATION

**A.  Cancellation.**

This policy may be canceled during the policy period as follows:

**1.**  The named insured shown in the Declarations may cancel by:

  **a.**  returning this policy to us; or

  **b.**  giving us advance written or verbal notice of the date cancellation is to take effect. We may waive the requirement the notice be in writing by confirming the date and time of cancellation to you in writing.

**2.**  The named insured:

  **a.**  may not cancel this policy, if this policy provides Personal Injury Protection or Liability Coverage, or both, during the first 60 days immediately following the date of issuance or renewal unless:

   **(1)**  **your covered auto** has been totally destroyed so that it is no longer operable on the roads of Florida; or

   **(2)**  the named insured transfers ownership of **your covered auto**; or

   **(3)**  the named insured obtains other insurance on **your covered autos**; or

   **(4)**  the named insured is a member of the United States Armed Forces and is called to or on active duty outside the United States in an emergency situation.

  **b.**  may cancel for any reason after this policy is in effect for 60 days.

**3.**  If this is a new policy, during the first 60 days following the effective date of the policy:

  **a.**  We may not cancel for nonpayment of premium unless a check used to pay us is dishonored for any reason or any other type of premium payment is subsequently determined to be rejected or invalid; and

  **b.**  We may cancel for any other underwriting reason allowable by law, unless one of the following conditions exists:

   **(1)**  if you or a member of your family is renewing or replacing a policy or a binder for such policy written by us in any of our writing companies; or

   **(2)**  if you pay all policy payments pursuant to a payroll deduction plan or to an automatic electronic funds transfer payment plan.

  **c.**  the lawful use, possession, or ownership of a firearm or ammunition by an insured or a household member of an insured.

**4.**  After this policy is in effect for 60 days, or if this is a renewal policy, we will cancel only:

  **a.**  for nonpayment of premium; or

  **b.**  if your driver's license or that of:

   **(1)**  any driver who lives with you; or

   **(2)**  any driver who customarily uses **your covered auto**;

   has been suspended or revoked. This must have occurred during:

   **(1)**  the policy period; or

   **(2)**  the 180 days immediately preceding the original effective date of the policy; or

  **c.**  if the policy was obtained through material misrepresentation or fraud.

**5.**  Except as provided in Section **6.**, we may cancel by mailing by registered or certified mail or United States Post Office proof of mailing to the first-named insured shown in the Declarations at the address shown in the policy:

  **a.**  at least 10 days notice if cancellation is for nonpayment of premium; or

  **b.**  at least 45 days notice in all other cases.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

6. In the event we determine that you have been charged an incorrect premium for coverage requested in your application for insurance, we shall immediately mail you notice of any additional premium due us. If within 15 days of the notice of additional premium due (or a longer time period as specified in the notice), you fail to either:

   a. pay the additional premium and maintain this policy in full force under its original terms; or

   b. cancel this policy and demand a refund of any unearned premium;

   then this policy shall be canceled effective 15 days from the date of the notice (or a longer time period as specified in the notice).

**B. Nonrenewal.**

If we decide not to renew or continue this policy, we will mail notice to the first-named insured shown in the Declarations at the address shown in this policy at least 45 days before the end of the policy period. Notice will be mailed by registered or certified mail or United States Post Office proof of mailing. Subject to this notice requirement, if the policy period is:

1. Less than 6 months, we will have the right not to renew or continue this policy every 6 months, beginning 6 months after its original effective date.

2. 6 months or longer, but less than one year, we will have the right not to renew or continue this policy at the end of the policy period.

3. 1 year or longer, we will have the right not to renew or continue this policy at each anniversary of its original effective date.

We will not refuse to renew or continue this policy solely because:

1. You were convicted of one or more traffic violations which did not involve an accident or cause revocation or suspension of your driving privilege unless you have been convicted of, or plead guilty to:

   a. two such traffic violations within an 18 month period;

   b. three or more such traffic violations within a 36 month period; or

   c. exceeding the lawful speed limit by more than 15 miles per hour; or

2. You have had an accident. However, we may refuse to renew or continue this policy if, at the time of nonrenewal, you have had two or more at-fault accidents, or three or more accidents regardless of fault, within the current 3-year period.

3. Of the lawful use, possession, or ownership of a firearm or ammunition by an insured or household member of an insured.

**C. Automatic Termination.** If we offer to renew and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal premium when due shall mean that you have not accepted our offer.

Coverage for **your covered auto** shall automatically terminate on the effective date of any other motor vehicle insurance policy covering that vehicle.

**D. Other Termination Provisions.**

1. If the law in effect in your state at the time this policy is issued or renewed:

   a. requires a longer notice period;

   b. requires a special form of or procedure for giving notice; or

   c. modifies any of the stated termination reasons;

   we will comply with those requirements.

2. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

3. If this policy is canceled, you may be entitled to a premium refund. If so, we will send you the refund. If you cancel the policy, we will mail any premium refund, if any, within 30 days after the effective date of the cancellation or receipt of notice of cancellation, whichever is greater. If we cancel the policy, we will mail the premium refund, if any, within 15 days after the effective date of the cancellation. The premium

SA-2890/FLEP R1 3/15                                             - 31 -

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

4. The effective date of cancellation stated in the notice shall become the end of the policy period.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

**1.** The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

**2.** The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use **your covered auto**.

**B.** Coverage will only be provided until the end of the policy period.

## TWO OR MORE AUTOS INSURED; TWO OR MORE AUTO POLICIES

If this policy insures two or more autos or if any other auto insurance policy issued to you by us applies to the same accident, the maximum limit of our liability shall not exceed the highest limit applicable to any one auto. In no event shall the limit of liability of two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available to you or any **insured**.

This provision does not apply to Uninsured Motorists Coverage to you, any **family member** or any other rated driver listed on the Declarations if you have purchased Uninsured Motorists Coverage — Stacked Option.

## LOSS PAYABLE CLAUSE

As to the interest of the loss payee, this policy will remain in effect from the inception date and until ten days after proof of mailing that the cancellation notice has been mailed to the loss payee. When we pay the loss payee we shall, to the extent of payment, have the loss payee's rights of recovery.

## MEDIATION

In any claim filed with us for:

**1.** Loss resulting from **bodily injury** in any amount of $10,000 or less;

**2.** **Property damage**; or

**3.** Loss to **your covered auto** or any **non-owned auto**;

either party may demand mediation of the claim, prior to taking legal action, by filing a written request with the Department of Financial Services on a form which may be obtained from the Department. The request must state:

**1.** Why mediation is being requested; and

**2.** The issues in dispute which are to be mediated.

Only one mediation may be requested for each claim, unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

The Department shall randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time and place of the mediation conference, which will be held within 45 days of the request for mediation, the conference may be held by telephone, if feasible.

The mediation shall be conducted as an informal process and formal rules of evidence and procedure need not be observed. Participants must:

**1.** Have authority to make a binding decision; and

**2.** Mediate in good faith.

Costs of the mediation shall be shared equally by both parties unless the mediator determines that one party has not mediated in good faith.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS. ****

**STORAGE COSTS**

If you give us your consent, we may move the damaged property, at our expense, to reduce storage costs during the claims process. If you do not give us your consent, we will pay only the storage costs which would have resulted if we had moved the damaged property.

## ADDITIONAL COVERAGES

**AGREEMENT: WE WILL PROVIDE THE INSURANCE DESCRIBED IN EACH OF THE FOLLOWING ADDITIONAL COVERAGES ONLY IF INDICATED IN THE DECLARATIONS.**

**UNINSURED MOTORISTS COVERAGE — NON-STACKED OPTION**

If UNINSURED MOTORISTS COVERAGE NON-STACKED OPTION is chosen, PART C — UNINSURED MOTORISTS COVERAGE — STACKED is replaced by the following:

**INSURING AGREEMENT**

**A.** We will pay damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury**:

   **1.** Sustained by an **insured**; and.

   **2.** Caused by an accident.

   The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle**.

   Any judgment for damages arising out of suit brought without our written consent is not binding on us.

**B.** **"Insured"** as used in this Uninsured Motorists Coverage means:

   **1.** You or any **family member**.

   **2.** Any Rated Driver shown on the Declarations other than you or a **family member**.

   **3.** Any other person **occupying your covered auto** with your express or implied permission.

   **4.** Any person entitled to recover damages because of **bodily injury** to which this coverage applies sustained by a person described in **B.1.**, **B.2.** or **B.3.** above.

**C.** **"Uninsured motor vehicle"** means a land motor vehicle or **trailer** of any type:

   **1.** To which no bodily injury liability bond or policy applies at the time of the accident.

   **2.** To which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for **bodily injury** under that bond or policy to an **insured** is not enough to pay the full amount the **insured** is legally entitled to recover as damages.

   **3.** Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in **bodily injury** without hitting:

      **a.** you, any **family member** or any other rated driver listed on the Declarations;

      **b.** a vehicle which you, any **family member** or any other rated driver listed on the Declarations are **occupying**; or

      **c.** **your covered auto.**

   If there is no physical contact with the hit-and-run vehicle the facts of the accident must be proved. We will only accept competent evidence other than the testimony of a person making claims under this or any similar coverage.

   **4.** To which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company:

      **a.** denies coverage; or

      **b.** is or becomes insolvent.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

However, **"uninsured motor vehicle"** does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any **family member** unless it is a **your covered auto** to which Part **A** of the policy applies and liability coverage is excluded for any person other than you or any **family member** for damages sustained in the accident by you or any **family member**.

2. Operated on rails or crawler treads.

3. Designed mainly for use off public roads while not upon public roads.

4. While located for use as a residence or premises.

## EXCLUSIONS

**A.** We do not provide Uninsured Motorists Coverage for **bodily injury** sustained:

1. By an **insured** while **occupying** any motor vehicle owned by that **insured** which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. By any **family member** while **occupying** any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

**B.** We do not provide Uninsured Motorists Coverage for **bodily injury** sustained by any **insured**:

1. If that **insured** or the legal representative settles the **bodily injury** claim without our consent. However, this exclusion (**B.1.**) does not apply:

   **a.** if such settlement does not prejudice our right to recover payment; or

   **b.** to a settlement made with the insurer of a vehicle described in section **2.** of the definition of **uninsured motor vehicle**.

2. While **occupying your covered auto** when it is being used as a public or livery conveyance. This exclusion (**B.2.**) does not apply to a share-the-expense car pool.

3. While using any vehicle while employed in the pickup or delivery of newspapers or magazines, food or any products for the purpose of compensation. This exclusion does not apply to delivery that is incidental to an **insured's business**.

4. While using a vehicle without the express or implied permission of the owner or other person having lawful possession. However, this exclusion does not apply to you, any **family member** or any other rated driver listed on the Declarations using **your covered auto**.

5. While **occupying** or operating a motorcycle or moped owned by you, any **family member** or any other rated driver listed on the Declarations, for which uninsured motorists coverage has not been purchased on your motorcycle or moped policy.

6. While using any vehicle while it is:

   **a.** located inside a facility designed for racing, for the purpose of preparing for, practicing for, used in, or competing in any prearranged or organized:

      **(1)** race activity; or

      **(2)** speed, performance, stunt, or demolition contest or exhibition; or

   **b.** participating in a high performance driving or racing instruction course or school.

   This exclusion does not apply to an organized and controlled event that is not a speed, performance, stunt or demolition event.

7. With respect to damages for pain, suffering, mental anguish or inconvenience unless the **bodily injury** consists in whole or in part of:

   **a.** significant and permanent loss of an important bodily function;

   **b.** permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement;

   **c.** significant and permanent scarring or disfigurement; or

   **d.** death.

SA-2890/FLEP R1 3/15         - 34 -

*** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ***

**C.** This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

    **1.** Workers compensation law; or

    **2.** Disability benefits law.

**D.** We do not provide Uninsured Motorists Coverage for **punitive or exemplary damages**.

**LIMIT OF LIABILITY**

**A.** When the **insured** is **occupying your covered auto** at the time of the accident:

    **1.** The limit of liability for Uninsured Motorists Coverage stated in the Declarations for "each person" applicable to that **your covered auto** is our maximum limit of liability for all damages, including damages for care and loss of services (including loss of consortium and wrongful death), arising out of **bodily injury** sustained by any one person in that accident; and

    **2.** Subject to this limit for "each person", the limit of liability for Uninsured Motorists Coverage stated in the Declarations for "each accident" applicable to that **your covered auto** is our maximum limit of liability for all damages for **bodily injury** resulting from that accident.

**B.** When the **insured** is not **occupying your covered auto** at the time of the accident:

    **1.** The highest limit of liability for Uninsured Motorists Coverage stated in the Declarations for "each person" applicable to any of **your covered autos** is our maximum limit of liability for all damages, including damages for care and loss of services (including loss of consortium and wrongful death), arising out of **bodily injury** sustained by any one person in that accident; and

    **2.** Subject to this limit for "each person," the highest limit of liability for Uninsured Motorists Coverage stated in the Declarations for "each accident" applicable to any of **your covered autos** is our maximum limit of liability for all damages for **bodily injury** resulting from that accident.

This is the most we will pay regardless of the number of:

    **1.** **Insureds**;

    **2.** Claims made;

    **3.** Vehicles or premiums shown in the Declarations; or

    **4.** Vehicles involved in the accident.

**C.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

    **1.** Part **A** — Liability Coverage of this policy;

    **2.** No-fault coverage; or

    **3.** Automobile medical payments coverage.

**D.** We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

**E.** We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

    **1.** Workers compensation law; or

    **2.** Disability benefits.

**F.** With respect to coverage under Paragraph **2.** of the definition of **uninsured motor vehicle**, we will reduce the **insured's** total damages by any amount available to that **insured**, under any bodily injury liability bonds or policies applicable to the **uninsured motor vehicles**, that such **insured** did not recover as a result of a settlement between that **insured** and the insurer of an **uninsured motor vehicle**. However, any reduction of the **insured's** total damages will not reduce the limit of liability for this coverage.

This Paragraph **(F.)** shall not apply if we advance payment to the **insured** in an amount equal to the tentative settlement with the insurer of the **uninsured motor vehicle**.

**G.** A vehicle and attached **trailer** are considered one vehicle. Therefore the limits of liability will not be increased for an accident involving a vehicle which has an attached **trailer**.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

H.   If Combined Single Limit Uninsured Motorists Coverage applies, Paragraphs **A.** and **B.** of the Limit of Liability Provision for Uninsured Motorists Coverage is replaced by the following:

The limit of liability shown in the Declarations for this coverage applicable to the **your covered auto** involved in the accident is our maximum limit of liability for all damages for **bodily injury** resulting from that accident. If there is no **your covered auto** involved in the accident, then our maximum limit of liability for all damages for **bodily injury** resulting from that accident will be the highest limits of liability shown in the Declarations for this coverage applicable to any one **your covered auto**. This is the most we will pay regardless of the number of:

**1.**   **Insureds**;

**2.**   Claims made;

**3.**   Vehicles or premiums shown in the Declarations; or

**4.**   Vehicles involved in the accident.

## OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Uninsured Motorists Coverage:

**1.**   Any recovery for damages sustained by you, any **family member** or any other rated driver listed on the Declarations:

   **a.**   while **occupying** a vehicle owned by you, any **family member** or any other rated driver listed on the Declarations may equal, but not exceed, the limit of liability for Uninsured Motorists Coverage applicable to that vehicle;

   **b.**   while **occupying** a vehicle not owned by you, any **family member** or any other rated driver listed on the Declarations may equal, but not exceed, the sum of:

      **(1)**   the limit of liability for Uninsured Motorists Coverage applicable to the vehicle you, any **family member** or any other rated driver listed on the Declarations were **occupying** at the time of the accident; and

      **(2)**   the highest limit of liability for Uninsured Motorists Coverage applicable to any one vehicle under any one policy affording coverage to you, any **family member** or any other rated driver listed on the Declarations;

   **c.**   if at the time of the accident the injured person is not **occupying** a motor vehicle, he is entitled to select any one limit of uninsured motorist coverage for any one vehicle afforded by a policy under which he is insured as a named insured or as an insured resident of the named insured's household.

**2.**   Any insurance we provide with respect to a vehicle you do not own will be excess over any other collectible insurance.

**3.**   We will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

## ARBITRATION

**A.**   If we and an **insured** do not agree:

**1.**   Whether that **insured** is legally entitled to recover damages; or

**2.**   As to the amount of damages which are recoverable by that **insured**;

from the owner or operator of an **uninsured motor vehicle**, then the matter may be:

**1.**   Mediated, in accordance with the Mediation provision contained in Part **F** — General Provisions of the policy, if the damages resulting from **bodily injury** are for $10,000 or less; or

**2.**   Arbitrated. However, disputes concerning coverage under this Uninsured Motorists Coverage may not be arbitrated.

If either party demands mediation, the mediation must be completed before arbitration can occur.

**** REPRINTED FROM THE ARCHIVE.  THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

B.   Both parties must agree to arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

   Each party will:

   **1.**   Pay the expenses it incurs; and

   **2.**   Bear the expenses of the third arbitrator equally.

C.   Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

   **1.**   Whether the **insured** is legally entitled to recover damages; and

   **2.**   The amount of damages.

## FLORIDA ARBITRATION CODE

If we and an **insured** agree to arbitration, the Florida Arbitration Code will not apply.

## ADDITIONAL DUTIES

A person seeking Uninsured Motorists Coverage under section **2.** of the definition of **uninsured motor vehicle** must also promptly:

   **1.**   Send us copies of the legal papers if a suit is brought; and

   **2.**   Notify us in writing by certified or registered mail of a tentative settlement between the **insured** and the insurer of the **uninsured motor vehicle** and allow us 30 days to advance payment to that **insured** in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such **uninsured motor vehicle**.

---

## EXTENDED PERSONAL INJURY PROTECTION COVERAGE

## INSURING AGREEMENT

If the Declarations indicates that Extended Personal Injury Protection applies. Extended Personal Injury Protection Coverage replaces the Personal Injury Protection Coverage in the policy.

A.   We will pay in accordance with the Florida Motor Vehicle No-Fault Law as amended, extended personal injury protection benefits to or for an **insured** who sustains **bodily injury**. The **bodily injury** must be caused by an accident arising out of the ownership, maintenance or use of a **motor vehicle** and sustained by:

   **1.**   You or any **family member** while **occupying** a **motor vehicle** or, while a **pedestrian**, through being struck by a **motor vehicle**.

   **2.**   Any other person while **occupying your covered auto** or, while a **pedestrian**, through being struck by **your covered auto**.

B.   Extended personal injury protection benefits consist of:

   **1.**   **Medical Benefits.** Reasonable expenses as listed in the schedule under the Florida Motor Vehicle No-Fault Law, § 627.736(5)(a) for **medically necessary** medical, surgical, X-ray, dental, and rehabilitative services including prosthetic devices, and medically necessary ambulance, hospital, and nursing services if the individual receives initial services and care within 14 days after the motor vehicle accident. The **medical benefits** provide reimbursement only for:

      **a.**   Initial services and care that are lawfully provided, supervised, ordered or prescribed by a physician, osteopathic physician, chiropractic physician or dentist licensed under Florida statutes or that are provided in a facility that owns, or is wholly owned by, a hospital. Initial services and care may also be provided by a person or entity licensed under Florida statutes which provides emergency transportation and treatment.

      **b.**   Upon referral by a provider described in **1.a.** above, follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to **1.a.** above which may be provided, supervised, ordered, or prescribed only by a physician, osteopathic physician, chiropractic physician or dentist

licensed under Florida statutes to the extent permitted by applicable law and under the supervision of such physician, osteopathic physician, chiropractic physician, or dentist, by a physician assistant or advanced registered nurse practitioner licensed under Florida statutes. Follow-up services and care may also be provided by any of the following persons or entities:

**(1)** a hospital or ambulatory surgical center licensed under Florida statutes.

**(2)** an entity wholly owned by one or more physicians, osteopathic physician, chiropractic physicians or dentists licensed under Florida statutes or by such practitioners and the spouse, parent, child, or sibling of such practitioners.

**(3)** an entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals.

**(4)** a physical therapist licensed under Florida statutes based upon a referral by a provider described in this **1.b.** provision.

**(5)** A health care clinic licensed under the Florida Health Care Clinic Act:

> **(a)** Which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc.; or

> **(b)** Which:

>> **(i)** Has a licensed medical director;

>> **(ii)** Has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

>> **(iii)** Provides at least four of the following medical specialties:

>>> **i.** General medicine;

>>> **ii.** Radiography;

>>> **iii.** Orthopedic medicine;

>>> **iv.** Physical medicine;

>>> **v.** Physical therapy;

>>> **vi.** Physical rehabilitation;

>>> **vii.** Prescribing or dispensing outpatient prescription medication; or

>>> **viii.** Laboratory services;

>> as authorized under the Florida Motor Vehicle No-Fault Law.

**c.** reimbursement for services and care provided in **1.a.** or **1.b.** above, up to $10,000 if a physician, dentist, physician assistant or an advanced registered nurse practitioner licensed under Florida statutes has determined that the injured person had an **emergency medical condition**.

**d.** reimbursement for services and care provided in **1.a.** or **1.b.** above is limited to $2,500 if a provider listed in this paragraph **1.a.** or **1.b.** determines that the injured person did not have an **emergency medical condition**.

**e.** **medical benefits** do not include massage as defined in Florida statutes, § 480.033 or acupuncture as defined in Florida statutes, § 457.102, regardless of the person, entity, or licensee providing massage or acupuncture, and a licensed massage therapist or licensed acupuncturist may not be reimbursed for **medical benefits** under this section.

**Medical benefits** are reimbursed up to 100% for you or a **family member** or 80% of the schedule of maximum charges listed in the Florida Motor Vehicle No-Fault Law § 627.736(5)(a), Florida Statutes for such services and care that are lawfully provided for **insureds** other than you or any **family member**, supervised, ordered or prescribed by a healthcare provider or facility authorized under Florida's Motor Vehicle No-Fault Law as amended.

**** REPRINTED FROM THE ARCHIVE.  THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS  ****

We will pay:

   **a.**    100% of **medical benefits** incurred by you or any **family member**; and

   **b.**    80% of **medical benefits** incurred by any other **insured**;

due to **bodily injury**.

**2.**    **Work loss.** With respect to the period of disability of an **insured**, for any loss of gross income and earning capacity from that **insured's** inability to work due to **bodily injury**. However, **work loss** does not include any loss after an **insured's** death.

We will pay:

   **a.**    80% of **work loss** to or for you or any **family member**.

   **b.**    60% of **work loss** to or for any other **insured**.

**3.**    **Replacement Services.** With respect to the period of disability of an **insured**, all expenses reasonably incurred in obtaining ordinary and necessary services from others instead of those that the **insured** would have performed, without income, for the benefit of the **insured's** household had the **insured** not sustained **bodily injury**.

**4.**    **Accidental Death.** A death benefit.

**C.**    **DEFINITIONS APPLICABLE TO THIS COVERAGE**

   **1.**    For purposes of Extended Personal Injury Protection Coverage, a **motor vehicle** shall be deemed to be owned by a person if that person:

      **a.**    holds the legal title to such vehicle.

      **b.**    is a debtor having the right to possession, if such vehicle is the subject of a security agreement.

      **c.**    is a lessee having the right to possession, if such vehicle is the subject of a lease which:

         **(1)**    has an option to purchase; and

         **(2)**    is for a period of at least 6 months.

      **d.**    is a lessee having the right to possession, if such vehicle is the subject of a lease which:

         **(1)**    does not have an option to purchase;

         **(2)**    is for a period of at least 6 months; and

         **(3)**    requires the lessee to secure insurance.

   **2.**    **"Emergency medical condition"** in this coverage means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

      **a.**    serious jeopardy to patient health.

      **b.**    serious impairment to bodily functions.

      **c.**    serious dysfunction of any body organ or part.

   **3.**    **"Insured"** means:

      **a.**    you or any **family member** while:

         **(1)**    **occupying**; or

         **(2)**    a **pedestrian** struck by;

      a **motor vehicle**.

      **b.**    any other person while:

         **(1)**    **occupying**; or

         **(2)**    a **pedestrian** struck by;

      **your covered auto**.

4. **"Medically necessary"** refers to a medical service or supply that a prudent physician would provide for the purpose of prevention, diagnosing or treating an illness, injury, disease or symptom in a manner that is:

    a. in accordance with the generally accepted standards of medical practice;

    b. clinically appropriate in terms of type, frequency, extent, site and duration; and

    c. not primarily for the convenience of the patient, physician or other health care provider.

5. **"Motor vehicle"** means:

    a. any self-propelled vehicle with four or more wheels which is:

        (1) designed; and

        (2) required to be licensed;

        for use on Florida highways.

    b. any trailer or semitrailer designed for use with such vehicle.

However, **"motor vehicle"** does not include:

    a. any motor vehicle which is:

        (1) used in mass transit other than public school transportation;

        (2) designed to transport more than five passengers (excluding the operator); and

        (3) owned by a:

            (a) municipality;

            (b) transit authority; or

            (c) political subdivision of the state.

    b. a mobile home.

6. **"Occupying"** means:

    a. in or upon;

    b. entering into; or

    c. alighting from.

7. **"Pedestrian"** means a person who is not **occupying** a self-propelled vehicle.

8. **"Your covered auto"** means a **motor vehicle** owned by you and for which security is required to be maintained under the Florida Motor Vehicle No-Fault Law as amended, and either:

    a. a premium is charged; or

    b. it is a **trailer**, other than a mobile home, designed for use with a **motor vehicle**.

**EXCLUSIONS**

A. We do not provide Extended Personal Injury Protection Coverage for any **insured**:

1. While operating **your covered auto** without your express or implied consent.

2. If that **insured's** conduct contributed to his/her **bodily injury** under any of the following circumstances:

    a. intentionally causing **bodily injury** to himself/herself; or

    b. while committing a felony.

3. Other than you, if that **insured** owns a **motor vehicle** for which security is required under the Florida Motor Vehicle No-Fault Law as amended.

4. Other than you or any **family member**, who is entitled to personal injury protection benefits from a person who owns a **motor vehicle** which is not **your covered auto** under this policy, or from that vehicle's owner's policy.

SA-2890/FLEP R1 3/15

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

     **5.** Who sustains **bodily injury** while **occupying** a **motor vehicle** located for use as a residence or premises.

**B.** We do not provide Extended Personal Injury Protection Coverage for:

     **1.** You or any **family member** while **occupying** a **motor vehicle** which is:

          **a.** owned by you; and

          **b.** not a vehicle covered under this policy.

     **2.** Any **pedestrian**, other than you or any **family member** who is not a legal resident of Florida.

     **3.** Any person operating **your covered auto** without your express or implied consent.

## PAYMENT OF LOSS

We may pay the **insured** or any person or organization providing the medical services, supplies or care.

## LIMIT OF LIABILITY

**A.** Regardless of the number of:

     **1.** **Insureds**;

     **2.** Policies or bonds applicable;

     **3.** Vehicles involved; or

     **4.** Claims made;

the total aggregate limit of liability for all medical benefits, work loss and replacement services available, to or for each **insured** injured in any one accident, from all sources combined, including this policy shall be $10,000. Regardless of whether payments are made under the No-Fault Law or under Extended Personal Injury Protection, the $10,000 limit is the maximum payable under this Extended Personal Injury Protection Coverage.

**B.** Any amount payable under this Extended Personal Injury Protection Coverage shall be reduced by any amounts paid or payable for the same elements of loss under any workers compensation laws.

**C.** Any coverage provided under any Uninsured Motorists Coverage of this policy shall be excess over any personal injury protection benefits paid or payable.

**D.** Any amounts payable under this coverage shall be subject to Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers.

**E.** The amount of any deductible shown in the Declarations must be applied to 100 percent of the following required personal injury protection related expenses and losses:

The total amount otherwise payable under this coverage for:

     **1.** **Medical benefits**;

     **2.** **Work loss**; and

     **3.** **Replacement services**;

for each **insured** to whom the deductible applies.

Accidental death is not subject to a deductible.

**F.** Any amounts payable under this coverage for **medical benefits** shall not exceed the prescribed Schedule of Maximum Charges for such medical expenses as prescribed by the Florida Motor Vehicle No-Fault Law.

We will limit reimbursement of medical expenses to 100 percent of a properly billed reasonable charge, but in no event will we pay more than 100 percent of the following schedule of maximum charges:

     **1.** For emergency transport and treatment by providers licensed under Chapter 401, Florida Statutes, 200 percent of Medicare.

     **2.** For emergency services and care provided by a hospital licensed under Chapter 395, Florida Statutes, 75 percent of the hospital's **usual and customary charges**.

*** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ***

3. For emergency services and care as defined by § 395.002, Florida Statutes, provided in a facility licensed under Chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the **usual and customary charges** in the community.

4. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.

5. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.

6. For all other medical services, supplies, and care, 200 percent of the allowable amount under:

   a. The participating physicians fee schedule of Medicare Part B, except as provided in sub-subparagraphs II and III.

   b. Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.

   c. The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

   However, if such services, supplies, or care is not reimbursable under Medicare Part B, we will limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under § 440.13, Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation will not be reimbursed by us. However, you and any **family member** are covered for 100% of reasonable expenses.

   For purposes of the above, the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care was rendered through March 1 of the following year and for the area in which such services were rendered, except that it may not be less than the allowable amount under the participating physicians schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

G. Any death benefit payable under Extended Personal Injury Protection Coverage shall be $5,000 per person. Death benefits are in addition to the **medical benefits**, **work loss** and **replacement services** provided under the policy.

**OTHER INSURANCE**

A. No one will be entitled to receive duplicate payments for the same elements of loss under this or any other insurance. If an **insured** receives personal injury protection benefits from another insurer, that insurer shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses of processing the claim.

B. If an **insured** sustains **bodily injury** while:

   1. **Occupying**; or

   2. Struck by a **motor vehicle** rented or leased under a rental or lease agreement;

   the personal injury protection benefits afforded under the lessor's policy shall be primary.

   This provision **(B.)** does not apply if the face of the rental or lease agreement contains, in at least 10-point type, the following language:

   The valid and collectible personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of personal injury protection coverage required by § 324.021(7) and § 627.736 Florida Statutes.

**GENERAL PROVISIONS APPLICABLE TO THIS COVERAGE ONLY**

With respect to this coverage, Part **F** — General Provisions is revised as follows:

**POLICY TERRITORY**

The policy territory is:

   1. Florida.

SA-2890/FLEP R1 3/15

*** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ***

2. The United States of America, its territories or possessions or Canada.

This provision applies only to:

a. you or any **family member** while **occupying your covered auto**; or

b. you while **occupying** a **motor vehicle**:

(1) owned by any **family member**; and

(2) for which security is maintained as required by the Florida Motor Vehicle No-Fault Law as amended.

## FRAUD

We do not provide Personal Injury Protection Coverage for an **insured** if that **insured** has committed, by a material act or omission, any insurance fraud relating to Personal Injury Protection Coverage under this policy, and if the fraud is:

1. Admitted to in a sworn statement by the **insured**; or

2. Established in a court of competent jurisdiction.

We may deny coverage or void all Personal Injury Protection Coverage arising from the claim with respect to the **insured** who committed any insurance fraud. Any benefits paid prior to the discovery of that **insured's** fraud shall be recoverable from that **insured**.

If we have a reasonable belief that a fraudulent insurance act has been committed, we will notify you, in writing, within 30 days after submission of the claim that the claim is being investigated for suspected fraud. Beginning at the end of the initial 30-day period, the insurer has an additional 60 days to conduct its fraud investigation. We must either deny the claim or pay the claim no later than 90 days after submission of the claim.

## LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, no legal action may be brought against us:

1. Until the claim for benefits is overdue in accordance with the provisions of Payment of Benefits, paragraph **1.**; and

2. Until a demand letter is provided to us in accordance with the requirements of the Florida Motor Vehicle No-Fault Law as amended; and

3. With respect to the overdue claim specified in the demand letter, if we have:

a. paid the overdue claim; or

b. agreed to pay for future treatment not yet rendered;

within 30 days from the date of receipt of the demand letter by us, in accordance with the requirements of the Florida Motor Vehicle No-Fault Law as amended.

The demand letter shall be mailed to us by U.S. certified mail or registered mail, return receipt requested.

B. No person or organization has any right under this policy to bring us into any action to determine the liability of an **insured**.

C. If legal action is brought against us, all claims related to the same health care provider for the same **insured** shall be brought in one action, unless good cause is shown why such claims should be brought separately.

## OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this Extended Personal Injury Protection Coverage and the person to or for whom payment was made has a right to recover damages from another we shall, to the extent of our payment, be subrogated to that right. That person shall:

1. Execute and deliver instruments and papers and do whatever else is necessary to secure our rights; and

2. Do nothing after loss to prejudice these rights.

**B.** If we make a payment under this Extended Personal Injury Protection Coverage and the person to or for whom payment was made sustained **bodily injury** while:

**1.** **Occupying**; or

**2.** A **pedestrian** struck by;

a commercial motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law as amended, we shall, to the extent of our payment, be entitled to reimbursement from the person who owns such motor vehicle or that person's insurer.

However, our right of reimbursement under Paragraph **B.** does not apply to the owner or registrant of a **motor vehicle** used as a taxicab.

## PAYMENT OF BENEFITS

**1.** Benefits payable under Extended Personal Injury Protection may be overdue if not paid within 30 days after written notice of loss and the amount of loss have been filed with us in accordance with the provisions of the Florida Motor Vehicle No-Fault law as amended.

**2.** We may, at our option, pay any medical benefits to the:

**a.** **insured**; or

**b.** person or organization providing services or supplies for such benefits.

However, we will not pay:

**a.** a claim or charges for such benefits made by a:

**(1)** broker, as defined in the Florida Motor Vehicle No-Fault Law as amended; or

**(2)** person making the claim on behalf of such broker.

**b.** any charge or reimbursement made by or on behalf of a clinic that is required to be licensed with the Agency For Health Care Administration:

**(1)** but is not so licensed; or

**(2)** that is otherwise operating in violation of the Florida Health Care Clinic Act.

**c.** a claim or charges for such benefits:

**(1)** for any service or treatment that was not lawful at the time rendered;

**(2)** to any person who knowingly submits a false or misleading statement relating to the claim or charges;

**(3)** with respect to a bill or statement that does not substantially meet the applicable requirements of FLA. STAT. SECTION § 627.736(5)(d);

**(4)** for any service or treatment that is:

**(a)** upcoded; or

**(b)** that is unbundled when such treatment or service should be bundled;

in accordance with the provisions of the Florida Motor Vehicle No-Fault Law as amended;

**(5)** for any medical services or treatment billed by a physician and not provided in a hospital unless such services or treatment:

**(a)** are actually rendered by the physician or are incident to the physician's professional services; and

**(b)** are included on the physician's bill, including documentation verifying that the physician is responsible for the medical services or treatment that were rendered and billed.

**d.** for any invalid diagnostic test as determined by the Florida Department of Health in accordance with the Florida Motor Vehicle No-Fault Law as amended.

**e.** charges for any services rendered by any person who violates the provisions of FLA. STAT. SECTION 817.234(8) in regard to the **insured** for whom such services were rendered and with

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

respect to soliciting business or causing business to be solicited from any **insured** involved in a motor vehicle accident for the purpose of making:

    **(1)** motor vehicle tort claims; or

    **(2)** claims for personal injury protection benefits.

**3.** If a person seeking Extended Personal Injury Protection Coverage is charged with committing a felony, we shall withhold benefits until, at the trial level:

    **a.** the prosecution makes a formal entry on the record that it will not prosecute the case against that person;

    **b.** the charge is dismissed; or

    **c.** that person is acquitted.

**4.** If we pay only a portion of a claim or reject a claim due to an alleged error in the claim, we, at the time of the partial payment or rejection, will provide an itemized specification or explanation of benefits due to the specified error. Upon receiving the specification or explanation, the person making the claim, at the person's option and without waiving any other legal remedy for payment, has 15 days to submit a revised claim, which will be considered a timely submission of written notice of a claim.

**5.** We will create and maintain for each **insured** a log of personal injury protection benefits paid by us on behalf of the **insured**. If litigation is commenced, we shall provide the **insured** a copy of the log within 30 days after receiving a request for the log from the **insured**.

**6.** If there is a dispute between an **insured** and us, or between an assignee of the **insured's** rights and us, upon request, we will notify the **insured** or the assignee that the policy limits under this coverage have been reached within 15 days after the limits have been reached.

## MODIFICATION OF POLICY COVERAGES

**A.** Any coverage provided under Part **B** — Medical Payments Coverage or any Uninsured Motorists Coverage of this policy shall be excess over any personal injury protection benefits paid or payable.

**B.** Regardless of whether the limits for personal injury protection benefits have been exhausted, any coverage provided under Part **B** — Medical Payments Coverage shall pay the amount of any claim for **medical benefits** payable under this coverage which exceeds the 80% limitation for **medical benefits**.

**C.** No coverage is provided under Part **B** — Medical Payments Coverage for the amount of any applicable deductible under Extended Personal Injury Protection Coverage.

## PROVISIONAL PREMIUM

**A.** In the event of any change in the:

    **1.** Rules;

    **2.** Rates;

    **3.** Rating plan;

    **4.** Premiums; or

    **5.** Minimum premiums;

applicable to Extended Personal Injury Protection, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-Fault Law as amended which provide for the exemption of persons from tort liability, the premium shown in the Declarations for any coverage under Part **A** — Liability Coverage, Part **B** — Medical Payments Coverage or any Uninsured Motorists Coverage of this policy shall be deemed to be provisional and subject to recomputation.

**B.** If this policy is a renewal policy, such recomputation shall include the amount of any return premium previously credited or refunded to you, in accordance with the Florida Motor Vehicle No-Fault Law as amended, with respect to insurance provided under a previous policy.

**C.** If the final recomputed premium exceeds the premium shown in the Declarations, you shall pay us:

    **1.** The excess amount; and

    **2.** The amount of any return premium previously credited or refunded.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

**ROADSIDE ASSISTANCE COVERAGE** CALL 1-877-ROAD 101 **(1-877-762-3101)**

**"Your covered auto"** as used in this endorsement means a private passenger vehicle, motorhome or trailer owned by you and for which a specific premium is shown on the Declarations for this coverage.

The following coverages apply to each vehicle for which this coverage is shown on the Policy Declarations:

1. Each time **your covered auto** or any **non-owned auto** is disabled due to mechanical or electrical breakdown we will pay reasonable and necessary expenses for the use of an **authorized service provider** to tow or flatbed **your covered auto** or **non-owned auto** up to 15 miles or to the nearest qualified place where necessary repairs can be made during regular **business** hours.

2. Each time **your covered auto** or any **non-owned auto** is disabled requiring:

    a. Towing to dislodge the vehicle from its place of disablement within 100 feet of a public street or highway; or

    b. Labor, including change of tire, at the place of its breakdown; or

    c. Delivery of fuel, oil, water or other fluids (we do not pay the costs of these items); or

    d. Key lock-out services;

    we will cover up to one (1) hour of labor for the use of an **authorized service provider** for service at the place of disablement.

3. For policies with a 6 month term, coverage is limited to no more than two occurrences per vehicle plus an additional two occurrences per policy in a 6 month policy period for both coverages **1.** and **2.**, above.

4. For policies with an annual policy term, coverage is limited to no more than four occurrences per vehicle plus an additional four occurrences per policy in a 12 month policy period for both coverages **1.** and **2.** above.

**Authorized service provider** means a service provider contracted by us providing, at no charge to you, roadside assistance as described and limited above.

When service is provided by other than an **authorized service provider**, we will reimburse you only for reasonable charges as determined by us.

No deductible applies to this coverage.

**LOSS OF USE COVERAGE**

The provisions and exclusions that apply to Part **D** — Coverage for Damage to Your Auto also apply to this coverage except as changed below:

When there is a loss to any vehicle described in the Declarations for which a specific premium charge indicates that Loss of Use is afforded, we will reimburse you for expenses you incur to rent a substitute vehicle.

This coverage applies only if:

1. The vehicle is withdrawn from use for more than 24 hours;

2. The loss is caused by **collision**, or is covered by the Comprehensive Coverage of this policy.

However, this coverage does not apply to losses caused by **collision** if Collision Coverage does not apply to the vehicle.

Our payment will be limited to that period of time reasonably required to repair or replace the vehicle. We will pay up to the amount per day and the maximum shown for Loss of Use in the Declarations.

No deductible applies to this coverage.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

This policy has been signed by our President and Secretary.

James MacPhee
President

Mark C. Touhey
Vice President and Secretary

This policy includes copyrighted material of Insurance Services Office, Inc. with its permission.

SA-1701/FLEP 3/09
G4

CN7107EP 4/08

## COUNTERSIGNATURE

The signature shown below complies with the countersignature laws and regulations of your state.

Countersigned by: _____
(authorized representative)

for SOLACE INSURANCE LLC

Date of Countersignature: _____AUGUST 29, 2018_____
(month, day and year)