# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

### Case No. 0:19-cv-61937-WPD

GINA SIGNOR,

      Plaintiff,

v.

SAFECO INSURANCE COMPANY OF ILLINOIS,

      Defendant.

_____/

---

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SAFECO INSURANCE COMPANY OF ILLINOIS MOTION AND SUPPORTING MEMORANDUM TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

---

**TABLE OF CONTENTS**

**Pages**

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION ................................................................................................................1

ARGUMENT AND AUTHORITIES...................................................................................1

I.      Signor Has Article III Standing to Bring Count I for Declaratory Judgment...............1

II.     Signor's Declaratory Judgment Action Properly Seeks A Declaration as to the
        Coverage of and Safeco's Breach of the Policy and Does Not Constitute a
        Disguised Attempt to Bring Suit Under the UITPA .....................................................2

        A.  Signor properly seeks a declaration as to the coverage of and Safeco's
            breach of the Policy ..........................................................................................3

        B.  Signor could seek a declaration that Safeco is violating §
            626.9743 independent of its incorporation into the Policy even
            though UITPA provides no private right of action for its violation ...........6

III.    The Portions of Signor's Counts II and III for Breach of Contract by
        Safeco's Use of the CCC System and Its Refusal to Pay Dealer Fees
        Based on Safeco's Non-Compliance with § 626.9743(a) Are
        Legally Viable...............................................................................................................7

IV.     Count II for Breach of Contract by Geico's Use of the CCC System
        Sufficiently Alleges Safeco Breached § 626.9743(5)..................................................11

        A.  § 626.9743(5)(a)(1)........................................................................................11

        B.  § 626.9743(5)(a)(2)(a) ...................................................................................13

        C.  § 626.9743(5)(a)(3)........................................................................................13

V.      Count II for Breach of Contract by Safeco's Use of the CCC
        System Sufficiently Alleges that Safeco Does Not Comply with
        § 626.9743(6) as Incorporated into the Policy.............................................................14

VI.     Count III States a Cause of Action for Safeco's Breach of its Policy by
        Failing to Pay Dealer Fees ..........................................................................................15

        A.  On its face, the Policy requires Safeco to pay dealer fees .........................15

i

B.   § 626.9743(5)(a) is incorporated into the Policy and requires Safeco to pay dealer fees............................................................................16

C.   Dealer Fees Are Not Illegal ....................................................................17

VII.   Count IV States a Cause of Action for Safeco's Breach of the Policy by Requiring Total Loss Policyholders to Transfer Title to Their Total Loss Vehicles in Return for Payment of Their Total Loss claims or By Deducting the Salvage Values from the Total Loss Payments......................................18

CONCLUSION.................................................................................................................20

CERTIFICATE OF SERVICE ........................................................................................22

## **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*,
___ F.3d ___, 2019 WL 2292326 (11th Cir. May 30, 3019) ..................................................2

*Aaron Private Clinic Mgmt. LLC v. Berry*,
912 F.3d 1330 (11th Cir. 2019) ...........................................................................................2

*Allstate Ins. Co. v Vizcay*,
2011 WL 5870016 (M.D. Fla. Nov. 22, 2011) ....................................................................4

*Allstate Ins. Co. v. Kaklamanos*,
843 So. 2d 885 (Fla. 2003) ...................................................................................................7

*Bastian v. United Services Auto. Ass'n.*,
150 F. Supp. 3d 1284 (M.D. Fla. 2015) ................................................................ 7-11, 16, 19

*Berkshire Life Ins. Co. v. Adelberg*,
698 So. 2d 828 (Fla. 1997) ............................................................................................18, 20

*Bettor v. Esurance,* Case No. 0:18-cv-61860-FAM,
(S.D. Fla. Sept. 24, 2018) ...................................................................................................20

*Bloomgarden v. Allstate Fire & Cas. Ins. Co.*,
2019 WL 5209015 (S.D. Fla. Aug. 6, 2019) ......................................................................19

*Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*,
314 U.S. 95 (1941) ...............................................................................................................16

*Fla. Pulp & Paper Ass'n. Enviro. Affairs, Inc. v. Dept. of Enviro. Protection*,
223 So.3d 417 (Fla. Dist. Ct. App. 2017) ..................................................................... 11-12

*Foman v. Davis*,
371 U.S. 178 (1962) .............................................................................................................21

*Foundation Health v. Westside EKG Assoc.*,
944 So. 2d 188 (Fla. 2006) ................................................................................................5, 6

*Geico Gen. Ins. Co. v. Virtual Imaging Servs.*,
141 So. 3d 147 (Fla. 2013) ...............................................................................................7, 8

*Glover v. Liberty Ins. Co.*,
2019 WL 4917063 (S.D. Fla. Oct. 4, 2019) .............................................................6, 10, 11, 12

| **Cases** | **Page(s)** |
|---|---|

*Goff v. State Farm FL*,
999 So. 2d 684 (Fla. 2d DCA 2009) ................................................................19

*Gov't Emps. Ins. Co. v. Dizol*,
133 F.3d 1220 (9th Cir. 1998) ...........................................................................2

*Higgins v. State Farm Fire & Cas. Co.*,
894 So. 2d 5 (Fla. 2005)....................................................................................4

*Kaufman v. Mut. of Omaha Ins. Co.*,
681 So. 2d 747 (Fla. Dist. Ct App. 1996) ........................................................12

*Keehn v. Carolina Cas. Ins. Co.*,
758 F.2d 1522 (11th Cir. 1985) .....................................................................4, 5

*Kingsway Amigo Ins. Co. v. Ocean Health, Inc.*,
63 So. 3d 63 (Fla. 4th DCA 2011)..................................................................7, 8

*Larach v. Standard Chartered Bank Int'l (Americas) Ltd.*,
724 F.Supp.2d 1228, (S.D. Fla. 2010) .............................................................19

*Lopez v. Progressive Select Ins. Co.*,
2019 WL 4731644 (S.D. Fla. May 14, 2019) ..................................................18

*Loveland ex rel. Loveland v. State Farm Fire & Cas. Co.*,
2013 WL 1325365 (S.D. Fla. Apr. 1, 2013) ......................................................2

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)............................................................................................2

*Lutz v. Protective Life Ins. Co.*,
951 So. 2d 884 (4th DCA 2007) ......................................................................6, 7

*Malowney v. Fed. Collection Deposit Group*,
193 F.3d 1342 (11th Cir. 1999) .........................................................................2

*Mills v. Foremost Ins. Co.*,
511 F.3d 1300 (11th Cir. 2008) ...................................................................15, 16

*Monticello Ins. Co. v. City of Miami Beach*,
2009 WL 667454 (S.D. Fla. Mar. 11, 2009).....................................................20

**Cases**                                                                                          **Page(s)**

MRI *Associates of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*,
755 F. Supp. 2d 1205 (M.D. Fla. 2010) ............................................................7

*Nationwide Mut. Co. v. Ft. Myers Rehab. Center, Inc.*,
657 F. Supp. 2d 1279 (M.D. Fla. 2009) ............................................................4

*Penzer v. Transp. Ins. Co.*,
29 So. 3d 1000 (Fla. 2010) ............................................................................19

*Pro-Art Dental Lag, Inc. v. V-Strategic Group, LLC*,
986 So. 2d 1244 (Fla. 2008) ..........................................................................16

*Prudhome v. Geico Ins. Co.*,
2015 WL 2345420 (W.D. La. May 14, 2015) ................................................13

*Richardson v. Progressive American Ins. Co.*,
2019 WL 2287955 (M.D. Fla. May 23, 2019) ........................................5-6, 10

*Roth v. GEICO Gen. Ins. Co.*,
2018 WL 3412852 (S.D. Fla. June 14, 2018) ...............................15, 19, 20

*Salinas v. Ramsey*,
881 F.3d 876 (11th Cir. 2018) ..........................................................................5

*Slade v. Progressive Sec. Ins. Co.*,
2013 WL 12182957 (W.D. La. Feb. 4, 2013) ................................................13

*Sos v. State Farm Mut. Auto. Ins Co*,
2019 WL 3940227 (M.D. Fla. Mar. 13, 2019) ...............................................15

*Spanier v. State Farm,*
Case No. 0:17-cv-61099-KAM, ECF
No. 57-1 at 39 of 54 (S.D. Fla. June 23, 2017)..............................................20

*State Farm Fla. Ins. Co. v. Nichols*,
21 So. 3d 904 (Fla. 5th DCA 2009) ..............................................................7-9

*State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*,
739 F.3d 579 (11th Cir. 2013) ......................................................................4, 5

*Strickland v. Alexander*,
772 F.3d 876 (11th Cir. 2014) ........................................................................12

**Cases**                                                                                          **Page(s)**

*Sullivan v. Gov't Employees Ins. Co.*,
2018 WL 3650114 (M.D. Fla. April 6, 2018)....................................................................15

*Texas Pharmacy Ass'n v. Prudential Ins. Co. of America*,
907 F. Supp. 1019 (W.D. Tex. 1995)...............................................................................6

*Trinidad v. Florida Peninsula Ins. Co.*,
121 So. 3d 433 (Fla. 2013)..........................................................................................7, 15

**Statutes and Rules**

28 U.S.C. § 2201....................................................................................................................6

28 U.S.C. § 2202....................................................................................................................6

Fed. R. Civ. P. 12(b)(6)........................................................................................................1

Fed. R. Civ. P. 57.................................................................................................................3

Fla. Stat. § 501.976 (11), (16) & (18)..................................................................................17

Fla. Stat. § 520.02(2)..........................................................................................................17

Fla. Stat. § 626.9743 ................................................................................................*passim*

Fla. Stat. § 626.9743(5).............................................................................................*passim*

Fla. Stat. § 626.9743(6).............................................................................................*passim*

Fla. Stat. § 627.413(1)..........................................................................................................18

Fla. Stat. § 627.418(1)..........................................................................................................11

Fla. Stat. § 627.713(1)..........................................................................................................18

Fla. Admin. Code § 69V-50.001........................................................................................18

Tex. Ins. Code Art. 21.52B...................................................................................................6

**<u>Dictionaries</u>**                                                                                          **<u>Page(s)</u>**

"Cost" Oxford Cambridge English Dictionary
<u>https://dictionary.cambridge.org/us/dictionary/english/cost</u>............................................................. 12

"Quote" Oxford Cambridge English Dictionary
<u>https://dictionary.cambridge.org/us/dictionary/english/quote</u> ......................................................... 14

Plaintiff Gina Signor ("Signor") files Plaintiff's Memorandum in Opposition to Defendant Safeco Insurance Company of Illinois's ("Safeco's") Motion and Supporting Memorandum to Dismiss ("Motion")[1] (ECF 10) Plaintiff's Class Action Complaint ("Complaint") (ECF 1-1) and for such would respectfully show the Court as follows:

## INTRODUCTION

Safeco's Motion seeks to complicate what otherwise is a straight-forward declaratory judgment and breach of insurance policy action. As this Response will show and Signor's well-pled allegations demonstrate, the Court should deny the Motion.

## ARGUMENT AND AUTHORITIES

### I.   Signor Has Article III Standing to Bring Count I for Declaratory Judgment.

Safeco correctly notes that Signor's claim for a declaratory judgment must present a real controversy, but incorrectly claims Signor must, but fails to, allege facts from which it appears there is a substantial likelihood that she will suffer injury in the future. Motion at 6-7. This ignores that Signor alleges a present, existing controversy between her and Safeco: that it used an improper method of valuing her total loss claim that breached her Policy and caused her damage, that it failed to pay her dealer fees which breached her Policy and caused her damage, and that it took her total loss vehicle without paying her for same, which also breached her Policy and damaged her. Complaint ¶¶ 1-6, 24 (at page 22)[2], 35-38 (at pages 24-25), and 40-51 (at pages 25-27).

Courts have consistently held that "it is beyond dispute that an insured has standing to request declaratory relief as to whether an insurance company wrongfully denied coverage of a claim." *Loveland ex rel. Loveland v. State Farm Fire & Cas. Co.*, 2013 WL 1325365, at *2 (S.D. Fla. Apr. 1, 2013); *see also, e.g., Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1222 n. 2 (9th Cir. 1998) (disputes between an insurer and its insureds over the duties imposed by an insurance contract satisfy Article III's case and controversy requirement).   The exact same

---

1 The standards for granting a 12(b)(6) motion are well-known to the Court and are not repeated here.

2 Page numbers are given as to some paragraph numbers to avoid confusion that could arise because of paragraph numbering errors in the Complaint.

*Signor v. Safeco Insurance Company of Illinois*
Civil Case No. 0:19-cv-61937-WPD
   - Plaintiff's Response in Opposition to Safeco's Motion to Dismiss

Page
1

reasoning applies to Signor's requests for declaratory and supplemental relief. She has alleged an "injury-in-fact" that is "fairly traceable" to Safeco's misconduct which can be "redressed by a favorable decision." *See Aaron Private Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1336 (11th Cir. 2019) (stating the requirements for standing).

Safeco's reliance on *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, ___ F.3d ___, 2019 WL 2292326 (11th Cir. May 30, 2019) is misplaced. *Gerber* is easily distinguishable because there was no present, ongoing controversy, only some speculative future disagreement. *Gerber*, unlike here, consisted of a single declaratory judgment claim against GEICO. *Id.*, at *2. *Gerber* also, unlike here, sought a declaration even though the defendant entity admittedly owed no money to the plaintiff. *Id.*

The 11th Circuit held that "when a plaintiff is seeking declaratory relief *without a claim for money damages for injuries already suffered*, the plaintiff must allege facts from which it appears that there is a substantial likelihood that he will suffer injury in the future." *Id.,* at *7 (citing *Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014)) (emphasis added); *see also Malowney v. Fed. Collection Deposit Group*, 193 F.3d 1342 (11th Cir. 1999) (finding a lack of standing because the past injury was fully remedied and the plaintiff could not "assert a reasonable expectation that the injury they have suffered will continue or will be repeated in the future."). This articulates longstanding Article III jurisprudence that a plaintiff must allege either an "actual" (*i.e.*, existing) or "imminent" (*i.e.*, substantially likely) injury to establish standing. *E.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Signor's case here is materially different than *Gerber*, because Signor alleges Safeco has caused her an actual, existing unremedied monetary injury.

## II.    Signor's Declaratory Judgment Action Properly Seeks A Declaration as to the Coverage of and Safeco's Breach of the Policy and Does Not Constitute a Disguised Attempt to Bring Suit Under the UITPA.

Safeco claims that "Signor's request for declaratory relief is premised entirely on Safeco's purported violations of Florida's Claim Settlement Statute, Fla. Stat. § 626.9743" and argues that because Signor could not bring a cause of action for violation of § 626.9743, part of Florida's Unfair Insurance Trade practices Act ("UITPA"), she cannot seek a declaration that Safeco is violating it. Motion at 5-6. Safeco is wrong on both counts.

*Signor v. Safeco Insurance Company of Illinois*
Civil Case No. 0:19-cv-61937-WPD
 - Plaintiff's Response in Opposition to Safeco's Motion to Dismiss

Page
2

First, Signor does not seek a naked declaration that Safeco is violating § 626.9743. Rather, she seeks a declaration that by using the CCC system and refusing to pay dealer fees, Safeco is breaching the Collision and Comprehensive Coverages of the Policy based on both the face of the Policy and the Policy as amended to conform to § 626.9743. And, her request for a declaration that Safeco breaches the Policy by taking the salvage values of its insureds' total loss vehicles does not rely even in part upon Safeco's violation of § 626.9743.

Second, even if Safeco had accurately described Signor's allegations, a plaintiff may seek a declaratory judgment that a defendant is violating a statute that does not provide a private cause of action for its violation. *See* Fed. R. Civ. P. 57, n. 1937 ("statutes, may be construed before or after breach at the [declaratory judgment] petition of a properly interested party…").

A.    Signor properly seeks a declaration as to the coverage of and Safeco's breach of the Policy.

Signor does not ask for a declaration that Safeco violates § 626.9743 independent of its effect on the Policy. Rather, she pleads that Safeco breaches the Comprehensive and Collision coverages of the Policy on its face and as amended to conform to § 626.9743 by its use of the CCC system to adjust total loss claims and its refusal to pay dealer fees. [3] Complaint ¶¶ 1-4 (at pages 1-2), 9 (at pages 5-6), 15 (at page 8), 13-17 (at pages 7-9), 26 (at page 12), 13(a) & (b) (at page 18) & 24 (at page 22). In particular, Signor's pleading that Safeco's use of the CCC system breaches the Policy because it uses the Uniform Condition Adjustments, which causes it to calculate values less than the "Actual Cash Value" the Policy requires Safeco to pay, does not require incorporation of any part of § 626.9743 into the Policy. Complaint ¶¶ 13-17 (at pages 7-9) & 24 (at page 22). Likewise, Signor's pleading that Safeco must pay dealer fees as part of the "Actual Cash Value" the Policy requires it to pay on total losses does not require incorporation into the Policy of any part of § 626.9743. Complaint ¶¶ 26 (at page 12) & 24 (at page 22). Further, Signor pleads that Safeco breaches the Policy by taking its insureds' total loss vehicles as a condition to paying them the actual cash value of their total

---

[3] Signor will address below Safeco's assertion that certain parts of § 626.9743 are not incorporated into the Policy.

*Signor v. Safeco Insurance Company of Illinois*
Civil Case No. 0:19-cv-61937-WPD
 - Plaintiff's Response in Opposition to Safeco's Motion to Dismiss

Page
3

loss vehicles without any incorporation of § 626.9743. Complaint ¶¶ 5 (at page 2), 27 (at pages 12-13), 28 (at page 13), 13(h) & (i) (at pages 18-19), & 49-50 (at pages 26-27).

      This means two things. First, Signor's pleading for a declaratory judgment based on the face of the Policy does not fall within Safeco's argument that she is just asserting a disguised claim for violation of a part of UITPA. Second, because Signor seeks only a declaration that Safeco breaches the Policy, it does not matter if the lack of a private cause of action for violation of § 626.9743 would prevent her from seeking a declaration that Safeco had violated it (it does not, as explained below). As set forth above, courts routinely hear declaratory judgment actions regarding insurers' liability under and the coverage of insurance policies. *See also, e.g., Allstate Ins. Co. v Vizcay*, 2011 WL 5870016, at *3 (M.D. Fla. Nov. 22, 2011); *Nationwide Mut. Co. v. Ft. Myers Rehab. Center, Inc.*, 657 F. Supp. 2d 1279, 1291-93 (M.D. Fla. 2009); *Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5, 9 (Fla. 2005) ("…Florida's declaratory judgements statute authorizes declaratory judgments as to insurance policy obligations to defend and coverage for indemnity [even] when it is necessary to decide issues of fact in order to determine the declaratory judgment.").

      Perhaps anticipating this second argument, Safeco cites (Motion at 6) *Keehn v. Carolina Cas. Ins. Co.*, 758 F.2d 1522 (11th Cir. 1985), in which the court held "[i]n sum, therefore, the UITPA affords plaintiffs no cause of action, either by its own terms or incorporation into the contract of insurance, to vitiate Carolina Casualty's otherwise valid cancellation." *Id*. at 1525. The Court should not find *Keehn* applicable to Signor's declaratory judgment cause of action, because it addressed only a breach of contract claim. *Id.* at 1524.

      The critical nature of that distinction is made clear by the 11th Circuit's later decision in *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 583 (11th Cir. 2013). In that case, the court held that even though the Florida Health Care Clinic Act did not provide for a private right of action, State Farm could seek a declaratory judgment that because Silver Star had operated in violation of the statute, all its charges were illegal and did not have to be paid. *Id.* As the Court stated, "…it would make no sense to read into a statute a provision that courts lack the authority to decide the crucial question on which the lawfulness, compensability, and enforceability of a claim depends…" *Id.* Likewise, it would make no sense for this Court not to have the authority to determine whether § 626.9743 as incorporated into

*Signor v. Safeco Insurance Company of Illinois*
Civil Case No. 0:19-cv-61937-WPD
  - Plaintiff's Response in Opposition to Safeco's Motion to Dismiss

Page
4

the Policy allows Safeco to use the CCC system and to refuse to pay dealer fees notwithstanding that Signor cannot recover damages based solely on Safeco's violation of the statute.

Further, an additional holding in *Silver Star* impliedly overruled *Keehn*'s holding that breach of contract cannot be predicated on non-compliance with provisions of UITPA incorporated into a policy. Specifically, the 11th Circuit held that the illegality of the charges would support a common law unjust enrichment claim to recover what it had paid despite State Farm not having the right to recover those amounts based directly on Silver Star's violation of the Act. *Id.* at 584. By the same reasoning, Signor should be able to bring a breach of contract cause of action for Safeco's breach of the provisions of § 626.9743 incorporated into the Policy despite not having the right to recover directly for Safeco's statutory violations.

*Keehn's* holding also no longer constitutes valid, binding law because of a subsequent statement of Florida law by the Florida Supreme Court. *Salinas v. Ramsey*, 881 F.3d 876, 877 n.2 (11th Cir. 2018) (when "the Florida Supreme Court's decision undermines our interpretation of Florida law in [a prior decision], it is no longer binding in this Circuit."). In the absence of any Florida Supreme Court authority, the *Keehn* court relied upon court of appeals decisions as of the date of its decision in 1985. 758 F.2d at 1524. Subsequently, in the context of Florida's HMO Act, which does not authorize a private cause of action, and directly contrary to the holding in *Keehn,* the Florida Supreme Court held that "given the significant statutory regulation surrounding HMO contracts and the integral role the 'prompt pay provisions' play into them, section 641.3155 may be incorporated into the HMO contract" and that those provisions "may be incorporated into an HMO contract for the purpose of establishing a breach of contract cause of action…." *Foundation Health v. Westside EKG Assoc.*, 944 So. 2d 188, 194 (Fla. 2006). Notably, the Florida Supreme Court held the HMO policy incorporated only the "prompt pay provisions" of the HMO Act and not the entire statute and its lack of a private right of action as the *Keehn* court stated would be the case in rendering its erroneous interpretation of Florida law. *See* 758 F.2d at 1524-25.

The death of *Keehn* is best illustrated by two 2019 cases. *Richardson v. Progressive American Ins. Co.*, rejected the argument that a breach of contract cause of action based on incorporation into an insurance policy of the exact same statute in issue in this case, §

*Signor v. Safeco Insurance Company of Illinois*
Civil Case No. 0:19-cv-61937-WPD
  - Plaintiff's Response in Opposition to Safeco's Motion to Dismiss

Page
5

626.9743(5)(a), constituted a disguised claim for violation of UITPA (which does not provide a private right of action). 2019 WL 2287955, at *5 (M.D. Fla. May 29, 2019). Likewise, *Glover v. Liberty Ins. Co.* held that an insurance policy incorporated § 626.9743(5)(a) for purposes of a breach of contract claim. 2019 WL 4917063, at *4 (S.D. Fla. Oct. 4, 2019).

B.     <u>Signor could seek a declaration that Safeco is violating § 626.9743 independent of its incorporation into the Policy even though UITPA provides no private right of action for its violation.</u>

In a case governed by the Florida Declaratory Judgments Act, Chapter 87 of the Florida Statutes, the 4th DCA held that:

> While we agree with the trial court that nothing in the relevant statutes indicates the legislature intended to create a private right of action for an insured to enforce compliance with an insurer's violation of sections 627.6515, 627.6571 or 627.6675, we believe these statutory provisions could form the basis for a breach of contract cause of action by an insured if properly pled and supported by evidence.

*Lutz v. Protective Life Ins. Co.*, 951 So. 2d 884, 887 (4th DCA 2007) (citing *Foundation Health*, 944 So. 2d at 195). Critically, after having held that the plaintiff had failed to plead violations of those incorporated statutory provisions (and thus having failed to plead breach of contract), the court went on to hold that the plaintiff could still pursue a declaratory judgment regarding whether those provisions applied to the defendant. *Id.* Simply put, regardless of whether statutory insurance provisions provide a private right of action for their violation or enforcement, they can provide a basis for both declaratory judgment (under Chapter 87) and breach of contract causes of action.

The same holds true under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 & 2202. A federal district court held that even though Texas Insurance Code art. 21.52B did not provide a private right of action, the plaintiff could nevertheless seek "a declaration of the meaning of article 21.52B and that Prudential's conduct is in violation of the statute." *Texas Pharmacy Ass'n v. Prudential Ins. Co. of America,* 907 F. Supp. 1019, 1023 (W.D. Tex 1995). Again, regardless of whether UIPA provides a private right of action, Signor has the right to seek a declaratory judgment of the meaning of § 626.9743 and that Safeco is violating it.

*Signor v. Safeco Insurance Company of Illinois*
Civil Case No. 0:19-cv-61937-WPD
   - Plaintiff's Response in Opposition to Safeco's Motion to Dismiss

Page
6

III.   **The Portions of Signor's Counts II and III for Breach of Contract by Safeco's Use of the CCC System and Its Refusal to Pay Dealer Fees Based on Safeco's Non-Compliance with § 626.9743(a) Are Legally Viable.[4]**

Safeco claims that the Policy does not incorporate § 626.9743(5). Motion at 7-10. However, "[i]nsurance policies are deemed by law to incorporate applicable statutes." *MRI Associates of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*, 755 F. Supp. 2d 1205, 1210 (M.D. Fla. 2010); *see also Lutz,* 951 So. 2d at 887 (quoted above). "[P]rovisions in an insurance policy must be construed and applied to be in full compliance with the Florida Statutes." *Trinidad v. Florida Peninsula Ins. Co.*, 121 So. 3d 433, 441 (Fla. 2013); *see also, Allstate Ins. Co. v. Kaklamanos*, 843 So. 2d 885, 896 (Fla. 2003).  Critically, this rule has been followed without regard to whether those statutes use mandatory or permissive language. *See id.*

Based on one federal district court case and the three Florida decisions upon which that case relies, Safeco argues that this long-standing Florida law has now been changed such that only statutory provisions that use the mandatory language "shall" and not the permissive language "may" can be incorporated into insurance policies. Motion at 7-10. Based on that, it argues that the methods for calculating cash settlements set forth in § 626.9743(5)(a), which Signor pleads was incorporated into the Policy and breached by Safeco, are not incorporated into the Policy because the statute says, "Such cost *may* be derived from:" and then lists the methods of calculation. *Id.*

Safeco and the case it primarily relies upon, *Bastian v. United Services Auto. Ass'n.*, 150 F. Supp. 3d 1284, 1294-96 (M.D. Fla. 2015), vastly overstate the holdings of *Geico Gen. Ins. Co. v. Virtual Imaging Servs.*, 141 So. 3d 147, 157 (Fla. 2013), *Kingsway Amigo Ins. Co. v. Ocean Health, Inc.*, 63 So. 3d 63, 67 (Fla. 4th DCA 2011), and *State Farm Fla. Ins. Co. v. Nichols*, 21 So. 3d 904 (Fla. 5th DCA 2009). Those cases did not purport to change Florida law regarding the incorporation into insurance policies of statutory provisions; rather, they merely held that where an insurer has provided in the insurance policy a legally permissible method for calculating the amount of claims or a legally permissible time for paying claims, it

---

[4] As noted previously, all of Signor's claims rest in part or in whole on the face of the Policy, so this argument could not justify dismissal of any of her claims in their entirety. In particular, Count IV for breach of contract by Safeco taking salvage values rests entirely on the face of the Policy without regard to § 626.9743(5).

*Signor v. Safeco Insurance Company of Illinois*
Civil Case No. 0:19-cv-61937-WPD
   - Plaintiff's Response in Opposition to Safeco's Motion to Dismiss

Page
7

cannot use another statutorily optional (not required) method of calculation or time for payment. Simply put, an insurer cannot provide a legally permissible provision in its policy and then argue it gets to use a statutory provision more favorable to it where the statute does not make it mandatory that a policy of that type use the more favorable provision.

In both *Virtual Imaging* and *Kingsway*, the PIP statute set forth two permissible options for insurers to calculate benefits, 80% of reasonable expenses for medically necessary medical services or 200% of the allowable amount under Medicare, and the insurers put the 80% method in their policies and then tried to argue that, notwithstanding the language of their policies, they could use the Medicare method. 141 So. 3d at 152-158; 63 So. 3d 64-66. In both cases, the courts merely held that where the insurer had expressly stated one statutorily permissible option in its policy, it could not claim that the policy conflicted with the other statutorily permissible option, such that the other permissible (not required) option was incorporated into the policy in place of the expressly stated option. 141 So. 3d at 158-159; 63 So. 3d at 66-68.

As the 4th DCA explained in *Kingsway*, its holding is consistent with the long-standing Florida rule that "when the insurance policy provides greater coverage than the amount required by the statute, the terms of the policy will control." 63 So. 3d at 68. In *Virtual Imaging*, the Florida Supreme Court concluded by stating that it "adopt[ed] the reasoning of the Fourth District in *Kingsway*…." 141. So. 3d at 160. Certainly, neither court held that an insurance code provision which uses the word "may" can never be incorporated into an insurance policy.

In the third Florida case relied upon by Safeco and *Bastian*, the insurance policy provided that the loss would be payable within 60 days after State Farm received proof of loss and an appraisal award was filed with it, but State Farm argued that a statute allowed it to withhold payment until the insured had contracted for the repairs. *Nichols*, 21 So. 3d at 904-5. The 5th DCA held that because the language of this statute was permissive, it did not conflict with the policy, and the more favorable terms of the policy controlled. *Id.* at 65. That court did not purport to hold that an insurance code provision which uses the word "may" can never be incorporated into an insurance policy. In fact, that court did not discuss incorporation at all.

In *Bastian*, therefore, the court went too far in seemingly adopting the plaintiffs' argument in that case that permissive statutory language is never incorporated into a policy

*Signor v. Safeco Insurance Company of Illinois*
Civil Case No. 0:19-cv-61937-WPD
 - Plaintiff's Response in Opposition to Safeco's Motion to Dismiss

Page
8

unless done so expressly. 150 F. Supp. 3d at 164-165. The three cases it relied upon, as just explained, hold nothing of the sort. Certainly, the court had no need to so hold, because the situation it faced was exactly the same as that faced by the court in *Nichols*.

In *Bastian,* in connection with total loss claims like Signor's, the court correctly held that the auto policy's provision requiring USAA to pay the "actual cash value" of the total loss vehicle required it to pay the replacement cost of the total loss vehicle and that the replacement cost included not just the purchase price of the car but all costs necessary to the replacement of the vehicle, including sales tax.[5] 150 F. Supp. 3d at 1288-91. This is without regard to whether the insured has purchased a replacement vehicle and incurred sales tax, because the policy contained no provision requiring the insured to replace the insured vehicle in order to receive its actual cash value if it is was totaled. *Id.* at 1291. So, the court was holding that sales tax had to be paid at the same time and as part of the cash payment for the value of the total loss vehicle. *Id.*

USAA responded that Fla. Stat. § 626.9743(9) provides that "the insurer may defer payment of the sales tax unless and until the obligation has actually been incurred" and that it should be deemed incorporated into the policy. *Id.* at 1293. Just like in *Nichols*, the court merely needed to hold that because that language is permissive it did not conflict with the policy and the policy language controlled, consistent with the long-standing Florida rule that a policy may be more generous than the law requires. It had no need to hold incorrectly that whether a statutory provision uses "may" or "shall" always determines whether it will be incorporated into an insurance policy.

Although this case and *Bastian* both involve § 626.9743, the incorporation arguments are vastly different as to both Signor's claim that Safeco's use of the CCC system does not comply with § 626.9743(5)(a) and her claim that Safeco's refusal to pay dealer fees likewise does not comply with it. As to the first, while the Policy does provide that Safeco must pay Signor the actual cash value of her vehicle, it provides no methods that Safeco will use to calculate it. § 626.9743(5)(a)(1), (2) and (3) do provide such methods and they fill the vacuum in the Policy by incorporation pursuant to the rule that insurance policies are deemed to

---

[5] That is the exact same argument that Signor will be making regarding dealer fees.

*Signor v. Safeco Insurance Company of Illinois*
Civil Case No. 0:19-cv-61937-WPD
    - Plaintiff's Response in Opposition to Safeco's Motion to Dismiss

Page
9

incorporate applicable statues and must be construed as in full compliance with applicable statutes. *Glover*, 2019 WL 4917063, at *4 ("[T]he statutory method for determining ACV described in section 626.9734(5) serves to furnish a definition of the undefined ACV in the Insurance Policy and describes what items are included in ACV."). Once incorporated, non-compliance with those methods by Safeco constitutes a breach of the policy. *Id.*, at 7-8. This stands in stark contrast with *Bastian* where USAA did not seek to fill a vacuum in its policy with § 626.9743(9), but rather to use it to replace a less favorable provision it had written into its policy.

Further, by using the CCC system, an electronic database, Safeco is obviously trying to comply with § 626.9743(5)(a)(1)(a), which allows calculation of a cash settlement by an "electronic database" if it is "a generally recognized used motor vehicle industry source." Complaint ¶¶ 1 & 2 (at pages 1-2). Signor alleges that the CCC system does not comply with the statute, in part because it is not "a generally recognized used motor vehicle industry source." Complaint ¶3 (at page 2). It makes little sense that Safeco could use an electronic database that is not "a generally recognized used motor vehicle industry source" just because § 626.9743(5)(a) says that a generally recognized electronic database "may" be used rather than "shall' be used. The Legislature could not have intended that Safeco can use a method that it obviously found insufficient—an electronic database that is not generally recognized in the used motor vehicle industry.

Finally, as Signor pointed out above, two other courts, including another court in the Southern District of Florida, did not follow *Bastian* and implicitly rejected Safeco' argument in cases where the plaintiff attacked an electronic database much like the CCC system as not complying with § 626.9743(5)(a). Specifically, they held that § 626.9743(5)(a), in its entirety, was incorporated into the auto policy. *Glover*, 2019 WL 4917063, at *4; *Richardson*, 2019 WL 2287955, at *2 & *5.

Safeco tries, to no avail, to distinguish *Richardson* on the basis that the court based the incorporation on a policy provision providing that to the extent any terms of the policy conflicted with Florida law, the provisions would be amended to conform to the law, while its Policy contains no such provision. Motion at 10. Safeco ignores that Florida common law already provides for the exact same thing, as discussed above, and further that Florida has

*Signor v. Safeco Insurance Company of Illinois*
Civil Case No. 0:19-cv-61937-WPD
- Plaintiff's Response in Opposition to Safeco's Motion to Dismiss

Page
10

mandated the exact same thing by statute: "[a]ny insurance policy… which contains any condition or provision not in compliance with the requirements of this code… shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy… been in full compliance with this code.[6] Fla. Stat. § 627.418(1). Further, the court in *Glover* relied solely upon Florida common law; it made no mention of any policy provision providing for incorporation. *Glover*, 2019 WL 4917063, at *4.

As to Signor's claim for dealer fees, she relies upon the language at the beginning of § 626.9743(5)(a) that "[t]he insurer may elect a cash settlement based upon the actual cost to purchase a comparable motor vehicle", arguing that the actual cost includes dealer fees. Complaint ¶ 4 (at page 2). Crucially, both *Bastian* (150 F. Supp. 3d at 1295) and Safeco (Motion at 9) agree that this portion of § 626.9743(5)(a) is mandatory and incorporated into the Policy.

## IV.    Count II for Breach of Contract by Geico's Use of the CCC System Sufficiently Alleges Safeco Breached § 626.9743(5).[7]

A.    § 626.9743(5)(a)(1)

The Complaint expressly alleges that Safeco's use of the CCC System does not comply with § 626.9743(5)(a)(1), and that ought to end the matter. Complaint ¶ 20 (at page 10). Nevertheless, according to Safeco's Motion at 11, because the Complaint pleads and the CCC Report shows that the CCC System calculated Signor's payment using the *advertised prices* of twelve "comparable motor vehicles," the Complaint supposedly does not plausibly allege that the CCC System did not comply with § 626.9743(5)(a)(1). That section allows the actual cost of a comparable motor vehicle to be derived as follows: "[w]hen comparable motor vehicles are available in the local market area, the *cost* of two or more such comparable motor vehicles available within the *preceding 90* days." Fla. Stat. § 626.9743(5)(a)(1) (emphasis added). Safeco's argument fails for three reasons.

First, sections (1), (2) and (3) of § 626.9743(5)(a) "are separate alternatives separated by 'or,' which indicates that they are mutually exclusive alternatives." *Fla. Pulp & Paper*

---

[6] "Code" refers to the insurance portion of Florida's Statutes, Chapters 624-651, which includes the UITPA, Chapter 626.

[7] Again, Count II also alleges breach by Geico of the face of the Policy, which is not subject to Geico's argument (Motion at 10-12).

---

*Signor v. Safeco Insurance Company of Illinois*
Civil Case No. 0:19-cv-61937-WPD
    - Plaintiff's Response in Opposition to Safeco's Motion to Dismiss

*Ass'n. Enviro. Affairs, Inc. v. Dept. of Enviro. Protection*, 223 So.3d 417, 420 (Fla. Dist. Ct. App. 2017). This means that the CCC System can only comply with one of those sections, not three of them as Safeco claims. *See Kaufman v. Mut. of Omaha Ins. Co.*, 681 So. 2d 747, 749 (Fla. Dist. Ct App. 1996) (holding where Insurance Code required insurer to choose one of two statutory alternatives, it could choose one or the other, but not both). Further, it means that having purported to comply with § 626.9743(5)(a)(2)(a), Safeco cannot claim it complied with § 626.9743(5)(a)(1).

Second, § 626.9743(5)(a)(1) requires use of "the *cost* of two or more such comparable motor vehicles available within the *preceding 90* days." The CCC System determines the value of a total loss vehicle based on *advertised prices* not sales prices. The plain meaning of "cost" as used in § 626.9743(5)(a)(1) requires use of sales prices. "Cost" means "the amount of money needed to buy, do, or make something, or an amount spent for something." Cambridge English Dictionary, https://dictionary.cambridge.org/us/dictionary/english/cost. As anyone who has ever purchased a used car knows, the amount of money needed to buy a used car from a dealer is virtually never the same as the advertised price for a variety of reasons: additional undisclosed costs or fees, non-qualifying rebates, negotiations and/or outright misrepresentations in advertisements. Thus, one can only determine the "cost" of comparable vehicles from their actual sales prices.

Other statutory language confirms this. Section 626.9743(5)(a)(1) requires the "cost" to be based on "vehicles available within the *preceding 90 days.*" That implies "cost" is based on something that occurred in the past--sales. If "cost" meant advertised prices, presumably the Legislature would have said "cost" based on "vehicles available at the time or within the preceding 90 days." Further, § 626.9743(5)(a)(1) is supposed to be a method of deriving the "actual cost to purchase a comparable motor vehicle," and *advertised prices* cannot provide an "actual cost." Fla. Stat. § § 626.9743(5)(a).

Safeco argues that it defies common sense to require actual sales data because consumers negotiate the price of advertised vehicles down, not up. Motion at 11. This ignores that the factors described above can easily and often do more than offset any downward price negotiation, such that consumers can and often do pay more for cars than their advertised prices despite "successful" negotiation. It also ignores that the Legislature chose to specify "costs'

*Signor v. Safeco Insurance Company of Illinois*
Civil Case No. 0:19-cv-61937-WPD
- Plaintiff's Response in Opposition to Safeco's Motion to Dismiss

Page
12

and that choice must be honored even if Safeco contends specifying "advertised prices" would have been more consumer friendly.

Third, even if the *advertised prices* of comparable vehicles used by the CCC System could constitute their "costs," Safeco does not actually use them. Rather, it uses the *advertised prices* reduced by its arbitrary "Uniform Condition Adjustments." The meaning of "cost" cannot conceivably be stretched to encompass that practice. In short, not only does the Complaint both alleges that Safeco's use of the CCC System does not comply with § 626.9743(5)(a)(1), it demonstrates that the CCC System does not comply with it as a matter of law.

B.      § 626.9743(5)(a)(2)(a)

The Complaint expressly pleads that the CCC System does not comply with § 626.9743(5)(a)(2)(a) because it is not "a generally recognized used motor vehicle industry source." Complaint ¶ 19 (at page 10). Safeco claims that Signor fails to allege why this is so. Motion at 11. Safeco simply ignores that the Complaint goes on to plead why the CCC System is not such a source: because it is not available to consumers and not marketed to the motor vehicle industry as a whole, but rather is offered only as a subscription service to insurance companies, which are not part of the used motor vehicle industry and which are virtually the only entities that use it. *Id.*

While Signor did so plead, as just demonstrated, Safeco incorrectly assumes that Signor had to plead a reason why the CCC System does not constitute a generally accepted used motor vehicle industry source, but two courts have held that Federal pleading requirements do not require such detail. *Prudhome v. Geico Ins. Co.*, 2015 WL 2345420, at *4 (W.D. La. May 14, 2015) (holding that just alleging that CCC System  was not a generally accepted used motor vehicle industry source without any explanation of why was sufficient); *Slade v. Progressive Sec. Ins. Co.,* 2013 WL 12182957, at *7 (W.D. La. Feb. 4, 2013) (holding just alleging similar electronic database was not a generally accepted used motor vehicle industry source without any explanation of why was sufficient).

C.      § 626.9743(5)(a)(3)

Signor alleges that the CCC system is not designed to and does not comply with Fla. Stat. § 626.9743(5)(a)(3). Complaint ¶ 21 (at page 11). It allows calculation of the actual cost to purchase

*Signor v. Safeco Insurance Company of Illinois*
Civil Case No. 0:19-cv-61937-WPD
 - Plaintiff's Response in Opposition to Safeco's Motion to Dismiss

Page
13

a comparable motor vehicle by "using two or more quotations obtained by the insurer from two or more licensed dealers in the local market area." Fla Stat. § 626.9743(5)(a)(3). The CCC system does not, however, obtain "quotes" from dealers—the actual prices for which they commit to sell the cars. *Id. See* Oxford Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/quote (quote means "to tell a customer how much a job, service, or product will cost"). Rather, it takes advertised prices and makes illegitimate "Uniform Condition Adjustments" to those advertised prices.

## V.   Count II for Breach of Contract by Safeco's Use of the CCC System Sufficiently Alleges that Safeco Does Not Comply with § 626.9743(6) as Incorporated into the Policy.

Signor pleads that Safeco does not comply with 626.9743(6). Complaint ¶ 32 (at page 12). Section 626.9743(6) provides, in pertinent part, that:

> When the amount offered in settlement reflects a reduction by the insurer because of betterment or depreciation, information pertaining to the reduction shall be maintained with the insurer's claim file. Deductions shall be itemized and specific as to dollar amount and shall accurately reflect the value assigned to the betterment or depreciation.

Fla. Stat. § 626.9743(6).

The Court should reject Safeco's contention that the CCC Report shows it complies with § 626.9743(6) because it shows the amount of the Uniform Condition Adjustment applied to each comparable vehicle. Motion at 12-13. This ignores that § 626.9743(6) requires Safeco to maintain in its files not just itemized deductions for depreciation in specific amounts but ones that "accurately reflect the value assigned to the…depreciation." Signor pleads that the Uniform Condition Adjustments are not valid at all and certainly do not accurately reflect depreciation of the total loss vehicles. Complaint ¶¶ 23-24 (at pages 8-9). Safeco's detailing of the CCC Report's description of the condition adjustments to the total loss vehicle (Motion at 13) is simply irrelevant, because the "Uniform Condition Adjustments" are the uniform price reductions to the comparable vehicles, which are not described at all.

*Signor v. Safeco Insurance Company of Illinois*
Civil Case No. 0:19-cv-61937-WPD
 - Plaintiff's Response in Opposition to Safeco's Motion to Dismiss

Page
14

VI.     **Count III States a Cause of Action for Safeco's Breach of its Policy by Failing to Pay Dealer Fees.**

A.      On its face, the Policy requires Safeco to pay dealer fees.

Safeco argues nothing in the Policy requires it to pay dealer fees. Motion at 14. However, the Policy provides coverage for "direct and accidental loss to your covered auto" and it makes its maximum liability for a total loss "the actual cash value of the stolen or damaged property" Complaint ¶8. Florida common law defines "actual cash value" to mean "replacement cost minus depreciation." *Sos v. State Farm Mut. Auto. Ins Co,* 2019 WL 3940227, at * 3 (M.D. Fla. Mar. 13, 2019) (auto policy); *Trinidad,* 121 So. 3d at 438. Since the Policy does not specifically mention dealer fees, the issue becomes whether Florida law would interpret the replacement cost of an auto to include dealer fees. It would.

In *Roth v. Geico Gen. Ins. Co.*, the court addressed whether an actual cash value auto policy provided coverage for sales tax and title fees, and it held that:

> The term "actual cash value" (hereinafter, sometimes abbreviated by the Court as "ACV") is defined in the Policy as "the replacement cost of the auto or property less depreciation or betterment." … [N]othing in the Policy requires a[n] insured to replace their total loss vehicle with… any vehicle at all.
> Plaintiff asserts that sales tax and title transfer fees are mandatory, necessarily included in the replacement costs of a total loss vehicle, and therefore are components of actual cash value under the Policy. The Court agrees. Sales tax and title transfer fees are mandatory fees imposed by Florida law on the replacement of all vehicles. *See* Fla. Stat. § 212.05 (sales tax); § 319.34 (title transfer fee). Further, settled law in the Eleventh Circuit, applying Florida law, is that when an insurer provides an actual cash value insurance policy covering the cost to repair or replace damaged insured property, it must pay all of the costs that are included in the cost of replacement or repair of the property. *See Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1305 (11th Cir. 2008) ("[T]axes are not unambiguously excluded from actual cash value coverage ... [p]art of 'the cost' of new materials is the taxes paid to purchase those materials").

2018 WL 3412852, at *3-4 (S.D. Fla. June 14, 2018). *See also Sullivan v. Gov't Employees Ins. Co.*, 2018 WL 3650114, at *5-6 (M.D. Fla. April 6, 2018) (denying Geico's motion to dismiss a claim for breach of an auto policy based on Geico's failure to pay title/license fees).

*Signor v. Safeco Insurance Company of Illinois*
Civil Case No. 0:19-cv-61937-WPD
  - Plaintiff's Response in Opposition to Safeco's Motion to Dismiss

Page
15

In *Bastian,* 150 F. Supp. at 1289, as discussed above, the court held an auto policy with a virtually identical definition of "actual cash value"[8] required "payment of sales tax in the amount that would be due on the purchase of a vehicle of comparable value to the covered vehicle at the time of loss" and "regardless of whether they [the plaintiffs] actually decide to purchase one [ comparable vehicle]." Like the *Roth* court, the *Bastian* court cited the Eleventh Circuit's *Mills* decision in support. *Id.* at 1290.

And, it is *Mills* that makes clear that dealer fees fall under "replacement cost" even though Florida law does not mandate their payment like sales tax and title/license fees. In the context of a mobile home insurance policy that defined actual cash value to mean replacement cost, the Eleventh Circuit held that replacement cost included not only sales tax but also the contractor overhead and profit the policyholder could reasonably be expected to incur. 511 F.3d at 1305-06. Dealer fees are no different than contractor overhead and profit, and Signor pleads that policyholders can reasonably expect to incur them because they are charged by every used car dealer in Florida. Complaint ¶ 34 (at page 12).

In the face of the overwhelming Florida authority that its actual cash value/replacement cost policy requires payment of dealer fees, Safeco provides no contrary case law.

B.      § 626.9743(5)(a) is incorporated into the Policy and requires Safeco to pay dealer
        fees.

Section 626.9743(5)(a) provides that a cash settlement on a total loss must pay "the actual cost to purchase a comparable motor vehicle, including sales tax…." The plain meaning of "actual cost to purchase" is the same as "replacement cost"—everything a policyholder could reasonably expect to have to pay to purchase a comparable vehicle, which would include sale tax, title/license fees and dealer fees.

The Legislature made clear it intended exactly that by adding "including sales tax." "Including" means "in addition to, not to the exclusion of" or put another way, "including" "connotes an illustrative application of the general principle." *Pro-Art Dental Lag, Inc. v. V-Strategic Group, LLC*, 986 So. 2d 1244, 1256 (Fla. 2008) (quoting in part *Fed. Land Bank of. St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941)). So, sales tax constitutes just an

---

[8] "Actual cash value means the amount it would cost, at the time of loss, to buy a comparable vehicle." *Id.* at 1289.

*Signor v. Safeco Insurance Company of Illinois*
Civil Case No. 0:19-cv-61937-WPD
    - Plaintiff's Response in Opposition to Safeco's Motion to Dismiss

Page
16

example of part of the "actual cost of purchase" which cannot be differentiated from title/license fees and dealer fees.

C.     Dealer Fees Are Not Illegal

Safeco misleadingly claims that a statue and administrative code provision regulating auto dealers declare dealer fees illegal. Motion at 14. Safeco starts by selectively quoting from Fla. Stat. § 501.976(11) which states in full that dealers may not:

> (11) Add to the cash price of a vehicle as defined in s. 520.02(2) any fee or charge other than those provided in that section and in rule 69V-50.001, Florida Administrative Code. **All fees or charges permitted to be added to the cash price by rule 69V-50.001, Florida Administrative Code, must be fully disclosed to customers in all binding contracts concerning the vehicle's selling price.** (emphasis added to portions of this sub-section that Safeco did not cite).

Safeco then cites to Fla. Admin. Code § 69V-50.001 and its list of permissible charges which does not include dealer fees and argues their exclusion means they are illegal. Motion at 14.

Safeco conveniently ignores the opening language of § 69V-50.001 which states "**Other than the items and charges properly included as part of the cash price as defined in section 520.02(2), F.S**., the following are the only charges permitted to be made by the retail installment seller…." (emphasis added). Fla. Stat. § 520.02(2) provides:

> (2) "Cash price" means the price at which a seller, in the ordinary course of business, offers to sell for cash the property or service that is the subject of the transaction. **At the seller's option, the term "cash price" may include the price of** accessories, **services related to the sale,** service contracts, taxes and fees for license, title, and registration of the motor vehicle. The term "cash price" does not include any finance charge. (emphasis added).

So, by incorporation, Fla. Stat. § 501.976(11) and Fla. Admin. Code § 69V-50.001 not only do not make illegal dealer fees (the price of services related to the sale), they specifically authorize their inclusion in the cash price of a car.

The Legislature's passage of Fla. Stat. § 501.976(16) & (18) confirms the legality of dealer fees. They regulate the disclosure in advertisement and retail installment contracts of "dealer preparation charges" and "…charge[s] represent[ing] costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale" (i.e., the "dealer fees" exactly as pled in the Complaint ¶ 4 at page 2). Certainly, the

*Signor v. Safeco Insurance Company of Illinois*
Civil Case No. 0:19-cv-61937-WPD
   - Plaintiff's Response in Opposition to Safeco's Motion to Dismiss

Page
17

Legislature would not have bothered to regulate the advertisement and disclosure of illegal fees.

**VII.   Count IV States a Cause of Action for Safeco's Breach of the Policy by Requiring Total Loss Policyholders to Transfer Title to Their Total Loss Vehicles in Return for Payment of Their Total Loss claims or By Deducting the Salvage Values from the Total Loss Payments.**

Signor and Safeco agree that Safeco must pay total loss policyholders the actual cash values of their total loss vehicles, whatever that may be. Signor alleges Safeco cannot condition such payments on policyholders transferring title to Safeco of their total loss vehicles without the Policy expressly stating this condition, which it does not. Complaint ¶¶ 27-28 (at pages 12-13).  Safeco absurdly tries to turn the tables by arguing that Signor points out no provision of the Policy that allows policyholders to receive actual cash value for total loss vehicles and keep title to them. Motion at 14-15. This argument fails for two reasons.

First, as set forth above, the Comprehensive and Collision coverages of the Policy contain unconditional promises to pay for "loss" to covered vehicles, which means paying actual cash value (replacement cost less depreciation) on total losses. Nothing in the Policy requires insureds to give up ownership of the total loss vehicles to receive their actual cash value payments. Likewise, nothing in the Policy defines actual cash value to mean replacement cost less depreciation less salvage value. So, the Policy does expressly allow insureds to receive actual cash value payments without giving up ownership of the total loss vehicles.

Second, even if the Policy were silent on this issue, Florida law places the burden upon Safeco in the Policy to expressly state any condition that policyholders must *give their property to Safeco* in exchange for payment of covered losses. *See* Fla. Stat. § 627.413(1) (requiring insurance policy to "specify" risks insured against and "any conditions" applying to that coverage); *Berkshire Life Ins. Co. v. Adelberg*, 698 So. 2d 828, 830 (Fla. 1997) (holding insurance policy must provide insureds with clear and specific explanation of its terms). Indeed, this Court has ruled that a salvage claim like Signor's presents a "monumental coverage question" to be interpreted under the Policy, which is an integrated contract whose text is to be understood by its "plain meaning" to the "average person." *Lopez v. Progressive Select Ins. Co.*, 2019 WL 4731644, at *2-3 (S.D. Fla. May 14, 2019).

*Signor v. Safeco Insurance Company of Illinois*
Civil Case No. 0:19-cv-61937-WPD
  - Plaintiff's Response in Opposition to Safeco's Motion to Dismiss

Page
18

At a minimum, the Policy's silence on this point renders it ambiguous, and the Court must construe such ambiguity in Signor's favor. *Penzer v. Transp. Ins. Co.*, 29 So. 3d 1000, 1005 (Fla. 2010). Certainly, such ambiguity makes dismissal at the pleading stage improper. *See Bloomgarden v. Allstate Fire & Cas. Ins. Co.*, 2019 WL 5209015 (S.D. Fla. Aug. 6, 2019) (rejecting magistrate's dismissal of salvage claim like plaintiff's because court could not "resolve ambiguities in [the insurance] contract at the motion to dismiss stage."); *accord Larach v. Standard Chartered Bank Int'l (Americas) Ltd.*, 724 F.Supp.2d 1228, 1239 (S.D. Fla. 2010) (denying motion to dismiss the differing interpretations of the contract were not yet ripe for ruling).

Under similar circumstances, courts have agreed that an insurer can breach a policy by imposing a condition not found on the face of a policy. In *Bastian*, 150 F. Supp. 3d at 1295, the insurer required insureds to purchase a replacement vehicle in order to receive payment of sales tax on a total loss, and the court **granted summary judgment** to the insured that the insurer had breached the policy stating that if it wished to impose such condition, "it must expressly elicit this option in its policies so as to provide its insureds with due notice." Similarly, in *Roth*, 2018 WL 3412852, at *3-4, the court granted summary judgment to the insured that the insurer breached the policy by imposing a condition found nowhere on the face of the policy: that it would only pay sales tax on owned, not leased, vehicles.

In the face of this Florida law making it a breach to impose a condition not found on the face of a policy, Safeco resorts to a general insurance policy principle, claiming Signor by receiving the actual cash value (replacement cost less depreciation) and retaining salvage value of her totaled vehicle would receive a "prohibited double-recovery." Motion at 15. Initially, "double-recovery" refers to an insured receiving two payments, not receiving one payment and retaining its own property. Further, Safeco does not cite any case law supporting that "actual cash value" includes the post-loss (salvage) value of her totaled vehicle. To the contrary, "[i]n the appraisal and insurance industries, the term "actual cash value" is often used to describe the *pre-loss* value of certain property…" *Goff v. State Farm FL*, 999 So. 2d 684 n. 6 (Fla. 2d DCA 2009) (emphasis added).

In any case, as Safeco drafted its Policy, it "is bound by the language of the policy," irrespective of whether it has struck a good or bad bargain regarding salvage. *Adelberg,* 698

*Signor v. Safeco Insurance Company of Illinois*
Civil Case No. 0:19-cv-61937-WPD
 - Plaintiff's Response in Opposition to Safeco's Motion to Dismiss

Page
19

So. 2d at 830.  Reading terms or limitations or conditions into an insurance policy violates Florida law.  *See Monticello Ins. Co. v. City of Miami Beach*, 2009 WL 667454, at *11 (S.D. Fla. Mar. 11, 2009).

Of course, no great challenge would have existed for Safeco to specifically and unambiguously require policyholders to transfer title to their total loss vehicles in exchange for payment, as it must under Florida law.  *See, e.g., Spanier v. State Farm,* Case No. 0:17-cv-61099-KAM, ECF No. 57-1 at 39 of 54 (S.D. Fla. June 23, 2017) (policy stating, "[t]he damaged covered vehicle must be given to us in exchange for our payment, unless we agree that the owner may keep it. If the owner keeps the covered vehicle, then our payment will be reduced by the value of the covered vehicle after the loss."); *Bettor v. Esurance,* Case No. 0:18-cv-61860-FAM, ECF No. 6-1 at 52 of 71 (SD. Fla., Sept. 24, 2018) (policy stating "[a]ny payment for damaged property will be reduced by the applicable deductible shown on your Declarations page and by the salvage value if you or the owner retain the salvaged property"). That State Farm and Esurance expressly included this language in their policies demonstrates that a silent policy does not allow an insurer to take salvage vehicles or values as a condition to making actual cash value payments on total loss vehicles.

**VIII.   Conclusion.**

For the foregoing reasons, Safeco's Motion should be denied.[9]

Respectfully Submitted,

/s/Scott R. Jeeves
Scott R. Jeeves, Esquire FBN 0905630
Primary Email:
sjeeves@jeeveslawgroup.com
Secondary Email:
khill@jeeveslawgroup.com
rmandel@jeevesmandellawgroup.com
**THE JEEVES LAW GROUP, P.A**.
954 First Avenue North
St. Petersburg, FL 33705

---

[9] To the extent this Court grants all or any portion of Safeco's Motion, Signor requests leave to amend her Complaint to correct any identified deficiencies.  *See Foman v. Davis*, 371 U.S. 178 (1962).

*Signor v. Safeco Insurance Company of Illinois*
Civil Case No. 0:19-cv-61937-WPD
- Plaintiff's Response in Opposition to Safeco's Motion to Dismiss

Page
20

Telephone: (727) 894-2929

and

Craig E. Rothburd, Esquire FBN 49182
Email: craig@rothburdpa.com
maria@rothburdpa.com
**CRAIG E. ROTHBURD, P.A.**
320 W. Kennedy Blvd., Suite 700
Tampa, FL 33606
Telephone: (813) 251-8800

and

Casim Adam Neff, Esquire FBN 94030
Email: cneff@neffinsurancelaw.com
**Neff Insurance Law, PLLC**
P.O. Box 15063
St. Petersburg, FL 33733-5063
 Telephone: (727) 342-0617

and

Ben Dampf, Esquire
ben@whaleylaw.com
**WHALEY LAW FIRM**
6700 Jefferson Highway
Building 12, Suite A
Baton Rouge, LA  70806
Telephone: 225-302-8810

and

Edward H. Zebersky, Esquire
Email:  ezebersky@zpllp.com
Mark Fistos, Esquire
Email:  mfistos@zpllp.com
**Zebersky Payne, LLP**
110 Southeast 6th Street
Suite 2150
Ft. Lauderdale, FL  33301
Tel:  954-989-6333
Fax:  954-989-7781

and

*Signor v. Safeco Insurance Company of Illinois*
Civil Case No. 0:19-cv-61937-WPD
 - Plaintiff's Response in Opposition to Safeco's Motion to Dismiss

Page
21

Alec Schultz, Esquire
Email:  aschultz@leoncosgrove.com
**Leon Cosgrove, LLP**
255 Albambra Circle
Suite 800
Miami, FL  33134
Tel:  305-740-1975
Fax: 305-437-8158

*Attorneys for Gina Signor and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2020, the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to counsel of record on the below service list.

/s/Scott R. Jeeves
Scott R. Jeeves, Esquire

*Signor v. Safeco Insurance Company of Illinois*
Civil Case No. 0:19-cv-61937-WPD
  - Plaintiff's Response in Opposition to Safeco's Motion to Dismiss

Page
22

<u>**SERVICE LIST**</u>

*Gina Signor, on behalf of herself and all others similarly situated*
*v. Safeco Insurance Company of Illinois*
Case No: 0:19-cv-61937-WPD

Steven M. Appelbaum
ARNSTEIN & LEHR, LLP
200 South Biscayne Blvd.
Suite 3600
Miami, Florida 33131
Telephone: (305) 428-4500
Fax: (305) 397-2155
Steven.Appelbaum@saul.com

*Counsel for Defendant*

James A. Morsche
(*pro hac vice* granted)
Casey Grabenstein
(*pro hac vice* granted)
SAUL EWING ARNSTEIN & LEHR LLP
161 North Clark, Suite 4200
Chicago, IL
Tel: (404) 572-4600
Fax: (404) 572-5100
jim.morsch@saul.com
Casey.Grabenstein@saul.com

*Counsel for Defendant*

*Signor v. Safeco Insurance Company of Illinois*
Civil Case No. 0:19-cv-61937-WPD
 - Plaintiff's Response in Opposition to Safeco's Motion to Dismiss

Page
23