UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 0:19-cv-61937-WPD

GINA SIGNOR,

        Plaintiff,

v.

SAFECO INSURANCE COMPANY OF ILLINOIS,

        Defendant.
_____/

**SAFECO INSURANCE COMPANY OF ILLINOIS'**
**REPLY IN SUPPORT OF ITS RULE 12(b)(6) MOTION TO DISMISS**

    The several mistaken references to "Geico" throughout Signor's response to Safeco's motion to dismiss confirm that this case is just a repeat of other cases plaintiff's counsel has filed against insurance companies in Florida seeking to transform a simple valuation dispute into a class action. The Court should follow the holdings of those Florida courts which have already considered and dismissed the same theories and allegations raised here. In particular, the Court should follow *A&M Gerber Chiropractic LLC v. GEICO* and *Lopez v. Progressive* and dismiss Signor's count seeking declaratory relief since there is no reasonable threat of a future injury to Signor and also because Signor does not have standing to assert a claim for an alleged violation of the Claim Settlement Statute.

    The Court should also follow *Bloomgarden v. Allstate* and dismiss Signor's allegations relating to the salvage value of her vehicle since there is no requirement in her policy to reimburse her for that value, and doing so would result in a windfall for Signor. Signor's allegations relating to "dealer fees" fail for the same reasons: there is no requirement in Signor's policy or Florida law to reimburse her for dealer fees – especially since such fees are either built into the advertised prices used by Safeco to arrive at its actual cash value estimate or, if charged separately, illegal.

    Even assuming she has standing to pursue her claims under Florida's Claim Settlement Statute, Signor also fails to allege a plausible violation of the two provisions she cites – subsection (5) and subsection (6) of the Statute. As a threshold matter, this Court's recent

1

decision in *Glover v. Liberty Mut. Ins. Co.* makes clear that the methods of valuation listed in the statute are not exhaustive, and therefore, Signor cannot sue Safeco for failing to follow them. Even if the methods listed were exhaustive, the Complaint shows that Safeco complied with subsection (5) by considering the cost of comparable vehicles and using a generally recognized motor vehicle industry source to value Signor's vehicle. Likewise, the Complaint establishes that Safeco complied with the recordkeeping requirements of subsection (6) by maintaining a claim file for Signor and providing her with information relating to the betterment and depreciation adjustments to her vehicle.

At bottom, Florida courts have already considered all of the legal issues and theories implicated by Signor's Complaint. There is nothing new or different about Signor's case. The Court should follow existing precedent and dismiss Signor's Complaint with prejudice.

**I.     Signor's Claim For Declaratory Relief Fails As A Matter Of Law.**

**A.     There Is No Risk Of Harm To Signor**

Safeco demonstrated in its opening brief that Signor does not have standing to pursue declaratory relief under Eleventh Circuit and this Court's precedent in cases brought by the same plaintiff's counsel. Mot. at 10-12; *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1215 (11th Cir. 2019). Considering a similar claim for declaratory relief in another insurance case, the Eleventh Circuit dismissed the claim because the probability of a similar future injury to the plaintiff was extremely low. *Id.* According to the court, "we can see no potential future threat to [insured], other than the possibility that he may someday be in another car accident; sustain an injury entitling him to PIP benefits; and still be insured by GEICO under the same or a similar policy being interpreted the same way, thereby having this issue present itself again. But, that is too contingent to constitute a 'substantial likelihood' of future injury." *Id.* This Court reached a similar result in *Lopez v. Progressive Select Ins. Co.,* No. 0:18-CV-61844-WPD, 2019 WL 4731644, at *4 (S.D. Fla. May 14, 2019) ("[I]t is clear that the Court lacks subject matter jurisdiction to adjudicate Plaintiff's claim for declaratory relief").

In her response, Signor attempts to sidestep these cases by arguing in conclusory fashion that there is "a present, existing controversy between her and Safeco." Resp. at 1. But in support of her argument, Signor cites a handful of cases holding that declaratory relief can be sought when an insurance company ***denies coverage***. *Id.* (citing *Loveland v. State Farm*; *Gov't Emps. Ins. Co. v. Dizol*). This is not a coverage dispute. Safeco admitted coverage and paid Signor's

2

claim; she simply disputes the payment amount. Compl. ¶¶ 30-31. Accordingly, nothing in Signor's response undermines the Eleventh Circuit's or this Court's prior guidance on standing in insurance cases seeking declaratory relief. Because there is not a realistic risk of future harm to Signor, the Court should dismiss her declaratory relief claim in Count I.

### B. There Is No Private Right of Action Under Fla. Stat. § 626.9743

Safeco also demonstrated that Count I should be dismissed because there is no private right of action for a violation of Fla. Stat. § 626.9743. Mot. at 5-6. Signor appears to concede this point but attempts to re-style her declaratory relief claim as one for breach of contract. Resp. at 4. To support this shift in theory, Signor again cites cases involving disputes over coverage or liability. *Id.* But as explained above, those cases are irrelevant since there is no dispute regarding coverage here.

In any event, the Eleventh Circuit has already considered and rejected attempts to re-frame statutory claims as claims for breach of contract. *Keehn v. Carolina Cas. Ins. Co.*, 758 F.2d 1522 (11th Cir. 1985). In *Keehn*, the plaintiff attempted to avoid the limitations of UITPA by creatively reframing a direct statutory claim as a common law claim for breach of an insurance policy. The *Keehn* court rejected this argument, holding that "the UITPA affords plaintiffs no cause of action, either by its own terms or incorporation into the contract of insurance." *Id.*

In her response, Signor makes several attempts to distinguish *Keehn*, but they all fail. Plaintiff first argues that *Keehn* has been "impliedly" overruled by *Silver Star* and *Westside EKG*. However, the Eleventh Circuit follows precedential decisions interpreting state law absent subsequent state decisions overruling or casting doubt on the Eleventh Circuit's interpretation of state law. *EmbroidMe.com, Inc. v. Travelers Prop. Cas. Co. of Am.*, 845 F.3d 1099, 1105 (11th Cir. 2017). Neither case comes close to suggesting that *Keehn* was overruled. The statute at issue in *Silver Star **required*** compliance with all criminal, civil, and administrative requirements related to medical services. *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 583 (11th Cir. 2013). In contrast, Section 626.9743 has no such requirement. Similarly, the HMO Act at issue in *Westside EKG* did not foreclose common law contract actions for breach of statutory requirements. *Found Health v. Westside EKG Assocs.*, 944 So. 2d 188, 196 (Fla. 2006). In contrast, the UITPA expressly declines to extend a private cause of action based upon Section 626.9743. *See* Fla. Stat. § 624.155.

3

Plaintiff also argues that *Richardson* and *Glover* signal the "death of *Keehn.*" Resp. at 5. This argument misses the mark as well. Unlike Signor's insurance policy, *Richardson* involved an insurance policy that ***expressly*** incorporates Florida law. *Richardson v. Progressive Am. Ins. Co.*, No. 218CV715FTM99MRM, 2019 WL 2287955, at *1 (M.D. Fla. May 29, 2019) ("The Policy states that its terms conform to Florida statutes."). And *Glover* does not even address declaratory actions. *Glover v. Liberty Mut. Ins. Co.*, No. 19-21900-CIV, 2019 WL 4917063, at *1 (S.D. Fla. Oct. 4, 2019) ("Plaintiff brings this putative class action alleging a single breach of contract claim . . . .").

Finally, Signor appears to argue that her claim for declaratory relief is actually a breach of contract claim. If that is the case, then the declaratory relief claim is duplicative and should be dismissed for this additional reason. *Berkower v. USAA Cas. Ins. Co.*, No. 15-23947-CIV, 2016 WL 4574919, at *5 (S.D. Fla. Sept. 1, 2016) (dismissing declaratory claim that duplicated breach of contract claim, holding that the "declaratory action must be dismissed.").

## II.  Signor Has No Right To Retain The Salvage Value Of Her Vehicle.

Safeco also demonstrated in its motion that Signor has no right to retain the salvage value of her vehicle since Safeco's liability is expressly limited to the actual cash value of the vehicle under the "Limit of Liability" section of Signor's policy. Mot. at 14-15. When faced with similar language, courts have rejected efforts by plaintiffs, including the same plaintiff's counsel at issue here, to recoup salvage fees on top of the actual cash value of the vehicle. *Bloomgarden v. Allstate Fire & Cas. Ins. Co.*, No. 18-62059-CIV, 2019 WL 2245475, at *7 (S.D. Fla. Mar. 15, 2019), *report and recommendation affirmed*, No. 18-62059-CIV, 2019 WL 5209015 (S.D. Fla. Aug. 6, 2019). In *Bloomgarden*, the court found that "neither the Policy nor Florida law requires Allstate to compensate policyholders for the salvage value of totaled vehicles, in addition to the Actual Cash Value." *Id.* In her response, Signor argues that the policy is ambiguous and should be construed in favor of Signor. Resp. at 18-19. Signor, however, completely ignores the Limit of Liability provision which removes any ambiguity in the policy. The Court should dismiss Count IV because Safeco is not required to reimburse Signor for her vehicle's salvage value under the clear and express terms of her policy.

In addition, allowing Signor to recover both the actual cash value of her vehicle and the salvage value would lead to a double-recovery. *Id.* at 15. As this Court found in *Bloomgarden*, Signor's theory of the case "would lead to an anomalous result by placing an insured in a better

4

position than before the loss, which would further violate the Policy and well-accepted legal principles." *Bloomgarden*, No. 18-62059-CIV, 2019 WL 2245475, at *6. The court illustrated this absurd result through a hypothetical. "Were Bloomgarden permitted to recover the $5,500 actual cash value (including deductible) for his vehicle and also to recover the $1,000 salvage value, he would recover a total of $6,500. This amount would be more than the actual cash value of the vehicle—an impermissible result under the Policy, which caps Allstate's liability at 'the actual cash value of the property at the time of the loss.'" *Id.* at *17-18. Accordingly, the court dismissed the plaintiff's salvage value claim with prejudice. Because the facts and circumstances are identical here, the Court should reach the same result.

### III.     Safeco Has No Obligation To Pay Dealer Fees.

Safeco also demonstrated in its opening brief that the Court should dismiss Count III because Safeco has no obligation to pay dealer fees. As Safeco explained, (a) there is no provision in Signor's policy referencing dealer fees, (b) none of the statutory provisions cited in the Complaint require the payment of dealer fees, and (c) non-itemized dealer fees are illegal. Mot. at 13-14. In response, Signor first argues that dealer fees are included in the "actual cash value" of the vehicle by relying on four cases – *Roth*, *Sullivan*, *Bastian*, and *Mills*. Resp. at 15-16. But none of those cases involved dealer fees. Signor has not identified any precedent or authorities holding that Safeco is obligated to pay dealer fees. This Court should dismiss Count III for this reason alone.

Signor then takes the Court through a tortured reading of Fla. Stat. § 501.976(11), Fla. Stat. § 520.02(2), and Fla. Admin Code § 69V-50.001 in order to prove that dealer fees are actually legal. But these provisions only demonstrate that dealers have the "option" to include such a fee in the "cash price" at which the dealer "offers to sell" the vehicle Fla. Stat. § 520.02(2). If charged, the fee must be itemized in the sales contract. Fla. Stat. 501.976(11). If the fee is not disclosed, it is ***illegal***. *Id.*

Because a dealer may or may not charge such a fee at its "option," the cost Signor wants reimbursed is purely hypothetical. Illustrating this point is the fact that Signor does not allege that she or any class member actually incurred a dealer fee in purchasing a replacement vehicle. Moreover, by using a valuation methodology that utilizes advertised prices of comparable vehicles, Safeco has already built any "dealer fees" into the actual cash value offer paid to Signor. Finally, to the extent Signor is alleging that she might be charged dealer fees that were

5

not itemized but would be subsequently added to the purchase price for her replacement vehicle, that would be illegal under Florida law. Safeco has no obligation to reimburse Signor for such illegally-charged dealer fees.

### IV. Signor's Claim Under Subsection (5) Of The Claims Settlement Statute Fails.

Safeco has also shown that Fla. Stat. § 626.9743(5) provides a permissive list of methods to value vehicles which is not exhaustive. Mot. at 7-10. *See Bastian v. United Svcs. Auto. Ass'n*, 150 F. Supp. 3d 1284, 1295 (M.D. Fla. 2015) (analyzing the same statute at issue here, Fla. Stat. § 626.9743, and holding that the use of the permissive word "may" in Florida's insurance code indicates that a provision is *not* automatically incorporated into insurance contracts). In between the filing of Safeco's motion and this reply brief, this Court confirmed that subsection (5) only lists permissive options that an insurer "may" use to value a total loss vehicle. In *Glover v. Liberty Mut. Ins. Co.*, No. 19-21900-CIV, 2019 WL 4917063, at *7 (S.D. Fla. Oct. 4, 2019), the court explained that "[t]he Florida Legislature in section 626.9743(5) used the word 'including,' which like 'its more specific, arguably redundant cousin, **including**, *but* **not limited to**,' 'impl[ies] that there are necessarily more relevant factors than those [the Legislature] enumerated.' . . . Florida Legislature understood by using 'includes,' it was providing a non-exhaustive definition of the term ACV." *Id.* Accordingly, Signor's argument that Safeco violated subsection (5) by not using one of the expressly outlined methods of valuation necessarily fails under *Glover*.

Even if Safeco was required to use one of the methods of valuation listed in subsection (5), Signor does not allege sufficient facts to support her conclusion that Safeco failed to comply with any of those methods. As explained in Safeco's opening brief, Safeco complied with subsection (5)(a)(1) by considering the cost of two or more comparable vehicles. Resp. at 11. Signor responds by arguing that Safeco violated subsection (5)(a)(1) by using advertised prices instead of historical sales data. *Id.* at 12. But there is no requirement that Safeco use historic sales data instead of current advertised price data. In addition, this argument defies logic and common sense. Advertised prices are **higher** than final sales prices. Signor's theory about advertised versus sales price is also completely undermined by her claim that Safeco should have used Kelly Blue Book or NADA to estimate of the value of the total loss. Compl. at ¶ 17. KBB

6

also uses advertised, not sales prices, and NADA's prices are often inflated because it uses prices for "dealer-reconditioned" vehicles.[1]

Safeco also complied with subsection (5)(a)(2) by using CCC, "a generally recognized motor vehicle industry source." Mot. at 11-12. Signor responds by pointing to her allegation that CCC is not a generally recognized vehicle industry source. Resp. at 13. But that allegation is merely a conclusion. The only factual allegations underlying this conclusion are that CCC is not available to the general public, Compl. ¶ 19, and that it is used extensively by the insurance industry to value total loss claims. Compl. ¶¶ 17, 19. Subsection (5)(a)(2) does not impose a requirement that the "generally recognized vehicle industry source" be available to the public. And the fact that CCC's valuation software is utilized by many other insurance companies in Florida completely undermines Signor's unsupported conclusion. Finally, the court can take judicial notice of the fact that insurance regulators in other states have expressly approved CCC as a reliable source for valuing total loss claims. *See e.g.*, *Morgan v. MA Homeland Insurance Co.*, 91 Mass. App. Ct. 1, 11, fn 12 (2017) (comparing CCC with NADA and other "book value" methodologies, citing evidence that CCC is more accurate, and noting that the Massachusetts Commissioner of Insurance approved the use of CCC's methodology by insurers in that state).[2]

Finally, Safeco has also shown that it complied with subsection (5)(a)(3) by using two more vehicle "quotations" in the local market area. Mot. at 12. Signor responds by arguing that the advertised prices CCC used in its report are not "quotations." This hyper-technical argument is borderline frivolous. The advertised prices are the dealer's "quotes" for comparable vehicles at issue.

---

[1] Braucher, *Rash and Ride-Through Redux: The Terms for Holding on to Cars, Homes and Other Collateral Under the 2005 Act*, 13 Am. Bankr. Inst. L. Rev. 457, 466 (2005) ("Retail book values for vehicles will routinely be too high. In the case of the National Automobile Dealers Association Guide, the retail values given are for a dealer-reconditioned vehicle, so some deduction from retail book needs to be made to account for the fact that the debtor is retaining an un-reconditioned vehicle. In the case of the Kelley Blue Book, listed retail values are asking prices, not the amounts actually charged in sales and for a 'fully reconditioned' vehicle").

[2] *See also* Approval Notifications from New York, Pennsylvania, Connecticut, West Virginia, New Hampshire, Wyoming, and New Jersey, attached hereto as Exhibit A. The Court may take public documents into consideration when reviewing a motion to dismiss. *Adeniji v. Fla. State Coll.*, No. 3:14-CV-252-J-34MCR, 2014 WL 5437059, at *3 (M.D. Fla. Oct. 24, 2014).

## V.      Safeco Has Complied With Subsection (6) Of The Claims Settlement Statute.

Signor's own allegations also make clear that Safeco complied with subsection (6) of the Claims Settlement Statute.  Mot. at 12-13.  As Safeco pointed out in its opening brief, the Complaint specifically alleges that Safeco retained documents and information regarding any betterment or depreciation adjustments in Signor's claim file and provided that information to Signor in compliance with the Statute.  *Id.*  In response, Signor argues that Safeco's efforts to comply with the recordkeeping requirements of subsection (6) were insufficient because the records were not "accurate" and because Signor did not provide a detailed breakdown of the adjustments.  Both arguments result from Signor's misreading of the Claims Settlement Statute.

The Statute only requires that the stated deduction "accurately reflect the value assigned to the betterment or depreciation."  Fla. Stat. § 626.9743(6).  In other words, the Statute prevents an insurer from mispresenting (increasing or decreasing) the value of the betterment or depreciation adjustment it previously assigned for the vehicle.  There are no allegations in the Complaint that Safeco misrepresented the amount it previously calculated for depreciation and betterment.  That is because Safeco disclosed the precise amount that was assigned to the value of the betterment or depreciation of Signor's vehicle in the CCC valuation report provided to Signor.  Likewise, the Statute does not require a detailed explanation of each adjustment; it only requires that any adjustment be "itemized."  Fla. Stat. § 626.9743(6).  Safeco itemized the condition adjustment for Signor's vehicle on page six of her CCC Market Valuation Report.  Compl. Ex. at 6.  Safeco also itemized the condition adjustment to comparable vehicles at page eight of the Report.  *Id.* at 8.  At bottom, because Signor's Complaint and the documents attached to it establish that Safeco has complied with subsection (6) of the Claims Settlement Statute, the Court should dismiss any claims premised on subsection (6) with prejudice.

## CONCLUSION

For all the foregoing reasons, the Court should dismiss Signor's Complaint with prejudice.

**CERTIFICATE OF ELECTRONIC SERVICE**

I hereby certify that on January 21, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is being served this date on all counsel of record identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing: Scott R. Jeeves, Esq, THE JEEVES LAW GROUP, P.A., 954 First Avenue North, St. Petersburg, FL 33705; Craig E. Rothburd, Esq., CRAIG E. ROTHBURD, P.A., 320 W. Kennedy Blvd., Suite 700, Tampa, FL 33606; Casim Adam Neff, Esq., NEFF INSURANCE LAW, PLLC., P.O. Box 15063, St. Petersburg, FL 33733-5063; Edward H. Zebersky, Esq., Mark S. Fistos, Esq.; ZEBERSKY PAYNE, LLP., 110 SE. 61h Street, Suite 210, Ft. Lauderdale, FL 33301; Alec H. Schultz, Esq., Carly A. Kligler, Esq., LEON COSGROVE, LLP, 255 Alhambra Circle, Suite 800, Coral Gables, FL 33134, Benjamin H. Dampf, Esq., WHALEY LAW FIRM, 6700 Jefferson Highway, Building 12, Suite A, Baton Rouge, Louisiana 70806.

/*s/Steven M. Appelbaum*
Steven Appelbaum, Esq.
Florida Bar No. 71399
Steven.Appelbaum@saul.com
SAUL EWING ARNSTEIN & LEHR LLP
Southeast Financial Center
200 S. Biscayne Blvd., Suite 3600
Miami, FL 33131

James A. Morsch, Esq.
Casey Grabenstein, Esq.
(Admitted Pro Hac Vice)
SAUL EWING ARNSTEIN & LEHR LLP
161 North Clark, Suite 4200, Chicago, IL

36446111.4