UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:19-cv-61937-WPD

GINA SIGNOR,

        Plaintiff

v.

SAFECO INSURANCE COMPANY OF ILLINOIS,

        Defendant.
_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant, Safeco Insurance Company of Illinois's Rule 12(b)(6) Motion to Dismiss [DE 10] (the "Motion"), filed on August 15, 2019. The Court has carefully considered the Motion, Plaintiff's Response [DE 35], Defendants' Reply [DE 39], and is otherwise fully advised in the premises. For the reasons stated herein, the Court will deny the Motion to Dismiss.

### I.   BACKGROUND

Plaintiff Gina Signor ("Signor" or "Plaintiff") filed this putative class action against Safeco Insurance Company of Illinois ("Safeco" or "Defendant") in Florida state court on June 25, 2019. *See* Am. Compl. [DE 1-1] ("AC"). The Complaint alleges four counts; a claim for declaratory relief under Florida Statute § 86.021; a claim for breach of contract for Defendant's use of the CCC ONE Market Value system ("CCC System"); a claim for breach of contract for Defendant's failure to pay dealer fees; and a claim for Defendant's taking of the salvage value of

Plaintiff's total loss vehicle. Defendant removed this case on August 1, 2019, and the Court denied Plaintiff's Motion to Remand on December 11, 2019. *See* [DE 27].

Plaintiff pursues this action on behalf of herself and a putative class of Florida Safeco personal automobile policy holders. AC 17.  Plaintiff's breach of contract and declaratory relief claims arise out of Safeco's alleged failure to properly settle total loss claims. AC 1.

Plaintiff's claim for declaratory relief, Count I, alleges Plaintiff and other class members are uncertain of their rights under the Policy and Florida law and wish to obtain a declaration of their rights thereunder. AC 22.

In Count II, Plaintiff lays out a breach of contract claim based on Defendant's use of the CCC System. *See* AC 22-25. According to Plaintiff, Defendant's use of the CCC System does not satisfy Plaintiff's insurance policy with Defendant (the "Policy") on its face or as amended to conform with Florida law. AC 9-12. In particular, Plaintiff alleges 1) Defendant's use of the CCC system fails to comply with the options for settling a total loss claim on the basis of actual cash value and 2) Defendant has failed to maintain proper documentation of the deductions and adjustments made to the amount offered by Defendant to settle Plaintiff's total loss claim. AC 11-12.

In addition, Plaintiff brings a breach of contract claim, Count III, based on Defendant's refusal to pay "dealer fees" which Plaintiff alleges are included in the definition of "actual cash value" as provided for by the Policy and Florida law. AC 12. Finally, Plaintiff brings a breach of contract claim, Count IV, for Safeco's allegedly impermissible taking of the salvage value of insureds' total loss vehicles. Plaintiff alleges that Safeco took the salvage value of insureds' total loss vehicles, even though such a condition or deduction is not provided for in the Policy.  AC 13.

Defendant moves to dismiss all four counts.

## II. LEGAL STANDARD

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). When determining whether a claim has facial plausibility, "a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007).

However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. "Mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, and a plaintiff cannot rely on naked assertions devoid of further factual enhancement." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). In sum, "[t]he plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

### A. *Count I: Claim for Declaratory Relief*

According to Defendant, Plaintiff lacks standing to bring a claim for declaratory relief. Defendant argues Plaintiff lacks Article III standing to bring a claim for declaratory relief due to the lack of a realistic threat of future harm. In addition, Defendant argues that the statutory provisions regarding which Plaintiff seeks a declaratory judgment do not provide a private right of action.

"Article III of the Constitution limits federal courts to adjudicating actual 'cases' and 'controversies.'" *See A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019). A key component of the "case or controversy" requirement is a plaintiff's standing to bring his or her claims. *Id.* The doctrine of standing encompasses three requirements, 1) an injury-in-fact, 2) which is fairly traceable to defendant's conduct, and 3) redressable by the court. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). The federal Declaratory Judgment Act also limits relief to actual cases or controversies. *See A&M Gerber*, 925 F.3d at 1210.[1] "In order to demonstrate that there is a case or controversy that satisfies Article III's standing requirement when a plaintiff is seeking declaratory relief—as opposed seeking damages for past harm—the plaintiff must allege facts from which it appears that there is a 'substantial likelihood that he will suffer injury in the future.'" *See A&M Gerber*, 925 F.3d at 1210–11 (quoting *Malowney v. Federal Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999)).

---

[1]Though the complaint is based on Florida Statute, Chapter 86, the Court applies the federal Declaratory Judgment Act, 28 U.S.C. § 2201. *Nirvana Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 589 F. Supp. 2d 1336, 1343 (S.D. Fla. 2008). Both the federal and state declaratory judgment acts are procedural in nature. *See Id.*; *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937). As a federal court sitting diversity, this Court must apply federal law to this procedural matter. *See McMahan v. Toto*, 256 F.3d 1120, 1131 (11th Cir. 2001), *amended on reh'g*, 311 F.3d 1077 (11th Cir. 2002).

In *A&M Gerber Chiropractic LLC v. GEICO General Insurance Company*, the Eleventh Circuit held that a plaintiff who stated only a claim for declaratory relief did not have standing where Plaintiff failed to allege a risk of future injury. *See Id.* at 1215. In so holding, the Eleventh Circuit found that the potential future possibility that the insured may still be insured by the defendant "under the same or a similar policy being interpreted the same way, thereby having this issue present itself again…is too contingent to constitute a "substantial likelihood" of future injury." *See Id*. However, in *A&M Gerber¸* the Court made clear that plaintiffs would have standing where they "alleged that the insurer 'paid [them] less on the claim than [they] contend[ed] they [were] owed,'" *Id*. at 1214. In summary the Court stated, "[i]n the absence of a claim for money damages or substantial likelihood that [the insured] will suffer a future injury— both of which [plaintiff] was careful to avoid alleging here—[plaintiff] has no standing to pursue this case." *Id.* at 1216.

Here, Plaintiff clearly brings a claim for money damages in addition to a claim for declaratory relief under the insurance Policy. *See* AC 25, ¶ 42; AC 26 ¶ 46; AC 26 ¶ 50; AC 27. As such, Plaintiff has standing under relevant Eleventh Circuit precedent to bring a declaratory judgment claim to adjudicate her rights under the insurance Policy.

The Court notes that Defendant cites a previous order from this Court in the case *Lopez v. Progressive*, in which this Court dismissed a similar claim for declaratory relief. That Order relied on a version of *A&M Gerber* which has subsequently been vacated and superseded on rehearing. *See A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 921 F.3d 1273 (11th Cir.), *withdrawn from bound volume, opinion vacated and superseded on reh'g,* 925 F.3d 1205 (11th Cir. 2019). This Court finds Plaintiff Signor has standing to bring a claim for declaratory

relief under the analysis articulated in the Eleventh Circuit's May 30, 2019 superseding opinion in *A&M Gerber. See* 925 F.3d 1205 (11th Cir. 2019).

Defendant also argues that Plaintiff does not have standing to bring a statutory claim for declaratory relief because Florida's Unfair Insurance Trade Practices Act ("UITPA") does not provide a private cause of action for violations of Florida Statute § 626.9743. In response, Plaintiff asserts that her claim for a declaratory judgment as to her rights under the Policy as amended to comply with § 626.9743 may be brought under both the Florida declaratory relief act and the federal Declaratory Judgment Act.

The federal Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction… any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *See* 28 U.S.C.A. § 2201. In the context of claims for declaratory relief, the Supreme Court's jurisprudence dictates that the case or controversy must be "definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotations omitted). As discussed above an actual case or controversy of a definite and concrete nature exists in the present case. The Supreme Court has also articulated that, as a procedural statute, *see Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937), the federal Declaratory Judgment Act "presupposes the existence of a judicially remedial right," *see Schilling v. Rogers,* 363 U.S. 666, 677 (1960). In addition to the claim for declaratory relief, Plaintiffs bring multiple breach of contract claims for monetary damages

based on Defendant's failure to comply with the Policy. This Court has diversity jurisdiction to adjudicate Plaintiff's common law breach of contract claims brought under the Policy; as such, Plaintiff has standing to seek a declaratory judgment of its rights under the Policy.

In addition, Defendant has not demonstrated that the Florida legislature intended to preempt declaratory judgement or other common law or civil claims by not providing a separate private cause of action for all UITPA provisions. Florida's UITPA specifies that the statute does replace or abrogate the civil and common law rights that exist outside of the statute. *Lutz v. Protective Life Ins. Co.,* 951 So. 2d 884, 887–88 (Fla. 4th DCA. 2007) (citing Fla. Stat. § 624.155). Federal and state courts in Florida have held that other civil and common law causes of action could be pursued even when they necessarily required an adjudication of a plaintiff's rights under Florida's UITPA. In *Lutz v. Protective Life Insurance Company*, a Florida District Court of Appeals held that "the statutory requirements for group insurance policies could be incorporated into [an] insurance contract and form the basis of a properly-pled breach of contract action even though the statutory scheme does not appear to support a private right of action merely to enforce compliance with some or all of them." 951 So. 2d at 887. In *Richardson v. Progressive American Insurance Company*, the United States District Court for the Middle District of Florida found that Plaintiffs' were able to bring a common law cause of action for breach of an insurance contract based on provisions of UITPA that were incorporated into the contract rather than an attempt to rely on a private cause of action under UITPA. *See Richardson v. Progressive Am. Ins. Co*., No. 218CV715FTM99MRM, 2019 WL 2287955, at *5 (M.D. Fla. May 29, 2019). As Defendant argues, *Richardson* may be distinguishable in that the contract at issue in *Richardson* included a provision expressly incorporating provisions of UITPA. *See Id.* However, such an argument is unpersuasive as it is regularly assumed that any provisions in an

insurance contract not in compliance with or not incorporating relevant statutory provisions in place at the time the contract was made are amended to comply. *See Glover v. Liberty Mut. Ins. Co.*, No. 19-21900-CIV, 2019 WL 4917063, at *3 (S.D. Fla. Oct. 4, 2019). In addition, the Court notes that multiple District Courts have permitted breach of contract claims related to Florida Statute § 626.9743 to proceed. *See Glover v. Liberty Mut. Ins. Co.*, No. 19-21900-CIV, 2019 WL 4917063, at *3 (S.D. Fla. Oct. 4, 2019); *Richardson v. Progressive Am. Ins. Co.*, No. 218CV715FTM99MRM, 2019 WL 2287955, at *5 (M.D. Fla. May 29, 2019).

Defendant cites to *Keehn v. Carolina Casualty Insurance Company* in arguing that Plaintiff cannot bring a claim for declaratory relief regarding her rights under the Policy and Florida Statute § 626.9743 because § 626.9743 does not provide a separate private right of action. In *Keehn* the Eleventh Circuit held that "UITPA affords plaintiffs no cause of action, either by its own terms or incorporation into the contract of insurance, to vitiate Carolina Casualty's otherwise valid cancellation [of the insurance contract]." *Keehn v. Carolina Cas. Ins. Co.*, 758 F.2d 1522, 1525 (11th Cir. 1985). In bringing her claim for declaratory relief, Plaintiff does not look to § 626.9743 for a cause of action but rather looks to § 626.9743 for specifications for calculating and recording the calculation of the "actual cash value" of a vehicle when settling a total loss claim under the Policy. *See* AC 5 ¶ 9. For a cause of action, Plaintiff points to the Policy, an existing contract, and seeks an adjudication of her rights under the Policy on its face and as amended to comply with Florida Statute § 626.9743.

The Court is not persuaded that Plaintiff's claims are only a veiled attempt to state claims directly for violations of UITPA provisions. Plaintiff's Complaint alleges that Defendant must pay its insureds the "actual case value" of Plaintiff's total loss vehicle. *See* AC 5 ¶ 9. Section 626.9743 provides specifications for calculating and recording the calculation of the actual cash

value of a vehicle when settling a total loss claim. *See* Fla. Stat. § 626.9743 (5) & (6). As such, Count I of the Complaint seeks declaratory relief regarding rights under the Policy on its face and as necessarily amended to comply with Florida Statute § 626.9743.

In its Reply Defendant argues that if Plaintiff's claim for declaratory relief is seeking adjudication of Plaintiff's rights under the insurance policy, the claim should be dismissed as duplicative. This argument is ultimately unpersuasive. The Federal Rules of Civil Procedure clearly contemplate duplicative requests for relief and pleading in the alternative. *See* Fed. R. Civ. P. 8(d)(3); See Fed. R. Civ. P. 8(d)(3). *But see Sos v. State Farm Mut. Auto. Ins. Co.*, 396 F. Supp. 3d 1074, 1082 (M.D. Fla. 2019) (citing *Tiller v. State Farm Mut. Auto. Ins. Co.*, 549 Fed. App'x 849, 855 (11th Cir. 2013)).[2] In addition, the Eleventh Circuit's reasoning in *A&M Gerber* that a plaintiff seeking declaratory relief would not have standing in the absence of "a claim for money damages or substantial likelihood that [the insured] will suffer a future injury" implicitly acknowledges the potential for a breach of contract claim for money damages to be brought in conjunction with a claim for declaratory relief under the contract. *See A&M Gerber*, 925 F.3d at 1216.

---

[2] The Court acknowledges the varying decisions from courts, including from the undersigned, on the issue of duplicative claims for declaratory relief and monetary damages, *see e.g. Roth v. GEICO Gen. Ins. Co.*, No. 16-62942-CIV, 2017 WL 5640740, at *2-3 (S.D. Fla. Jan. 24, 2017). However, many of these decisions rely on the Eleventh Circuit's unpublished opinion in *Tiller v. State Farm Mut. Auto. Ins. Co. See, e.g. Roth*, No. 16-62942-CIV, 2017 WL 5640740, at *2-3 (citing *Tiller*, 549 Fed. App'x at 855); *Sos v. State Farm Mut. Auto. Ins. Co.*, 396 F. Supp. 3d 1074, 1082 (M.D. Fla. 2019) (citing *Tiller*, 549 Fed. App'x at 855). In light of the analysis which led the Eleventh Circuit to its decision in *A&M Gerber* this Court believes it is appropriate to permit a claim for declaratory relief to proceed in conjunction with a breach of contract claim in the present context. In addition, the Court notes the cursory fashion in which Defendant raises an argument for dismissing the declaratory relief claim only in its Reply in support of its Motion to Dismiss. *Hewlett-Packard Co. v. CP Transp. LLC*, No. 12-21258-CIV, 2012 WL 4795766, at *2 (S.D. Fla. Oct. 9, 2012) (citing *McPherson v. Kelsey,* 125 F.3d 989, 995–96 (6th Cir.1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.")).

The Court finds that the Plaintiff has sufficiently demonstrated that she has standing to bring a claim for declaratory relief, at this early stage of the proceedings, viewing the pleading in the light most favorable to the Plaintiff.

### B. Counts II, III, IV: Plaintiff's Breach of Contract Claims

"A claim for breach of contract under Florida law requires proof of three elements: (1) the existence of a valid contract; (2) a material breach; and (3) damages." *See Richardson v. Progressive Am. Ins. Co.*, No. 218CV715FTM99MRM, 2019 WL 2287955, at *4 (M.D. Fla. May 29, 2019) (citing *Havens v. Coast Fla., P.A.*, 117 So. 3d 1179, 1181 (Fla. 2d DCA 2013)).

When interpreting insurances contracts, under Florida law, the contract is construed according to its "plain meaning." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1304 (11th Cir. 2008). The insurance contract is ambiguous if its language lends itself to more than one interpretation. *Id.* Ambiguities in insurance contracts should be construed liberally in favor of the insured and against the drafter. *See Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005); *Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So. 2d 467, 472 (Fla. 1993).

Any insurance contract which contains a provision that does not comply with the Florida insurance law "shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy ... been in full compliance with this code." Fla. Stat.§ 627.418(1); *see Sardinas v. Infinity Auto Ins. Co.*, No. 19-61369-CIV, 2019 WL 7811165, at *7 (S.D. Fla. Sept. 25, 2019). "Florida courts have long recognized that the statutory limitations and requirements surrounding traditional insurance contracts may be incorporated into an insurance contract for purposes of determining the parties' contractual rights." *Foundation Health v. Westside EKG Assoc.*, 944 So. 2d 188, 195 (Fla. 2006).

   i. <u>Plaintiff's Breach of Contract Claims Related to § 626.9743(5)</u>

In moving to dismiss Plaintiff's claims premised on Florida Statute § 626.9743(5) ("§5") Defendant argues that 1) § 5 is not incorporated into the Policy 2) if § 5 is incorporated, the complaint fails to adequately allege that Safeco violated that provision and further 3) Signor's allegations demonstrate that Safeco complied with § 5.

Defendant argues that § 626.9743(5)(a) is neither expressly incorporated into the Policy nor implicitly into the Policy by Florida law because it uses the permissive verb "may" rather than the mandatory language of "shall". Defendant relies on the analysis in *Bastian v. United Service Automobile Association*, which held that an insurer who had not so elected in the policy could not rely, to its advantage, on § 626.9743(9) due to the permissive language in § 9. *See* 150 F. Supp. 3d 1284, 1295 (M.D. Fla. 2015). The Court in *Bastian* looked to Florida court cases in which "the defendant insurer was looking to utilize an optional statutory provision in an effort to trump the terms of the insurance policy that provided greater coverage." *Bastian v. United Servs. Auto. Ass'n*, 150 F. Supp. 3d 1284, 1295 (M.D. Fla. 2015).

Plaintiff argues in response that the Policy provides that Safeco must pay her the actual cash value of her vehicle, and as the policy does not specify a method of valuation, § 626.9743(5)(a) provides the potential methods of calculation the actual cash value. In addition, Plaintiff contends that Defendant's use of the CCC System is actually a failed attempt to use the method of valuation outlined in § 626.9743(5)(a)(1)(a). Finally, Plaintiff points out that another District Courts in Florida permitted claims to go forward challenging the specific system used by an insurer under § 626.9743(5)(a). *See e.g. Richardson*, 2019 WL 2287955, at *2 & *5.

Florida law requires that any insurance policy or provision not in compliance with the Florida insurance code must be construed and applied in accordance with the provisions of the insurance code. *See* Fla. Stat. § 627.418 (1); *Allstate Ins. Co. v. Kaklamanos*, 843 So. 2d 885,

896 (Fla. 2003). Florida Statute § 626.9743(5) provides that "[w]hen the insurance policy provides for the adjustment and settlement of first-party motor vehicle total losses on the basis of actual cash value or replacement with another of like kind and quality, the insurer shall use one of the" four methods outlined in the statute to settle the claim. Plaintiff's Complaint alleges that under the Policy, Safeco must pay its insureds their vehicle's actual cash value when settling total loss claims, which necessarily must be done pursuant to § 626.9743(5). AC 5 ¶ 9. Here, Plaintiff sufficiently alleges the existence of a valid contract, which must be construed to comply with in § 626.9743(5), *see* Fla. Stat.§ 627.418(1). Section 626.9743(5) as a whole is not optional; therefore, Plaintiff sufficiently alleges a material breach of the contract by outlining factual allegations which make plausible the conclusion that Safeco did not comply with § 5. Even if the methods of calculating actual cash value provided for in § 626.9743(5)(a) are not mandatory or do not constitute an exhaustive list,[3] the Court is skeptical that an insurer can, as Plaintiff alleges, attempt to use an optional method of valuation provided by the statute, do so improperly, and meet the requirements § 626.9743(5). *See Richardson v. Progressive Am. Ins. Co.*, No. 218CV715FTM99MRM, 2019 WL 2287955, at *4 (M.D. Fla. May 29, 2019) ("The Policy does

---

[3] Florida Statute § 626.9743(5)(a) states,
  (a) The insurer may elect a cash settlement based upon the actual cost to purchase a comparable motor vehicle, including sales tax, if applicable pursuant to subsection (9). Such cost may be derived from:

  1. When comparable motor vehicles are available in the local market area, the cost of two or more such comparable motor vehicles available within the preceding 90 days;

  2. The retail cost as determined from a generally recognized used motor vehicle industry source such as:

      a. An electronic database if the pertinent portions of the valuation documents generated by the database are provided by the insurer to the first-party insured upon request; or

      b. A guidebook that is generally available to the general public if the insurer identifies the guidebook used as the basis for the retail cost to the first-party insured upon request; or

  3. The retail cost using two or more quotations obtained by the insurer from two or more licensed dealers in the local market area.

not require that Progressive investigate the amount of loss with any particular methodology, only that the methodology that Progressive utilizes be performed properly and in accordance with Florida law."). Further, the present is not a case where an insurer is using an optional provision of the insurance code to contravene explicit provisions of an insurance policy. *Cf. Bastian*, 150 F. Supp. 3d at 1295. Based on the foregoing, Plaintiff has alleged sufficient facts to state a claim to relief for a breach of the Policy as interpreted to comply with § 626.9743(5) and § 626.9743(5)(a) that is plausible on its face.

ii. *Plaintiff's Breach of Contract Claims Related to § 626.9743(6)*

In moving to dismiss Plaintiff's claims related to Florida Statute § 626.9743(6) Defendant argues that Plaintiff's Complaint demonstrates that Defendant has complied with the statutory provision rather than stating a claim for breach of the Policy. Florida Statute § 626.9743(6) provides:

> (6)   When the amount offered in settlement reflects a reduction by the insurer because of betterment or depreciation, information pertaining to the reduction shall be maintained with the insurer's claim file. Deductions shall be itemized and specific as to dollar amount and shall accurately reflect the value assigned to the betterment or depreciation. The basis for any deduction shall be explained to the claimant in writing, if requested, and a copy of the explanation shall be maintained with the insurer's claim file.

*See* Fla. Stat. § 626.9743(6).

Defendant argues that Plaintiff's Complaint fails to allege Safeco failed to keep a record of any adjustments made for depreciation or betterment. Further, Defendant contends that the Complaint contains facts showing Safeco did comply with § 626.9743(6) when it generated, maintained, and provided Signor with a copy of the CCC System's valuation report explaining any adjustments for depreciation or betterment. Defendant argues that the CCC System report provided to Plaintiff provides every explanation and accounting required by § 626.9743(6).

Plaintiff's Complaint and response, however, both argue that the "Uniform Condition Adjustment" is not supported with the documentation required by § 626.9743(6). The "Uniform Condition Adjustment," according to Plaintiff, is applied to each comparable vehicle from which the CCC System calculates the actual cash value of the vehicle. Plaintiff alleges that this adjustment is not supported by sufficient information in Plaintiff's claim file, but rather is calculated by the CCC System and based on proprietary CCC algorithms.

Taking such allegations as true, the Court finds Plaintiff has stated a claim for a breach of the Policy based on a violation of the mandatory requirements of § 626.9743(6).

iii. *Plaintiff's Breach of Contract Claim Related to Signor's Failure to Pay Dealer Fees (Count III)*

Defendant also moves to dismiss Plaintiff's claim for breach of contract based on Defendant's failure to include dealer fees in its calculation of the actual cash value of Plaintiff's vehicle. Defendant contends that not only does it not have to pay dealer fees under Florida law, but that such fees would be illegal under Florida law. Defendant argues that none of the relevant statutory provisions require Defendant to pay dealer fees as part of the vehicle's actual cash value. Further, Defendant argues that the valuation methodology it uses accounts for "dealer fees" and any "dealer fees" are not accounted for are illegal.

In response, Plaintiff contends "dealer fees" are part of the replacement cost of the vehicle and therefore must be paid as part of the actual cash value of the vehicle.

Under Florida law, "actual cash value is generally defined as 'fair market value' or '[r]eplacement cost minus normal depreciation,' where depreciation is defined as a 'decline in an asset's value because of use, wear, obsolescence, or age.'" *Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 438 (Fla. 2013) (quoting *Black's Law Dictionary* 506, 1690 (9th ed. 2009)).

Plaintiff alleges that "no used car dealer in the State of Florida will sell a vehicle without charging [dealer fees]." *See* AC 12. Assuming the facts alleged by Plaintiff are true, it is plausible dealer fees would be included in the "actual cash value" under the contract as amended to comply with Florida law.

    iv.   *Plaintiff's Breach of Contract Claim for Defendant's Taking of the Salvage Value of Plaintiff's Vehicle (Count IV)*

Defendant argues that there is no obligation in the contract or under Florida Law to return the salvage value of Plaintiff's car, and as such, Count IV of Plaintiff's Complaint should be dismissed. According to Defendant, allowing Signor to retain actual cash value and salvage value of her vehicle would result in double recovery, which, Defendant argues, would not be permitted under contract law.

Plaintiff's complaint alleges that the policy is silent as to transfer of the vehicle's salvage value. In absence of provisions providing for such a condition, Plaintiff contends Defendant's conditioning of settlement payment on the transfer of the salvage value constitutes a breach of the contract.

Plaintiff alleges facts, which taken as true, render the Policy ambiguous as to the transfer of the vehicle's salvage value. The Court finds ambiguities in the contract in the present case would best be resolved at a later stage in the proceedings. *See, e.g. Bloomgarden v. Allstate*, No. 18-cv-62059-DPG (S.D. Fla. March 15, 2019). Further, as ambiguities in insurance contracts should be construed liberally in favor of the insured and against the drafter, *see Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005), Plaintiff has alleged facts sufficient to raise a plausible claim for breach of contract based on Defendant's taking of the salvage value of Plaintiff's total loss vehicle.

## IV. CONCLUSION

In light of the foregoing, viewing the Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has alleged sufficient facts to raise claims that are plausible on their face. The Court concludes that contractual ambiguities and novel legal questions in the present case will best be resolved at a later stage in the proceedings.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss [DE 10] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this 23rd day of March, 2020.

*/s/ William P. Dimitrouleas*
WILLIAM P. DIMITROULEAS
United States District Judge


Copies furnished to:
All Counsel of Record